UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
**West Palm Beach Division**
**www.flsb.uscourts.gov**

IN RE:                                                     CASE NO. 13-35141-EPK
                                                          CHAPTER 11

PALM BEACH COMMUNITY
CHURCH, INC.,

_____   Debtor _____/

## DEBTOR'S DISCLOSURE STATEMENT

FURR AND COHEN, P.A.
*Attorneys for Debtor*
By:  Aaron A Wernick, Esq.
By:  Robert C. Furr, Esq.
2255 Glades Road
One Boca Place, Suite 337W
Boca Raton, Florida 33431
(561) 395-0500
(561)338-7532 fax
E-Mail: rfurr@furrcohen.com
E-Mail: awernick@furrcohen.com

- 1 -

# CONTENTS

**ARTICLE I- INTRODUCTION** ...............................................................................3

**ARTICLE II - HISTORY OF DEBTOR**......................................................5
    (A)  History of the Debtor.................................................................5
    (B)  Insiders of the Debtor ..............................................................7
    (C)  Management Before and During Bankruptcy...................................7
    (D)  Events Leading to the Chapter 11 Filing......................................7
    (E)  Significant Events During the Case.............................................8
    (F)  Projected Recovery of Avoidable Transfers .................................9
    (G)  Claims Objections ..................................................................9
    (H)  Current and Historical Financial Conditions.................................10

**ARTICLE III - SUMMARY OF PLAN AND TREATMENT OF CLAIMS AND EQUITY INTERESTS**.................................................................10
    (A)  What is the Purpose of the Plan of Reorganization..........................10
    (B)  Unclassified Claims................................................................10
    (C)  Classes of Claims and Equity Interests.......................................12
    (D)  Means of Implementing the Plan................................................14
    (E)  Risk Factors .........................................................................16
    (F)  Executory Contracts and Unexpired Leases .................................16
    (G)  Tax Consequences.................................................................17

**ARTICLE IV - CONFIRMATION REQUIREMENTS AND PROCEDURES**   17
    (A)  Who May Vote or Object .........................................................17
    (B)  Votes Necessary to Confirm Plan - Cram Down.............................18
    (C)  Liquidation Analysis...............................................................19
    (D)  Feasibility ...........................................................................19

**ARTICLE V - EFFECT OF CONFIRMATION OF PLAN**...................................20
    (A)  Discharge of Debtor ..............................................................20
    (B)  Modification of Plan..............................................................20
    (C)  Final Decree........................................................................20

**ARTICLE VI  CONCLUSION**...................................................................21

**EXHIBITS**

## DEBTOR'S DISCLOSURE STATEMENT

The Debtor provides this Disclosure Statement to all known creditors of the Debtor in order to disclose the information deemed to be material, important, and necessary for creditors to arrive at a reasonably informed decision in exercising their right to abstain from voting or to vote for acceptance or rejection of the Debtor's Plan of Reorganization, (hereinafter "the Plan"). A copy of the Plan accompanies this Disclosure Statement.

## ARTICLE I.  INTRODUCTION

This is the disclosure statement (the "Disclosure Statement") of the Chapter 11 Debtor, **Palm Beach Community Church, Inc.** (the "Debtor"). This Disclosure Statement contains information about the Debtor and describes the Debtor's Plan of Reorganization (the "Plan") filed by the Debtor on May 16, 2014.   You are urged to carefully read the contents of this Disclosure Statement before making your decision to accept or reject the Plan.  Particular attention should be directed to the provisions of the Plan affecting or impairing your rights as they presently exist.  The terms used herein have the same meaning as in the Plan unless the context hereof requires otherwise.

THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT HAS BEEN SUBMITTED BY THE DEBTOR'S MANAGEMENT, UNLESS SPECIFICALLY STATED TO BE FROM OTHER SOURCES.  NO REPRESENTATIONS, OTHER THAN THOSE SET FORTH HEREIN, CONCERNING THE DEBTOR, (PARTICULARLY AS TO ITS FUTURE BUSINESS OPERATIONS OR THE VALUE OF ITS PROPERTY), ARE AUTHORIZED BY THE DEBTOR.

*Your rights may be affected. You should read the Plan and this Disclosure Statement carefully and discuss them with your attorney. If you do not have an attorney, you may wish to consult one.*

The proposed distributions under the Plan are discussed at pages 10-15 of this Disclosure Statement. General unsecured creditors are classified in Class 4, and will receive a distribution of 5% of their allowed claims.

A.     **Purpose of This Document**

This Disclosure Statement describes:

- The Debtor and significant events during the bankruptcy case,

- How the Plan proposes to treat claims of the type you hold (*i.e.*, what you will receive on your claim or equity interest if the Plan is confirmed),

- Who can vote on or object to the Plan,

- What factors the Bankruptcy Court (the "Court") will consider when deciding whether to confirm the Plan,

- Why the Plan Proponent, the "Debtor" believes the Plan is feasible, and how the treatment of your claim under the Plan compares to what you would receive on your claim in liquidation, and

- The effect of confirmation of the Plan.

**Be sure to read the Plan as well as the Disclosure Statement. This Disclosure Statement describes the Plan, but it is the Plan itself that will, if confirmed, establish your rights.**

B.      **Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing**

The Court has not yet confirmed the Plan described in this Disclosure Statement. This section describes the procedures pursuant to which the Plan will or will not be confirmed.

The Court has set a hearing on confirmation of the Plan for the date and time set forth in the Order (1) Approving Disclosure Statement; (II) Setting Hearing On Confirmation of Plan; (III) Setting Hearing on Fee Applications; (IV) Describing Various Deadlines; and (V) Describing Debtor's Obligations.  Creditors may vote on the Plan by filling out and mailing the accompanying ballot form to the Bankruptcy Court.  **Your Ballot must be filed on or before** _____.  As a creditor, your vote is important.  In order for the Plan to be deemed accepted, of the ballots cast, creditors that hold as least 2/3 in amount and more than 1/2 in number of the allowed claims of impaired Classes must accept the Plan.  However, you are advised that the Debtor may be afforded the right under the Bankruptcy Code to have the Plan confirmed over the objections of dissenting creditors consistent with the limitations set forth in the Bankruptcy Code.

NO REPRESENTATIONS CONCERNING THE DEBTOR (PARTICULARLY AS TO ITS FUTURE BUSINESS OPERATIONS OR THE VALUE OF ITS PROPERTY),

- 4 -

ARE AUTHORIZED OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT. ANY REPRESENTATIONS OR INDUCEMENTS MADE TO SECURE YOUR ACCEPTANCE WHICH ARE OTHER THAN AS CONTAINED IN THIS DISCLOSURE STATEMENT SHOULD NOT BE RELIED UPON BY YOU IN ARRIVING AT YOUR DECISION, AND SUCH ADDITIONAL REPRESENTATIONS AND INDUCEMENTS SHOULD BE REPORTED TO COUNSEL FOR THE DEBTOR, WHO IN TURN SHALL DELIVER SUCH INFORMATION TO THE UNITED STATES TRUSTEE FOR SUCH ACTION AS MAY BE DEEMED APPROPRIATE.

4.    *Identity of Person to Contact for More Information*

If you want additional information about the Plan, you should contact Robert C. Furr, Esq., Furr and Cohen, P.A., attorney for the Debtor, 2255 Glades Road, Suite 337W, Boca Raton, FL 33431.

C.    **Disclaimer**

***The Court has approved this Disclosure Statement as containing adequate information to enable parties affected by the Plan to make an informed judgment about its terms. The Court has not yet determined whether the Plan meets the legal requirements for confirmation, and the fact that the Court has approved this Disclosure Statement does not constitute an endorsement of the Plan by the Court, or a recommendation that it be accepted.***

## ARTICLE II. HISTORY OF THE DEBTOR

A.    **Description and History of the Debtor's Business**

The Debtor filed a voluntary Petition for Reorganization Under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. 101 et seq., (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Florida (the "Bankruptcy Court") on October 20, 2013 (the "Filing Date"). The Debtor has continued to operate its business as a Debtor-In-Possession pursuant to § 1108 of the Bankruptcy Code. The Debtor does not have any affiliates. The Debtor provides a 403(b) retirement plan to which its employees are entitled to contribute. The Debtor provides vacation, sick leave, medical, dental, vision, prescription drug, life insurance and disability benefits in which Employees participate and the appropriate amounts for coverage is deducted from wages.

The Debtor is a 501(c)3, non-profit corporation located Palm Beach Gardens, Florida and was formed in September, 1985 as a church and held its first services in the PGA Cinema VI in Loehman's Plaza. The attendance grew dramatically and services were moved to the William T. Dwyer High School in December 1991 and then to the Eissey Campus Theatre in 1994. In October 1999 the church purchased 47 acres on PGA Boulevard west of Military Trail in Palm Beach Gardens. The Church and property are situated on 11.43 acres and contains a 50,054 square foot multipurpose facility containing children and youth space, theatre, office space, banquet hall and kitchen facilities. A portion of the Debtor's real property is a certain parcel of real property located at the Northeast quadrant of the Intersection of PGA Boulevard and Shady Lakes Drive, in the city of Palm Beach Gardens, Florida consisting of approximately 9.03 acres (the "Undeveloped Land"), which parcel the Debtor has listed with a real estate broker, CB Richard Ellis, for sale.

The Church's vision over the last 25 years has been to create a community gathering place for the spiritual development of the Church family. The Church runs an on-campus pre-school facility which is called Discoveryland Christian Preschool. There is an active youth and student ministry in which many school students participate. The Church has an outreach program that provides community care, as well as providing counseling.

The Borland Center Building (the "Borland Center") is 50,054 square feet of space which sits on 2.43 acres.

The Debtor employs approximately 22 Employees who provide various services to the Debtor. Approximately 13 of all Employees are hourly wage earners, while the remaining 9 are salaried personnel. Salaried Employees consist of the Debtor's pastors, directors, business manager and immediate staff that run the church. The hourly employees consist of the Debtor's non-management personnel.

B.    **Insiders of the Debtor**

Insiders of the Debtor include Dr. Raymond Underwood, the Pastor of the Church. Pastor Underwood also serves as president, director and Elder. Steve Nester serves as Elder, Paul Connealy serves as Treasurer and Elder, Gary Kendall serves as Elder. The Elders of the Church do not receive any salary or compensation. Philip Underwood is the son of Pastor Raymond

- 6 -

Underwood and is employed full time at the Church. Post-confirmation, Dr. Raymond Underwood will be paid $$9,139.00 monthly, which includes salary, a housing allowance, medical insurance and a 403B contribution. Philip Underwood with be paid $4,973.27 including salary, insurance and a 403B contribution.

| INSIDER | INCOME | DESCRIPTION |
|---|---|---|
| Dr. Raymond Underwood | $98,848.00 yr. | includes Salary, Dental, vision, medical, 403(b) and housing allowance |
| Philip Underwood | $55,000.00 yr. | includes Salary, dental and vision insurance |

C.   **Management of the Debtor Before and During the Bankruptcy**

During the two years prior to the date on which the bankruptcy petition was filed, the officers, directors, managers or other persons in control of the Debtor (collectively the "Managers") were Dr. Raymond Underwood as President and Elder; Paul Connealy as Treasurer and Elder, Steve Nester as Elder and Gary Kendall as Elder.  Philip Underwood and Tomas Seifert were employees that managed and assisted in the day-to-day operations of the Church office.

The Managers of the Debtor during the Debtor's chapter 11 case have been:  Dr. Raymond Underwood, Paul Connealy, Steve Nester and Gary Kendall.  The Managers, do not receive salary or other benefits, except for Dr. Raymond Underwood.

After the Effective Date of the order confirming the Plan, the directors, officers, and voting trustees of the Debtor, or successor of the Debtor under the Plan (collectively the "Post Confirmation Managers"), will be: Dr. Raymond Underwood, Paul Connealy, Steve Nester and Gary Kendall. The responsibilities and compensation of these Post Confirmation Managers are described in section II.B. of this Disclosure Statement.

D.   **Events Leading to Chapter 11 Filing**

The Chapter 11 filing was prompted by the foreclosure proceedings filed by the secured lender, PNC Bank, on the Debtor's property and the breakdown of negotiations between the parties.

E.     **Significant Events During the Bankruptcy Case**

Significant events during the Debtor's bankruptcy case:

Motion to Maintain Existing Bank Accounts and Use of Existing Business Forms and Checks [DE#9]; Interim Order entered approving the Motion [DE#18]; Final Order entered approving the Motion [DE#36]; Agreed Final Order Authorizing the Debtor to Maintain Bank Accounts and Continue Use of Existing Business Forms and Checks and Continue to Use Existing Cash Management System [DE#44]

Motion to Authorize the Debtor to Pay Pre-Petition Wages and Benefits [DE#11]; Order Approving Authority to Honor and Pay Pre-Petition Wages [DE#16]

Motion for Continuation of Utility Services and Provide Adequate Protection [DE#14]; Final Order Determining Adequate Assurance of Payment for Future Utility Services and Resolving Related Objections [DE#35]

Order Scheduling Initial Chapter 11 Status Conference [DE#6]. Order entered by Court Shortening Time for Filing Proofs of Claim to January 21, 2014 and Setting a Deadline to file a Plan and Disclosure Statement on or before February 18, 2014 [DE#31]

Application to Employ Robert C. Furr, Esq. and Furr and Cohen, P.A. as counsel for the Chapter 11 Debtor [DE#25]; Order Approving the employment [DE#50]

Application to Employ Roy Wiley CPA and Covenant Financial Inc d/b/a Smart Plan Financial Services as Accountants for the Debtor-in-Possession [DE#32]; Order Approving the employment [DE#51]

Emergency Motion for Authorization to Release Escrowed Funds wherein the Debtor requested authority to return an earnest money deposit in the escrow account of Fowler White Boggs, PA in the amount of $100,000 relating to the pre-petition, September 24, 2013, Purchase and Sale Contract for the purchase of the parcel of real property located on the Northeast quadrant of the intersection of PGA Boulevard and Shady Lakes Drive. Southeast Investments Inc. had the right to terminate the Contract during the Inspection Period. On November 25, 2013 Southeast Investment Inc. sent a letter of termination of the Contract and demanded return of its earnest money deposit [DE#41]; Order Granting the Motion [DE#49]

Motion to Reject Lease of Wells Fargo Financial Leasing re Acct #4783 and DeLage Landen Financial Services Inc. Acct #6568 [DE#53]; Order Granting Motion to Reject the pre-petition Leases [DE#57]

Motion to Extend Exclusivity Period for Filing Chapter 11 Plan and Disclosure Statement [DE#59]; Order Granting Motion to Extend Exclusivity Period [DE#68]

Motion to Extend Time to File Plan of Reorganization and Disclosure Statement [DE#61]; Order Granting Motion to Extend Time to File Plan and Disclosure Statement [DE#68]

Motion to Assume Executory Contract and Equipment Lease: (a) License Agreement with Carefree Catering; (b) Service Agreement with Johnson Controls; (c)Hospitality Service Agreement with Oceana Coffee Inc.; (d) Service Agreement with Protection One; (e) Service Agreement with Terminix Commercial Pest Control; (f) Equipment Rental Agreement with Copy Source#xxxx2637 [DE#64]. Order Granting Motion to Assume [DE#71]

Application to Employ Lynette Green, Real Estate Agent, and CBRE, Inc. Realtor, to Market the parcel of the debtor's property known as the Northeast quadrant of the Intersection of PGA Boulevard and Shady Lakes Drive, in the city of Palm Beach Gardens, Florida consisting of approximately 9 acres. The commission is 3% of the gross sales price. Order Approving Application to Employ [DE#84]

During the Chapter 11 proceeding, the Debtor has provided documentation, pictures and financial information on the Church property to several real estate brokers and realtors throughout Palm Beach County. On March 24, 2014 the Debtor filed an Application to Employ Real Estate Broker, CBRE, Inc., a National real estate firm, to market the real property. The property has been shown to several interested purchasers.

During the Chapter 11 proceeding, the Debtor is in the process of expanding the school, increasing the revenues from the Borland Center by aggressively marketing the facility to the community, and decreasing its payroll by staff reduction and consolidation of duties of staff members.

During the Chapter 11 proceeding the Debtor has submitted to PNC Bank cash offers to purchase the property of $9 million and $10.7 million.
Also, the Church has been working on possible mergers, obtaining financing and has negotiated with Pierce 131 LLC to purchase the Undeveloped Land for $6.5M cash. Owemanco Wealth Management Corporation will provide an immediate cash infusion of $3.5 M in exchange for a first priority lien on the Borland Center, with said debt being paid at an annual rate of 9.75%.

F.    **Projected Recovery of Avoidable Transfers**

There are no preference, fraudulent conveyance, or other avoidance actions for the Debtor to pursue.

G.    **Claims Objections**

The Claims Bar Date expired on **January 21, 2014**. The Debtor has filed Objections to certain Claims. Except to the extent that a claim is already allowed pursuant to a final non-appealable order, the Debtor reserves the right to object to claims. Therefore, even if your claim is allowed for voting purposes, you may not be entitled to a distribution if an objection to your

claim is later upheld. The procedures for resolving disputed claims are set forth in Article V of the Plan. A synopsis of the claims objections is listed below:

| Claim No. | | Claimant | Amount of Claim | Disposition of Claim |
|---|---|---|---|---|
| [DE#74] | 1 | Wells Fargo Financial Leasing | $5,555.52 | Stricken |
| [DE#74] | 2 | Wells Fargo Financial Leasing | $5,555.52 | Stricken |
| [DE#74] | 2-1 | Wells Fargo Financial Leasing | $5,555.52 | Stricken |
| [DE#77] | 7 | Florida Power and Light | $5,798.48 | Hearing Scheduled |

### H.    Current and Historical Financial Conditions

The Debtor's most recent financial statements before bankruptcy, are set forth in Exhibit "B". The Summary pages of the Monthly Operating Reports filed since the commencement of the Debtor's bankruptcy case is set forth in Exhibit "C".

## ARTICLE III. SUMMARY OF THE PLAN OF REORGANIZATION AND TREATMENT OF CLAIMS

### A.    What is the Purpose of the Plan of Reorganization?

As required by the Code, the Plan places claims in various classes and describes the treatment each class will receive. The Plan also states whether each class of claims is impaired or unimpaired. If the Plan is confirmed, your recovery will be limited to the amount provided by the Plan.

### B.    Unclassified Claims

Certain types of claims are automatically entitled to specific treatment under the Code. They are not considered impaired, and holders of such claims do not vote on the Plan. They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code. As such, the Plan Proponent has *not* placed the following claims in any class:

1.    *Administrative Expenses*

- 10 -

Administrative expenses are costs or expenses of administering the Debtor's chapter 11 case which are allowed under §507(a)(2) of the Code. Administrative expenses also include the value of any goods sold to the Debtor in the ordinary course of business and received within 20 days before the date of the bankruptcy petition. The Code requires that all administrative expenses be paid on the effective date of the Plan, unless a particular claimant agrees to a different treatment.

The following chart lists the Debtor's estimated administrative expenses, and their proposed treatment under the Plan:

| Type | Estimated Amount Owed | Proposed Treatment |
|---|---|---|
| Expenses Arising in the Ordinary Course of Business After the Petition Date | $-0- | N/A |
| The Value of Goods Received in the Ordinary Course of Business Within 20 Days Before Petition Date | $-0- | Paid in full on the effective date of the Plan, or according to terms of obligation if later |
| Professional Fees, as approved by the Court Furr and Cohen Smart Plan | $25,000.00 est $ 5,000.00 | Paid in full on the effective date of the Plan, or according to separate written agreement, or according to court order if such fees have not been approved by the Court on the effective date of the Plan |
| Clerk's Office Fees | $-0- | Paid in full on the effective date of the Plan |
| Office of the U.S. Trustee Fees | $ 4,875.00 | Paid in full on the effective date of the Plan |
| TOTAL | $34,875.00 | |

    2.    *Priority Tax Claims*

Priority tax claims are unsecured income, employment, and other taxes described by §507(a)(8) of the Code. Unless the holder of such a §507(a)(8) priority tax claim agrees otherwise, it must receive the present value of such claim, in regular installments paid over a period not exceeding 5 years from the order of relief.

- 11 -

The following chart lists the Debtor' estimated §507(a)(8) priority tax claims and their proposed treatment under the Plan:

| Description (name and type of tax) | Estimated Amount Owed | Date of Assessment | Treatment |
|---|---|---|---|
| Internal Revenue Service | $-0- | n/a | None owed |

### B.    Classes of Claims and Equity Interests

The following are the classes set forth in the Plan, and the proposed treatment that they will receive under the Plan:

### 1.    *Classes of Secured Claims*

Allowed Secured Claims are claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under §506 of the Code. If the value of the collateral or setoffs securing the creditor's claim is less than the amount of the creditor's allowed claim, the deficiency will be classified as a general unsecured claim.

The following chart lists all classes containing Debtor's secured prepetition claims and their proposed treatment under the Plan:

| Class # | Description | Insider? (Yes or No) | Impairment | Treatment |
|---|---|---|---|---|
| 1 | Secured Claim of: **Palm Beach County Tax Collector** Collateral: 52-42-42-01-21-001-0000 Priority of lien: Real Estate Taxes 2013 Allowed Secured Amount: $11,342.74 Total claim = | No | Impaired | Paid in full, with statutory interest, no later than five years from Petition Date. |

| | | | | |
|---|---|---|---|---|
| | $11,342.74 plus 18% statutory interest | | | |
| 2 | Secured claim of: **PNC Bank, N.A.,** Successor by merger to National City Bank and Fidelity Federal Bank & Trust<br><br>Collateral description: Tract 1of Borland Center, PB 104, PG 110, Palm Beach Co, FL, together with easement rights, personal property, accounts, inventory, rents,<br><br>Allowed Secured Amount: $17,278,427.60<br><br>Priority of lien: first mortgage and security agreement<br><br>Principal owed $11,332,870.30<br><br>Total claim = $17,278,426.60 | No | Impaired | The Debtor has been actively marketing the 9 acre parcel of Undeveloped Land. Forty-five days after Confirmation, a simultaneous closing, funding, and payoff will occur as follows: The Undeveloped Land will be sold for $6.5M cash to Pierce 131, LLC, an Illinois Limited Liability Company. Owemanco Wealth Management Corporation will provide an immediate cash infusion of $3.5M in exchange for a first priority lien on the Borland Center, with said debt being paid at an annual rate of 9.75% with a 6 month minimum lockup period. The Debtor will contribute $1M cash as a New Value contribution. The total $11M in proceeds will then be paid immediately to PNC Bank, N.A. in full satisfaction of their lien on the Property. Per 11 U.S.C. § 506, the remaining $6,278,426.60 will be treated as a Class 4 general unsecured claim. |
| 3 | **Everbank Commercial Finance, #2637**<br><br>Collateral description: Konica Minolta Bizhub C451, SN#A00K010014822 (Copy Source, Value :35,000<br><br>Allowed Secured Amount: $20,287.00<br><br>Priority of lien: equipment lease<br><br>Total Claim:  $21,225.00 | No | Unimpaired | Monthly Pmt: $849.00<br><br>25 payments remaining<br><br>During the Chapter 11 proceeding, the Debtor has been making payments to Everbank pursuant to the terms of its Lease. Post-Confirmation, payments will be made pursuant to the terms of the Lease until paid in full. |

## 2.   *Classes of Priority Unsecured Claims*

Certain priority claims that are referred to in §§507(a)(1), (4), (5), (6), and (7) of the Code are required to be placed in classes. The Code requires that each holder of such a claim receive cash on the effective date of the Plan equal to the allowed amount of such claim.

However, a class of holders of such claims may vote to accept different treatment. There are no claims under §§507(a)(1), (4), (5), (6), and (a)(7) of the Code.

3.   ***Class of General Unsecured Claims***

General unsecured claims are not secured by property of the estate and are not entitled to priority under §507(a) of the Code.

The payments to be made by the Debtor pursuant to this Plan shall be in full settlement and satisfaction of all Claims against the Debtor.

The following chart identifies the Plan's proposed treatment of Class 4 which contain general unsecured claims against the Debtor:  A list of creditors is attached hereto as Exhibit "A".

| Class # | Description | Impairment | Treatment |
|---|---|---|---|
| 4 | General Unsecured Class | Impaired | Total general unsecured claims are approximately $6,390,021.21. The Debtor will pay a total of $320,000.00 to Class 4 creditors, which equals approximately 5% of allowed claims. Commencing on the 1st of the twelfth month following Confirmation, the Debtor will make annual *pro rata* payments of $64,000.00. Five annual payments of $64,000.00 will be made, totaling $320,000.00. Each Class 4 claimant's distribution shall be in full satisfaction of its claim against the Debtor. |

4.   ***Class of Equity Interest Holders***

The Debtor is a 501(c)3 corporation and does not have any equity interest holders.  The Reorganized Debtor shall continue to operate as a 501(c)3, non-profit organization and will continue ownership of the underlying property.

D.   **Means of Implementing the Plan**

    1.   ***Source of Payments***:  Payments and distributions under the Plan will be funded by the following:

- 14 -

Debtor's funds on hand, revenue from its preschool, License Agreements, tithing and other donations from church members.

### 2.    Treatment of Claims and Interests Under the Plan

All payments under this Plan shall commence on the Effective Date unless otherwise provided in the Plan.

Administrative Claims.  All Allowed Administrative Claims shall be paid:

(a)  in full on the Effective Date or, if such Claim is objected to, the Date of a Final Order allowing any such Administrative Claim;

OR

(b)  upon such other terms as may be agreed to between the Debtor and each such Administrative Claimant.

Administrative costs are estimated to be approximately $35,000.00.

Holders of Administrative Claims incurred in the ordinary course of the Debtor's business shall not be required to file a Proof of Claim and shall be paid in the ordinary course of the Debtor's business.

**Interests.**  The Debtor is a 501(c)3 corporation and operates exclusively for exempt purposes set forth in 501(c)(3) and none of its earnings may inure to any private shareholder or individual.  The Reorganized Debtor shall continue to operate as a 501(c)3, non-profit organization and will continue ownership of the underlying property.

All case related payments for services, costs, and expenses will be subject to Court approval.  All payments shall be from the Debtor's cash from operations of the business.

All fees due under 11 U.S.C. § 1129(a)(12) shall be paid as required by 28 U.S.C. § 1930.

Tax Claims.  – The Debtor is tax-exempt under Section 501(c)(3) of the Internal Revenue Code.

### 3.    *Post-confirmation Management*

The Post-Confirmation Managers of the Debtor, and their compensation, shall be as follows:

| Name | Affiliations | Insider (yes or | Position | Compensation |
|---|---|---|---|---|

- 15 -

| | | | | |
|---|---|---|---|---|
| Dr. Raymond Underwood | | Yes | Pastor | $98,848.00 |
| Paul Connealy | | Yes | Member | $-0- |
| Steve Nester | | Yes | Member | $-0- |
| Gary Kendall | | Yes | Member | $-0- |

E.      **Risk Factors**

The proposed Plan has no risk factors, as the Debtor has the ability to make all payments and distributions required under the Plan.

F.      **Executory Contracts and Unexpired Leases**

The Plan, in Exhibit 5.1, lists all executory contracts and unexpired leases that the Debtor will assume under the Plan. Assumption means that the Debtor has elected to continue to perform the obligations under such contracts and unexpired leases, and to cure defaults of the type that must be cured under the Code, if any. There are no existing defaults on any of the contracts or leases assumed by the Debtor. Each of the Executory Contracts listed on Exhibit 5-1 to the Plan of Reorganization have been assumed and the Court has approved the assumption of each [DE#71].

All executory contracts and unexpired leases that are not listed in Exhibit 5.1 have been rejected and the Court has approve the rejection [DE#57].

Article VI of the Plan entitled "Executory Contracts" indicates that all Executory Contracts and unexpired leases of the Debtor not expressly assumed prior to the confirmation date, or not at the confirmation date the subject of a pending application to assume, shall be deemed to be rejected as of the Effective Date of the Plan.

**Any claim for damages arising by reason of the rejection of an executory contract or unexpired lease must be filed with the Bankruptcy Court no later than thirty (30) days after the order confirming the Plan or shall be forever barred and unenforceable.  Any**

such claims, when allowed by the Bankruptcy Court, shall be deemed allowed Class 4 general unsecured claims.

Any claim based on the rejection of a contract or lease will be barred if the proof of claim is not timely filed, unless the Court orders otherwise.

G.    **Tax Consequences of Plan**

*Creditors Concerned with How the Plan May Affect Their Tax Liability Should Consult with Their Own Accountants, Attorneys, And/Or Advisors.*

The Debtor strongly urges that each creditor consult with its own tax advisor regarding the federal, state, local and other tax consequences which the implementation of the Plan will have on them.

## ARTICLE IV. CONFIRMATION REQUIREMENTS AND PROCEDURES

To be confirmable, the Plan must meet the requirements listed in §§ 1129(a) or (b) of the Code. These include the requirements that: the Plan must be proposed in good faith; at least one impaired class of claims must accept the plan, without counting votes of insiders; the Plan must distribute to each creditor at least as much as the creditor would receive in a chapter 7 liquidation case, unless the creditor holder votes to accept the Plan; and the Plan must be feasible. These requirements are not the only requirements listed in §1129, and they are not the only requirements for confirmation.

A.    **Who May Vote or Object**

Any party in interest may object to the confirmation of the Plan if the party believes that the requirements for confirmation are not met.

Many parties in interest, however, are not entitled to vote to accept or reject the Plan. A creditor has a right to vote for or against the Plan only if that creditor has a claim that is both (1) allowed or allowed for voting purposes and (2) impaired.

In this case, the Plan Proponent believes that classes are impaired and that holders of claims in each of these classes are therefore entitled to vote to accept or reject the Plan. The Plan Proponent believes that classes are unimpaired and that holders of claims in each of these classes, therefore, do not have the right to vote to accept or reject the Plan.

1.    *What Is an Allowed Claim?*

- 17 -

Only a creditor with an allowed claim has the right to vote on the Plan. Generally, a claim is allowed if either (1) the Debtor has scheduled the claim on the Debtor's schedules, unless the claim has been scheduled as disputed, contingent, or unliquidated, or (2) the creditor has filed a proof of claim, unless an objection has been filed to such proof of claim. When a claim is not allowed, the creditor holding the claim cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim for voting purposes pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure.

### 2.  *What Is an Impaired Claim?*

As noted above, the holder of an allowed claim has the right to vote only if it is in a class that is *impaired* under the Plan. As provided in §1124 of the Code, a class is considered impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class.

### 3.  *Who is Not Entitled to Vote*

The holders of the following five types of claims are *not* entitled to vote:

- holders of claims that have been disallowed by an order of the Court;
- holders of other claims that are not "allowed claims" (as discussed above), unless they have been "allowed" for voting purposes.
- holders of claims in unimpaired classes;
- holders of claims entitled to priority pursuant to §§507(a)(2), (a)(3), and (a)(8) of the Code; and
- holders of claims in classes that do not receive or retain any value under the Plan;
- administrative expenses.

***Even If You Are Not Entitled to Vote on the Plan, You Have a Right to Object to the Confirmation of the Plan and to the Adequacy of the Disclosure Statement.***

### 4.  *Who Can Vote in More Than One Class*

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim, or who otherwise hold claims in multiple classes, is entitled to accept or reject a Plan in each capacity, and should cast one ballot for each claim.

### B.  **Votes Necessary to Confirm the Plan**

If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one impaired class of creditors has accepted the Plan without counting the votes of any insiders within that class, and (2) all impaired classes have voted to accept the Plan, unless the Plan is

eligible to be confirmed by "cram down" on non-accepting classes, as discussed later in Section [B.2.].

### 1. *Votes Necessary for a Class to Accept the Plan*

A class of claims accepts the Plan if both of the following occur: (1) the holders of more than one-half (1/2) of the allowed claims in the class, who vote, cast their votes to accept the Plan, and (2) the holders of at least two-thirds (2/3) in dollar amount of the allowed claims in the class, who vote, cast their votes to accept the Plan.

### 2. *Treatment of Nonaccepting Classes – Cram Down*

Even if one or more impaired classes reject the Plan, the Court may nonetheless confirm the Plan if the nonaccepting classes are treated in the manner prescribed by §1129(b) of the Code. A plan that binds nonaccepting classes is commonly referred to as a "cram down" plan. The Code allows the Plan to bind nonaccepting classes of if it meets all the requirements for consensual confirmation except the voting requirements of §1129(a)(8) of the Code, does not "discriminate unfairly," and is "fair and equitable" toward each impaired class that has not voted to accept the Plan.

*You should consult your own attorney if a "cramdown" confirmation will affect your claim, as the variations on this general rule are numerous and complex.*

### C. **Liquidation Analysis**

To confirm the Plan, the Court must find that all creditors who do not accept the Plan will receive at least as much under the Plan as such claim would receive in a chapter 7 liquidation. A liquidation analysis is attached to this Disclosure Statement as Exhibit "D".

### D. **Feasibility**

The Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor, unless such liquidation or reorganization is proposed in the Plan.

### 1. *Ability to Initially Fund Plan*

The Plan Proponent believes that the Debtor will have enough cash on hand on the Effective Date of the Plan to pay all the claims and expenses that are entitled to be paid on that date. The amount of cash on hand on the Effective Date of the Plan is $34,875 and the sources of that cash required is Debtor's cash on hand.

2. *Ability to Make Future Plan Payments And Operate Without Further Reorganization*

The Plan Proponent must also show that it will have enough cash over the life of the Plan to make the required Plan payments.

The Plan Proponent has provided projected financial information. Those projections are listed in Exhibit "E".

*You Should Consult with Your Accountant or other Financial Advisor If You Have Any Questions Pertaining to These Projections.*

## ARTICLE V. EFFECT OF CONFIRMATION OF PLAN

### A.     DISCHARGE OF DEBTOR

On the Effective Date of the Plan, the Debtor shall be discharged from any debt that arose before confirmation of the Plan, subject to the occurrence of the Effective Date, to the extent specified in §1141(d)(1)(A) of the Code, except that the Debtor shall not be discharged of any debt (i) imposed by the Plan, (ii) of a kind specified in §1141(d)(6)(A) if a timely complaint was filed in accordance with Rule 4007(c) of the Federal Rules of Bankruptcy Procedure, or (iii) of a kind specified in §1141(d)(6)(B). After the Effective Date of the Plan your claims against the Debtor will be limited to the debts described in clauses (i) through (iii) of the preceding sentence.

### B.     Modification of Plan

The Plan Proponent may modify the Plan at any time before confirmation of the Plan. However, the Court may require a new disclosure statement and/or re-voting on the Plan. The Plan Proponent may also seek to modify the Plan at any time after confirmation only if (1) the Plan has not been substantially consummated *and* (2) the Court authorizes the proposed modifications after notice and a hearing.

### C.     Final Decree

Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Plan Proponent, or such other party as the Court shall designate in the Plan Confirmation Order, shall file a motion with the Court to obtain a final decree to close the case. Alternatively, the Court may enter such a final decree on its own motion.

## ARTICLE VI    CONCLUSION

Under the Plan, all creditors of Debtor will participate in some manner in the distribution to be made thereunder. The Debtor believes that the distributions contemplated in its Plan are fair and afford all Claimants equitable treatment. ACCORDINGLY, THE DEBTOR RECOMMENDS THAT ALL CLAIMANTS VOTE TO ACCEPT THE PLAN.

DATED:  _5/15/14_

PALM BEACH COMMUNITY
CHURCH, INC.

BY _____
Dr. Raymond Underwood, President

FURR AND COHEN, P.A.
Attorney for Debtor
2255 Glades Road, Suite 337W
Boca Raton, FL  33431
561-395-0500/561-338-7532 fax
By  _/s/ Aaron A. Wernick_
    AARON A. WERNICK, ESQ.
    Florida Bar No. 14059
    E-Mail: awernick@furrcohen.com
By  _/s/ Robert C. Furr_
    Robert C. Furr, Esq.
    Fla Bar No. 210854

## EXHIBIT "A"

| CLASS | CREDITOR | CLAIM NO | AMOUNT OF CLAIM | | |
|---|---|---|---|---|---|
| ADM | U.S. Trustee | | $ 4,875.00 | | |
| ADM | Furr and Cohen, P.A. | | $ 25,000.00 | | |
| ADM | Accountant | | $ 5,000.00 | | |
| 1 | Palm Beach Co Tax Coll | 3 | $ 11,352.00 + int | | |
| 2 | PNC Bank, N.A. | 6 | $11,000,000.00 | | |
| 3 | Everbank Commercial Finance | 4 | $ 20,287.00 | | |
| 4 | Barkley's Landscape | S | $ 575.00 | | |
| 4 | Ben Devries | 5 | $ 50,000.00 | | |
| 4 | Blue Cross Blue Shield | S | $ 3,467.70 | | |
| 4 | Borland Community Owners Assn | S | $ 22,637.69 | | |
| 4 | Everbank Commercial Finance | 4 | $ 938.00 | | |
| 4 | Florida Power & Light | 7 | $ 5,798.48 | Disputed | |
| 4 | Expert Elevator | S | $ 750.00 | | |
| 4 | Johnson Controls | S | $ 6,850.33 | | |
| 4 | Philadelphia Liability Ins | S | $ 748.00 | | |
| 4 | Seacoast Credit Card | S | $ 5,802.91 | | |
| 4 | Smart Plan Financial | S | $ 1,250.00 | | |
| 4 | Strong Branch | S | $ 175.50 | | |
| 4 | Zurich Property Ins | S | $ 12,600.00 | | |
| 4 | PNC Bank, N.A. (deficiency) | 6 | $ 6,278,427.60 | | |
| | **Total Class 4** | | **$ 6,390,021.21** | | |

04.14 PBCC SFP

Palm Beach Community Church
Statement of Financial Position
As of April 30, 2014

ASSETS

Current Assets

| | |
|---|---|
| Petty Cash | $108.79 |
| Seacoast Natl Operating   8891 | 447,646.38 |
| Seacoast Natl Payroll     9431 | 19,949.14 |
| Seacoast Natl Online Off  8971 | 120,909.68 |
| Seacoast Natl MM Reserve  9511 | 178,002.90 |

| | |
|---|---|
| Cash & Cash Equivalents | 766,616.89 |
| Prepaid Insurance | 20,151.09 |
| Prepaid Line of Credit Fees | 86,250.00 |
| Total Prepaid Expenses | 106,401.09 |
| Total Current Assets | 873,017.98 |

Land

| | |
|---|---|
| Borland Land Purchase | 993,913.92 |

Buildings, Furn & Equip

| | |
|---|---|
| Buildings & Improvements | 16,445,819.44 |
| Landscaping & Site Improvement | 2,433,973.00 |
| Parking Garage | 1,352,522.00 |
| Furniture & Fixtures Office | 352,832.85 |
| Equipment Office | 788,641.76 |
| Furniture & Equipment | 5,646.01 |
| Construction Statement | 28,475.63 |
| Building For Life | 1.00 |
| Less Accumulated Depreciation | 1,359,036.16 |
| Prop & Equip, Net | 21,042,789.45 |

Other Assets

| | |
|---|---|
| Loan Costs | 134,800.00 |
| Less Accumulated Amortization | 87,620.00 ? |
| Loan Costs, Net | 47,180.00 |
| CC Exp Rec from Employees | 255.00 |
| Loans Receivable | 0.00 |
| Loan Receivable Borland Center | 33,084.00 |

Page 1

Exhibit "B"

|                          | 04.14 PBCC SFP |
|--------------------------|----------------|
| Deposits-Utilities, Rent | 12,713.00      |
| Exchange Account         | 1,231.57       |
| Total Other Assets       | 94,463.57      |
| TOTAL  ASSETS            | $22,010,271.00 |

## LIABILITIES & NET ASSETS

| Current Liabilities              |                |
|----------------------------------|----------------|
| Accounts Payable/Accrued Liab    | -$8,905.48     |
| Payroll Taxes Payable            | 6,252.39       |
| Accrued Interest Expense         | 420,265.75     |
| Medical Prem Due from Employee   | -825.54        |
| Insurance Prem Due from Employ   | -7.45          |
| Total Current Liabilities        | 416,779.67     |

| Long Term Liabilities            |                |
|----------------------------------|----------------|
| NordBank Line of Credit          | 11,302,211.00  |
| Note Payable - Midtown Residen   | 50,000.00      |
| Total Long Term Liabilitie       | 11,352,211.00  |

| Net Assets                       |                |
|----------------------------------|----------------|
| Opening Unrestricted Balance     | 6,764,200.25   |
| Unrestricted                     | 3,477,080.08   |
| Total Net Assets                 | 10,241,280.33  |

| TOTAL LIABILITIES & NET ASSETS   | $22,010,271.00 |

*Exhibit "B"*

10.13 R&D & NOR-3

Palm Beach Community Church
Schedule of Receipts & Disbursements
And MOR-3
For Oct 21, 2013 to Oct 31, 2013

| | |
|---|---|
| FUNDS AT BEG OF PD | $611,298.20 |
| **RECEIPTS:** | |
| Cash Sales | 0.00 |
| Minus: Cash Refunds | 0.00 |
| Net Cash Sales | 0.00 |
| Accounts Receivable | 35.41 |
| **OTHER RECEIPTS:** | |
| Community Outreach Income | 34,135.93 |
| DL Preschool Income | 98.00 |
| Total Other Receipts | 34,233.93 |
| TOTAL RECEIPTS | 34,269.34 |
| TOTAL FUNDS AVAILABLE FOR OPER | 645,567.54 |
| **DISBURSEMENTS:** | |
| BANK CHARGES | 11.59 |
| CONTRACT LABOR | 1,625.00 |
| INSURANCE | 2,068.17 |
| OFFICE SUPPLIES | 302.58 |
| PAYROLL-NET | 24,548.24 |
| PROFESSIONAL FEES | 1,950.00 |
| RENT | 20,000.00 |
| REPAIRS & MAINTENANCE | 1,308.87 |
| TAXES PAID - OTHER | 0.00 |
| TELEPHONE | 0.00 |
| **OTHER DISBURSEMENTS:** | |
| COMMUNITY OUTREACH EXPENSES | 25.00 |
| WORSHIP ARTS EXPENSES | 0.00 |
| OPERATING & ADMIN EXPENSES | 1,039.33 |
| PASTORA STUDIES EXPENSES | 4,245.24 |
| GROWTH GROUPS & LEAD DEV EXP | 0.00 |
| STUDENT MINISTRIES EXPENSES | 0.00 |
| DL PRESCHOOL EXPENSES | 25.00 |
| TOTAL OTHER DISBURSEMENTS | 5,334.57 |
| TOTAL DISBURSEMENTS | 57,149.02 |
| ENDING BALANCE | $588,418.52 |

Page I

Exhibit "C"

11.13 R&D & NOR-3

**Palm Beach Community Church**
Schedule of Receipts & Disbursements
And MOR-3
For Nov 1, 2013 to Nov 30, 2013

| | |
|---|---|
| FUNDS AT BEG OF PD | $588,418.52 |
| | |
| RECEIPTS: | |
| CASH SALES | 0.00 |
| MINUS: CASH REFUNDS | 0.00 |
| NET: CASH SALES | 0.00 |
| | |
| ACCOUNTS RECEIVABLE | 0.00 |
| | |
| OTHER RECEIPTS: | |
| Community Outreach Income | 112,822.15 |
| DL Preschool Income | 588.01 |
| Total Other Receipts | 113,410.16 |
| | |
| TOTAL RECEIPTS | 113,410.16 |
| | |
| TOTAL FUNDS AVAILABLE FOR OPER | 701,828.68 |
| | |
| | |
| DISBURSEMENTS: | |
| ADVERTISING | 0.00 |
| BANK CHARGES | 723.43 |
| CONTRACT LABOR | 2,780.00 |
| FIXED ASSET PAYMENTS | 0.00 |
| INSURANCE | 9,084.11 |
| INVENTORY PAYMENTS | 0.00 |
| LEASES | 0.00 |
| MANUFACTURING SUPPLIES | 0.00 |
| OFFICE SUPPLIES | 389.57 |
| PAYROLL-NET | 53,848.94 |
| PROFESSIONAL FEES | 3,582.84 |
| RENT | 20,000.00 |
| REPAIRS & MAINTENANCE | 6,603.94 |
| SECURED CREDITOR PAYMENTS | 0.00 |
| TAXES PAID - PAYROLL | 0.00 |
| TAXES PAID - SALES & USE | 0.00 |
| TAXES PAID - OTHER | 10,889.04 |
| TELEPHONE | 165.57 |
| TRAVEL & ENTERTAINMENT | 0.00 |
| US TRUSTEE QUARTERLY FEES | 0.00 |
| UTILITIES | 0.00 |
| VEHICLE EXPENSES | 0.00 |
| OTHER DISBURSEMENTS: | |
| COMMUNITY OUTREACH EXPENSES | 7,896.83 |
| WORSHIP ARTS EXPENSES | 1,625.41 |

Exhibit "C"

|                              | 11.13 R&D & NOR-3 |
|------------------------------|-------------------|
| OPERATING & ADMIN EXPENSES   | 10,103.53         |
| PASTORA STUDIES EXPENSES     | 10,286.99         |
| TOTAL OTHER DISBURSEMENTS    | 29,912.76         |
| TOTAL DISBURSEMENTS          | 137,980.20        |
| ENDING BALANCE               | $563,848.48       |

Exhibit "C"

12.13 R&D & NOR-3

Palm Beach Community Church
Schedule of Receipts & Disbursements
And MOR-3
For Dec 1, 2013 to Dec 31, 2013

| | |
|---|---|
| FUNDS AT BEG OF PD | $563,848.48 |
| **RECEIPTS:** | |
| CASH SALES | 0.00 |
| MINUS: CASH REFUNDS | 0.00 |
| NET: CASH SALES | 0.00 |
| ACCOUNTS RECEIVABLE | 0.00 |
| **OTHER RECEIPTS:** | |
| Community Outreach Income | 213,599.89 |
| DL Preschool Income | 848.82 |
| Total Other Receipts | 214,448.71 |
| TOTAL RECEIPTS | 214,448.71 |
| TOTAL FUNDS AVAILABLE FOR OPER | 778,297.19 |
| **DISBURSEMENTS:** | |
| BANK CHARGES | 509.86 |
| CONTRACT LABOR | 1,246.38 |
| INSURANCE | 7,389.01 |
| OFFICE SUPPLIES | 983.32 |
| PAYROLL-NET | 57,164.02 |
| PROFESSIONAL FEES | 7,602.86 |
| REPAIRS & MAINTENANCE | 6,919.82 |
| TELEPHONE | 2,567.61 |
| UTILITIES | 7,413.77 |
| **OTHER DISBURSEMENTS:** | |
| COMMUNITY OUTREACH EXPENSES | 2,827.20 |
| WORSHIP ARTS EXPENSES | 6,051.67 |
| OPERATING & ADMIN EXPENSES | 8,846.54 |
| PASTORA STUDIES EXPENSES | 13,088.96 |
| GROWTH GROUPS & LEAD DEV.EXP | 70.02 |
| STUDENT MINISTRIES EXPENSES | 135.00 |
| DL PRESCHOOL EXPENSES | 274.08 |
| TOTAL OTHER DISBURSEMENTS | 28,293.47 |
| TOTAL DISBURSEMENTS | 120,088.81 |
| ENDING BALANCE | $658,208.38 |

Page 1

Exhibit "C"

01.14 R&D & NOR-3

**Palm Beach Community Church**
**Schedule of Receipts & Disbursements**
**And MOR-3**
**For Jan 1, 2014 to Jan 31, 2014**

| | |
|---|---:|
| FUNDS AT BEG OF PD | $658,208.38 |
| | |
| RECEIPTS: | |
| RECEIPTS: | |
| CASH SALES | 0.00 |
| MINUS: CASH REFUNDS | 0.00 |
| NET: CASH SALES | 0.00 |
| | |
| ACCOUNTS RECEIVABLE | 0.00 |
| | |
| OTHER RECEIPTS: | |
| Community Outreach Income | 106,548.55 |
| DL Preschool Income | 6.00 |
| Total Other Receipts | 106,554.55 |
| | |
| TOTAL RECEIPTS | 106,554.55 |
| | |
| TOTAL FUNDS AVAILABLE FOR OPER | 764,762.93 |
| | |
| DISBURSEMENTS: | |
| BANK CHARGES | 759.42 |
| CONTRACT LABOR | 480.00 |
| INSURANCE | 1,501.64 |
| OFFICE SUPPLIES | 360.71 |
| PAYROLL-NET | 43,116.41 |
| PROFESSIONAL FEES | 964.29 |
| RENT | 20,000.00 |
| REPAIRS & MAINTENANCE | 6,214.91 |
| TAXES PAID - OTHER | 0.00 |
| TELEPHONE | -646.00 |
| US TRUSTEE QUARTERLY FEES | 1,950.00 |
| UTILITIES | 7,939.04 |
| OTHER DISBURSEMENTS: | |
| COMMUNITY OUTREACH EXPENSES | 2,374.58 |
| WORSHIP ARTS EXPENSES | 2,155.33 |
| OPERATING & ADMIN EXPENSES | 24,352.53 |
| PASTORA STUDIES EXPENSES | 11,413.83 |
| GROWTH GROUPS & LEAD DEV EXP | -48.50 |
| STUDENT MINISTRIES EXPENSES | 0.00 |
| DL PRESCHOOL EXPENSES | 0.00 |
| | |
| TOTAL OTHER DISBURSEMENTS | 40,247.77 |
| | |
| TOTAL DISBURSEMENTS | 122,891.39 |
| | |
| ENDING BALANCE | $641,871.54 |

Page 1

Exhibit "C"

02.14 R&D & NOR-3

Palm Beach Community Church
Schedule of Receipts & Disbursements
And MOR-3
For Feb 1, 2014 to Feb 28, 2014

| | |
|---|---|
| FUNDS AT BEG OF PD | $641,871.54 |
| | |
| RECEIPTS: | |
| RECEIPTS: | |
| CASH SALES | 0.00 |
| MINUS: CASH REFUNDS | 0.00 |
| NET: CASH SALES | 0.00 |
| | |
| ACCOUNTS RECEIVABLE | 0.00 |
| | |
| OTHER RECEIPTS: | |
| Community Outreach Income | 142,135.99 |
| DL Preschool Income | 13.50 |
| Total Other Receipts | 142,149.49 |
| | |
| TOTAL RECEIPTS | 142,149.49 |
| | |
| TOTAL FUNDS AVAILABLE FOR OPER | 784,021.03 |
| | |
| | |
| DISBURSEMENTS: | |
| BANK CHARGES | 579.94 |
| CONTRACT LABOR | 220.00 |
| INSURANCE | 19,759.27 |
| OFFICE SUPPLIES | 876.09 |
| PAYROLL-NET | 42,488.36 |
| PROFESSIONAL FEES | 2,842.00 |
| RENT | 20,000.00 |
| REPAIRS & MAINTENANCE | 3,696.00 |
| TAXES PAID - OTHER | 0.00 |
| TELEPHONE | 984.42 |
| US TRUSTEE QUARTERLY FEES | 2,926.00 |
| UTILITIES | 8,330.38 |
| OTHER DISBURSEMENTS: | |
| COMMUNITY OUTREACH EXPENSES | 1,695.94 |
| WORSHIP ARTS EXPENSES | 4,653.29 |
| OPERATING & ADMIN EXPENSES | 2,988.85 |
| PASTORA STUDIES EXPENSES | 13,106.66 |
| GROWTH GROUPS & LEAD DEV EXP | 1,866.86 |
| STUDENT MINISTRIES EXPENSES | 0.00 |
| DL PRESCHOOL EXPENSES | 0.00 |
| | |
| TOTAL OTHER DISBURSEMENTS | 24,309.50 |
| | |
| TOTAL DISBURSEMENTS | 126,908.95 |
| | |
| ENDING BALANCE | $657,112.08 |

Page 1

Exhibit "C"

03.14 R&D & MOR-3

Palm Beach Community Church
Schedule of Receipts & Disbursements
And MOR-3
For March 1, 2014 to March 31, 2014

| | |
|---|---|
| FUNDS AT BEG OF PD | $657,112.08 |
| | |
| RECEIPTS: | |
| RECEIPTS: | |
| CASH SALES | 0.00 |
| MINUS: CASH REFUNDS | 0.00 |
| NET: CASH SALES | 0.00 |
| | |
| ACCOUNTS RECEIVABLE | 0.00 |
| | |
| OTHER RECEIPTS: | |
| Community Outreach Income | 155,177.80 |
| DL Preschool Income | 18.00 |
| Total Other Receipts | 155,195.80 |
| | |
| TOTAL RECEIPTS | 155,195.80 |
| | |
| TOTAL FUNDS AVAILABLE FOR OPER | 812,307.88 |
| | |
| DISBURSEMENTS: | |
| BANK CHARGES | 585.49 |
| CONTRACT LABOR | 440.00 |
| INSURANCE | 16,569.35 |
| OFFICE SUPPLIES | 318.60 |
| PAYROLL-NET | 43,709.48 |
| PROFESSIONAL FEES | 1,536.40 |
| RENT | 20,000.00 |
| REPAIRS & MAINTENANCE | 4,093.09 |
| TAXES PAID - OTHER | 0.00 |
| TELEPHONE | 951.42 |
| US TRUSTEE QUARTERLY FEES | 0.00 |
| UTILITIES | 6,634.80 |
| OTHER DISBURSEMENTS: | |
| COMMUNITY OUTREACH EXPENSES | 5,582.68 |
| WORSHIP ARTS EXPENSES | 2,676.05 |
| OPERATING & ADMIN EXPENSES | 6,312.79 |
| PASTORA STUDIES EXPENSES | 12,077.33 |
| GROWTH GROUPS & LEAD DEV EXP | 5,921.28 |
| STUDENT MINISTRIES EXPENSES | 0.00 |
| DL PRESCHOOL EXPENSES | 291.78 |
| | |
| TOTAL OTHER DISBURSEMENTS | 32,731.91 |
| | |
| TOTAL DISBURSEMENTS | 126,760.60 |
| | |
| ENDING BALANCE | $685,647.38 |

Page 1

Exhibit "C"

04.14 R&D & NOR-3

Palm Beach Community Church
Schedule of Receipts & Disbursements
And MOR-3
For April 1, 2014 to April 30, 2014

| | |
|---|---:|
| FUNDS AT BEG OF PD | $685,547.38 |
| | |
| RECEIPTS: | |
| RECEIPTS: | |
| CASH SALES | 0.00 |
| MINUS: CASH REFUNDS | 0.00 |
| NET: CASH SALES | 0.00 |
| | |
| ACCOUNTS RECEIVABLE | 0.00 |
| | |
| OTHER RECEIPTS: | |
| Community Outreach Income | 148,830.33 |
| DL Preschool Income | 560.00 |
| Total Other Receipts | 149,390.33 |
| | |
| TOTAL RECEIPTS | 149,390.33 |
| | |
| TOTAL FUNDS AVAILABLE FOR OPER | 834,937.71 |
| | |
| | |
| DISBURSEMENTS: | |
| BANK CHARGES | 1,239.91 |
| CONTRACT LABOR | 0.00 |
| INSURANCE | 5,993.00 |
| OFFICE SUPPLIES | 199.94 |
| PAYROLL-NET | 49,109.70 |
| PROFESSIONAL FEES | 1,394.00 |
| RENT | 20,000.00 |
| REPAIRS & MAINTENANCE | 11,948.43 |
| TAXES PAID - OTHER | 0.00 |
| TELEPHONE | 2,352.92 |
| US TRUSTEE QUARTERLY FEES | 4,875.00 |
| UTILITIES | 7,033.07 |
| OTHER DISBURSEMENTS: | |
| COMMUNITY OUTREACH EXPENSES | 6,524.71 |
| WORSHIP ARTS EXPENSES | 3,282.50 |
| OPERATING & ADMIN EXPENSES | 20,952.63 |
| PASTORA STUDIES EXPENSES | 11,549.01 |
| GROWTH GROUPS & LEAD DEV EXP | 3,937.19 |
| STUDENT MINISTRIES EXPENSES | 0.00 |
| DL PRESCHOOL EXPENSES | 5,317.98 |
| | |
| TOTAL OTHER DISBURSEMENTS | 51,564.02 |
| | |
| TOTAL DISBURSEMENTS | 155,709.99 |
| | |
| ENDING BALANCE | $679,227.72 |

Page 1

Exhibit "C"

**Exhibit "D"** – Liquidation Analysis

*Plan Proponent's Estimated Liquidation Value of Assets*

| Assets | Liquidation value: |
|---|---|
| a. Cash on hand in bank accts (as of 4/30/14) | $    766,616.00 |
| b. Accounts receivable | $     33,339.00 |
| c. Inventory | $ -0- |
| d. Building and improvements | $ 4,933,740.00 |
| e. Parking Garage | $    405,750.00 |
| f. Furniture & Fixtures | $    105,600.00 |
| g. Equipment, Furniture, Fixtures | $    238,200.00 |
| *Total Assets at Liquidation Value* | *$ 6,583,245.00* |

| | |
|---|---|
| **Less:** | |
| Secured creditors recoveries | $17,289,769.00 |
| **Less:** | |
| Chapter 7 trustee fees and expenses | $    125,000.00 |
| **Less:** | |
| Chapter 11 administrative expenses | $     35,000.00 |
| **Less:** | |
| Priority claims, excluding administrative expense claims | $      5,000.00 |
| | |
| (1) Balance for unsecured claims | $   -0- |
| | |
| (2) Total dollar amount of unsecured claims | $    111,593.00 |
| | |
| *Percentage of Claims Which Unsecured Creditors Would Receive Or Retain in a Chapter 7 Liquidation:* | *$   -0-* |
| | |
| *Percentage of Claims Which Unsecured Creditors Will* | 5 % |

# Palm Beach Community Church 2015 Budget

| Community Outreach | | | |
|---|---|---|---|
| **Account Number** | **Account Name** | **Supervisor** | **2015 Budget** |
| **Revenue** | | | |
| 4100 | General Offering | Dr. Ray | $825,000 |
| 4120 | Christmas Offering | Dr. Ray | $150,000 |
| 4951 | Borland Center | Philip | $200,000 |
| 4440 | Interest Income | Philip | $600 |
| 4342 | Community Care | Brent | $1,320 |
| 4050 | Comminity & Church Events | Maribeth | $3,350 |
| 4750 | Oceana Coffee | Philip | $9,600 |
| 4447 | Food Preparation | Philip | $30,000 |
| | | | |
| | | **Total** | **$1,219,870** |
| **Expense** | | | |
| 6050 | Community & Church Events | Maribeth | $5,495 |
| 8150 | Ushers | Maribeth | $450 |
| 6356 | Community Care | Brent | $17,000 |
| 6120 | Evangelism | Maribeth | $52,035 |
| 6510 | Newcomers Lunch | Maribeth | $1,830 |
| | | | |
| | | **Total** | **$76,810** |
| | | | |
| | **Net** | | **$1,143,060** |

1

| Pastoral Ministries | | | |
|---|---|---|---|
| **Account Number** | **Account Name** | **Supervisor** | **2015 Budget** |
| **Expenses** | | | |
| 7615 | Salaries | Philip | $272,000 |
| 6351 | Contracted Services | Philip | $5,000 |
| 6800 | Housing Allowance | Philip | $76,840 |
| 6953 | Health Insurance | Philip | $13,115 |
| 7835 | Retirement | Philip | $12,000 |
| 6956 | Workmans Compensation | Philip | $5,500 |
| 7621 | Pastor & Staff Development | Philip | $7,570 |
| 7952 | Supplemental Payroll | Philip | $45,000 |
| 6690 | Future Staff Acquisition | Philip | $480 |
| 6958 | Dental Insurance | Philip | $1,046 |
| 6955 | Life Insurance | Philip | $1,134 |
| 6957 | Long Term Disability Insurance | Philip | $966 |
| 6959 | Visability Insurance | Philip | $358 |
| 6250 | Book/Study | Philip | $2,000 |
| 6740 | Gifts/Appreciation | Philip | $5,600 |
| | | | |
| | | **Total** | **$448,608** |

2

2

Exhibit "E"

| Worship Arts | | | |
|---|---|---|---|
| **Account Number** | **Account Name** | **Supervisor** | **2015 Budget** |
| **Expenses** | | | |
| 6372 | Contract Labor | John | $3,850 |
| 6470 | Visual Arts | John | $4,540 |
| 7320 | Equipment | John | $21,950 |
| 7390 | Music | John | $1,727 |
| 7930 | Set Design | John | $5,000 |
| 6875 | Honorariums | Dr. Ray | $1,000 |
| 7960 | Sunday Services | John | $3,332 |
| 8375 | Website | John | $1,010 |
| | | | |
| | | **Total** | **$42,409** |

| OPERATING & ADMINISTRATIVE | | | |
|---|---|---|---|
| **Account Number** | **Account Name** | **Supervisor** | **2015 Budget** |
| **Expense** | | | |
| 6215 | BCOA | Philip | $90,551 |
| 6634 | Interest Expense (Accrued) | Philip | $220,000 |
| 6605 | Counsel & Legal | Philip | $50,000 |
| 6606 | Property Taxes | Philip | $11,000 |
| 6950 | Insurance Liability | Philip | $67,000 |
| 6566 | Builiding Maintenance | Philip | $32,920 |
| 7440 | Janitorial Supplies | Philip | $12,500 |
| 8180 | Utilities | Philip | $98,459 |
| 8030 | Phone, Data & Alarm | Philip | $11,901 |
| 8033 | Comcast | Philip | $1,362 |
| 6680 | Furniture & Equipment | Philip | $7,669 |
| 6630 | Financial & Accounting | Philip | $16,480 |
| 6210 | Bank Charges | Philip | $1,200 |
| 7520 | Office Supplies | Philip | $7,002 |
| 7555 | Online Merchant Account | Philip | $6,600 |
| 6570 | Equipment Maintenance | Philip | $49,026 |
| 7650 | Postage & Courier | Philip | $2,290 |
| 8340 | WCA Membership | Philip | $249 |
| 7931 | Short/Over | Philip | $0 |
| 6975 | Information Technology | Philip | $4,740 |
| 7661 | Printing & Graphic Design | Maribeth | $6,540 |
| 7530 | SecureGive | Philip | $1,320 |
| | | | |
| | | **Total** | **$698,808** |



Exhibit "E"

| GROWTH GROUPS & LEADERSHIP DEVELOPMENT | | | |
|---|---|---|---|
| Account Number | Account Name | Supervisor | 2015 Budget |
| Revenue | | | |
| 4200 | Curriculum | Brent | $4,410 |
| 4340 | Events | Brent | $1,200 |
| 4451 | Leadership Summit | Brent | $3,300 |
| 4070 | Elders / Staff Lunch | Brent | $1,800 |
| | | | |
| | | Total | $10,710 |
| Expense | | | |
| 6398 | Curriculum | Brent | $4,910 |
| 6594 | Events | Brent | $1,100 |
| 7251 | Leadership Summit | Brent | $1,850 |
| 7622 | Elders / Staff Lunch | Brent | $1,800 |
| 6597 | Training & Supplies | Brent | $1,050 |
| 6594 | Events-Small Groups | Brent | $0 |
| | | | |
| | | Total | $10,710 |
| | | | |
| Net | | | $0 |

| DISCOVERYLAND PRESCHOOL | | | | |
|---|---|---|---|---|
| Account Number | Account Name | Supervisor | 2015 Budget | |
| Revenue | | | | |
| 4910 | Tuition & Fees | Maribeth | $1,000,000 | 3 |
| 4911 | DL Preschool Fundraising | Maribeth | $2,510 | |
| | | | | |
| | | Total | $1,002,510 | |
| Expense | | | | |
| 9101 | Curriculum | Maribeth | $6,000 | 3 |
| 9102 | Supplies | Maribeth | $4,000 | 3 |
| 9103 | Training & Licensing | Maribeth | $4,000 | 3 |
| 9105 | Security Checks | Maribeth | $400 | 3 |
| 7628 | DL Payroll | Maribeth | $250,000 | 3 |
| 9107 | Furniture, Fixtures, Equipt. | Maribeth | $10,400 | |
| 7629 | DL Payroll-Maintenance | Maribeth | $2,000 | 3 |
| 9109 | IT | Maribeth | $1,000 | |
| 9110 | Marketing | Maribeth | $1,200 | 3 |
| 9111 | Fundraising Exp | Maribeth | $2,510 | |
| 9112 | Supplemental Payroll | Maribeth | $6,500 | |
| 7950 | DL Expansion Expense | | $30,000 | 3 |
| | | | | |
| | | Total | $318,010 | |
| | | | | |
| Net | | | $684,500 | |

Exhibit "F"

| DISCOVERYLAND | | | |
|---|---|---|---|
| **Account Number** | **Account Name** | **Supervisor** | **2015 Budget** |
| Revenue | | | |
| 4145 | Event Revenue | Maribeth | $330 |
| 4148 | Discoveryland Fundraising | Maribeth | $580 |
| | | | |
| | | Total | $910 |
| Expense | | | |
| 6390 | Curriculum | Maribeth | $1,260 |
| 6336 | Dicoveryland Fundraising Exp | Maribeth | $200 |
| 7940 | Security System | Maribeth | $522 |
| 7990 | Supplies | Maribeth | $400 |
| | | | |
| | | Total | $2,382 |
| | | | |
| | Net Income / Expense | | -$1,472 |

| STUDENT MINISTRIES | | | |
|---|---|---|---|
| **Account Number** | **Account Name** | **Supervisor** | **2015 Budget** |
| Revenue | | | |
| 4420 | Fundraising | Charbel | $3,000 |
| 4269 | Snack Shack | Charbel | $2,400 |
| 4397 | Camps & Retreats | Charbel | $3,550 |
| 4391 | Mission Trip | Charbel | $5,000 |
| 4421 | Leadership Development | Charbel | $0 |
| 4380 | Outreach / Events | Charbel | $1,350 |
| | | | |
| | | Total | $15,300 |
| Expense | | | |
| 6685 | Fund Raising | Charbel | $0 |
| 6269 | Snack Shack | Charbel | $1,200 |
| 6397 | Camps & Retreats | Charbel | $3,540 |
| 7391 | Mission Trip | Charbel | $5,000 |
| 6162 | High School | Charbel | $600 |
| 7678 | Middle School | Charbel | $600 |
| 6381 | Security Checks | Charbel | $180 |
| 7265 | Leadership Development | Charbel | $855 |
| 7266 | Outreach / Events | Charbel | $3,325 |
| | | | |
| | | Total | $15,300 |
| | | | |
| | Net Income / Expense | | $0 |



Exhibit "E"

| Net Income/Expense | |
|---|---|
| | 2015 Budget |
| Income | $2,249,300 |
| Expense | $1,613,037 |
| | |
| **Net** | **$636,263** |

Exhibit "E"

## Projected 2015 Budget Backup

1. Borland Center
   a. Sales diminished in November and December after the announcement of Ch11. Since then we have seen a surplus and The Borland Center has provided the church with over $50,000 in the first quarter.
   b. After Ch11 is closed our projected income will continue to go up. We predict Borland will double its income to the church.
   c. There will be a Net income to Borland of $200,000 which will bring around $150,000 to the church.

2. Payroll
   a. Payroll has decreased by $61,000 and the housing allowance will decrease by $40,880. This opens up another $101,880.
   b. An additional $78,400 was cut from the preschool payroll.
   c. The total reduced from payroll is $180,280.

3. Discoveryland Christian Preschool
   a. Currently we are working with the city to double the size of our preschool. With the size doubling, so will the projected revenues.
   b. We filed an amendment to the resolution to the capacity of the preschool with the city commission on May 5th 2014. It should be approved in August.
   c. Most of the expense line items will increase as well, but we're still projecting Net income of $355,275 which reflects a 14% increase.

4. Mortgage
   a. The mortgage is factored in at $5,000,000 for 20 years at 5% interest, which comes out to $33,000 a month
   b. Legal counsel will also be reduced.

Exhibit "E"