**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**West Palm Beach Division**
**www.flsb.uscourts.gov**

IN RE:                                                          CASE NO. 13-35141-EPK
                                                                        CHAPTER 11

**PALM BEACH COMMUNITY**
**CHURCH, INC.,**

    **Debtor**

_____/

## DEBTOR'S SECOND AMENDED DISCLOSURE STATEMENT

FURR AND COHEN, P.A.
*Attorneys for Debtor*
By: Aaron A Wernick, Esq.
By: Robert C. Furr, Esq.
2255 Glades Road
One Boca Place, Suite 337W
Boca Raton, Florida 33431
(561) 395-0500
(561) 338-7532 fax
E-Mail: rfurr@furrcohen.com
E-Mail: awernick@furrcohen.com

# CONTENTS

**ARTICLE I- INTRODUCTION** ................................................................................3

**ARTICLE II - HISTORY OF DEBTOR** .................................................................5
    (A) History of the Debtor .................................................................................5
    (B) Insiders of the Debtor ................................................................................7
    (C) Management Before and During Bankruptcy...........................................8
    (D) Events Leading to the Chapter 11 Filing .................................................8
    (E) Significant Events During the Case ..........................................................8
    (F) Projected Recovery of Avoidable Transfers ...........................................11
    (G) Claims Objections ...................................................................................11
    (H) Current and Historical Financial Conditions..........................................11

**ARTICLE III - SUMMARY OF PLAN AND TREATMENT OF CLAIMS AND EQUITY
    INTERESTS** ...............................................................................................12
    (A) What is the Purpose of the Plan of Reorganization.................................12
    (B) Unclassified Claims .................................................................................12
    (C) Classes of Claims and Equity Interests....................................................16
    (D) Means of Implementing the Plan..............................................................16
    (E) Risk Factors ..............................................................................................18
    (F) Executory Contracts and Unexpired Leases ............................................18
    (G) Tax Consequences ....................................................................................19

**ARTICLE IV - CONFIRMATION REQUIREMENTS AND PROCEDURES...............19**
    (A) Who May Vote or Object .........................................................................19
    (B) Votes Necessary to Confirm Plan - Cram Down.......................................21
    (C) Liquidation Analysis.................................................................................21
    (D) Feasibility ................................................................................................21

**ARTICLE V - EFFECT OF CONFIRMATION OF PLAN**...................................22
    (A) Discharge of Debtor .................................................................................22
    (B) Modification of Plan .................................................................................22
    (C) Final Decree..............................................................................................22

**ARTICLE VI CONCLUSION**.................................................................................23

**EXHIBITS**

**DEBTOR'S SECOND AMENDED DISCLOSURE STATEMENT**

      The Debtor provides this Second Amended Disclosure Statement, which amends the first Amended Disclosure Statement filed on July 3, 2014 [DE#133], to all known creditors of the Debtor in order to disclose the information deemed to be material, important, and necessary for creditors to arrive at a reasonably informed decision in exercising their right to abstain from voting or to vote for acceptance or rejection of the Debtor's Second Amended Plan of Reorganization (the "**Plan**"). A copy of the Plan accompanies this Disclosure Statement.

## ARTICLE I.  INTRODUCTION

      This is the second amended disclosure statement (the "**Disclosure Statement**") of the Chapter 11 Debtor, PALM BEACH COMMUNITY CHURCH, INC. (the "**Debtor**", the "**Church**", or the "**Plan Proponent**"). This Disclosure Statement contains information about the Debtor and describes the Debtor's Plan.  You are urged to carefully read the contents of this Disclosure Statement before making your decision to accept or reject the Plan. Particular attention should be directed to the provisions of the Plan affecting or impairing your rights as they presently exist. The terms used herein have the same meaning as in the Plan unless the context hereof requires otherwise.

      THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT HAS BEEN SUBMITTED BY THE DEBTOR'S MANAGEMENT, UNLESS SPECIFICALLY STATED TO BE FROM OTHER SOURCES. NO REPRESENTATIONS, OTHER THAN THOSE SET FORTH HEREIN, CONCERNING THE DEBTOR (PARTICULARLY AS TO ITS FUTURE BUSINESS OPERATIONS OR THE VALUE OF ITS PROPERTY), ARE AUTHORIZED BY THE DEBTOR.

      *Your rights may be affected. You should read the Plan and this Disclosure Statement carefully and discuss them with your attorney. If you do not have an attorney, you may wish to consult one.*

      The proposed distributions under the Plan are discussed at pages 12-15 of this Disclosure Statement. General unsecured creditors are classified in Class 4, and will receive a distribution of 100% of their allowed claims, in equal monthly installments over 3 years.

      A.     **Purpose of This Document**

      This Disclosure Statement describes:

- The Debtor and significant events during the bankruptcy case,

- How the Plan proposes to treat claims of the type you hold (*i.e.*, what you will receive on your claim or equity interest if the Plan is confirmed),

- Who can vote on or object to the Plan,

- What factors the Bankruptcy Court will consider when deciding whether to confirm the Plan,

- Why the Plan Proponent, the Debtor, believes the Plan is feasible, and how the treatment of your claim under the Plan compares to what you would receive on your claim in liquidation, and

- The effect of confirmation of the Plan.

**Be sure to read the Plan as well as the Disclosure Statement. This Disclosure Statement describes the Plan, but it is the Plan itself that will, if confirmed, establish your rights.**

B.      **Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing**

The Court has not yet confirmed the Plan described in this Disclosure Statement. This section describes the procedures pursuant to which the Plan will or will not be confirmed.

The Court has set a hearing on confirmation of the Plan for the date and time set forth in the *Order (1) Approving Disclosure Statement; (II) Setting Hearing On Confirmation of Plan; (III) Setting Hearing on Fee Applications; (IV) Describing Various Deadlines; and (V) Describing Debtor's Obligations*. Creditors may vote on the Plan by filling out and mailing the accompanying ballot form to the Bankruptcy Court. **Your ballot must be filed on or before _____.** As a creditor, your vote is important. In order for the Plan to be deemed accepted, of the ballots cast, creditors that hold as least 2/3 in amount and more than 1/2 in number of the allowed claims of impaired Classes must accept the Plan. However, you are advised that the Debtor may be afforded the right under the Code to have the Plan confirmed over the objections of dissenting creditors consistent with the limitations set forth in the Code.

NO REPRESENTATIONS CONCERNING THE DEBTOR (PARTICULARLY AS TO ITS FUTURE BUSINESS OPERATIONS OR THE VALUE OF ITS PROPERTY), ARE AUTHORIZED OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT.

- 4 -

ANY REPRESENTATIONS OR INDUCEMENTS MADE TO SECURE YOUR ACCEPTANCE WHICH ARE OTHER THAN AS CONTAINED IN THIS DISCLOSURE STATEMENT SHOULD NOT BE RELIED UPON BY YOU IN ARRIVING AT YOUR DECISION, AND SUCH ADDITIONAL REPRESENTATIONS AND INDUCEMENTS SHOULD BE REPORTED TO COUNSEL FOR THE DEBTOR, WHO IN TURN SHALL DELIVER SUCH INFORMATION TO THE UNITED STATES TRUSTEE FOR SUCH ACTION AS MAY BE DEEMED APPROPRIATE.

### C.    Identity of Person to Contact for More Information

If you want additional information about the Plan, you should contact Robert C. Furr, Esq. or Aaron A. Wernick, Esq., Furr and Cohen, P.A., attorneys for the Debtor, 2255 Glades Road, Suite 337W, Boca Raton, FL 33431.

### D.    Disclaimer

*The Court has approved this Disclosure Statement as containing adequate information to enable parties affected by the Plan to make an informed judgment about its terms. The Court has not yet determined whether the Plan meets the legal requirements for confirmation, and the fact that the Court has approved this Disclosure Statement does not constitute an endorsement of the Plan by the Court, or a recommendation that it be accepted.*

## ARTICLE II. HISTORY OF THE DEBTOR

### A.    Description and History of the Debtor's Business

The Debtor filed a voluntary Petition for Reorganization under Chapter 11 of the United States Code, 11 U.S.C. 101 *et seq*., (the "**Code**") in the United States Bankruptcy Court for the Southern District of Florida (the "**Bankruptcy Court**") on October 20, 2013 (the "**Petition Date**"). The Debtor has continued to operate its business as a Debtor-In-Possession pursuant to § 1108 of the Code. The Debtor was formed on September 12, 1985 as a Florida Non-Profit Corporation. A sister company, PBCOMMUNITYCHURCH, Inc., was formed on September 9, 2005 as a Florida Non-Profit Corporation, for the purpose of facilitating the establishment of a credit facility with Nord Bank, N.A., and is currently a non-operating entity with no bank accounts or assets. It was the borrower on the loan and the Debtor was the guarantor of the loan.

- 5 -

The Debtor pledged its real property in the mortgage to Fidelity Federal Bank & Trust (described more fully in Article III(c)(1) *infra*).

The Debtor provides a 403(b) retirement plan to which its employees are entitled to contribute. The Debtor provides vacation, sick leave, medical, dental, vision, prescription drug, life insurance and disability benefits in which Employees participate and the appropriate amounts for coverage are deducted from wages.

The Debtor is a 501(c)(3) non-profit corporation located Palm Beach Gardens, Florida and was formed in September 1985 as a church and held its first services in the PGA Cinema VI in Loehman's Plaza. The attendance grew dramatically and services were moved to the William T. Dwyer High School in December 1991 and then to the Eissey Campus Theatre in 1994. The Debtor owns property on PGA Boulevard west of Military Trail in Palm Beach Gardens. The Church property is situated on 11.43 acres and contains a 50,054 square foot multi-purpose facility with a theatre, children/youth space, office space, banquet hall and kitchen facilities. A portion of the Debtor's real property is a certain parcel of real property located at the northeast quadrant of the intersection of PGA Boulevard and Shady Lakes Drive, in the city of Palm Beach Gardens, Florida, consisting of approximately 9.03 acres (the "**Undeveloped Land**"), which parcel the Debtor has listed with a real estate broker, CB Richard Ellis, for sale. The Debtor will also be filing a section 363 sale motion as to the Undeveloped Land, with the proceeds of said sale to be a component in the repayment of the secured claim of PNC (described more particularly in Article III, *infra*).

The Church's vision over the last 25 years has been to create a community-gathering place for the spiritual development of the Church family and the community at large. The Church runs an on-campus pre-school facility that is called Discoveryland Christian Preschool. There is an active youth and student ministry in which many school students participate. The Church has an outreach program that provides community care, as well as providing counseling. The Church receives on average per week collections at services in the approximate amount of $17,500.00. The collection funds pay for salaries, marketing, facility expense, utilities, insurance for the building and the property and workers' compensation insurance. The Christmas offering is approximately $103,000.00, which is used primarily for families in need, and is also used to purchase equipment and facility repairs.

The Borland Center Building (the "**Borland Center**") contains 50,054 square feet of space that sits on 2.43 acres. The Borland Center for the Performing Arts is an event venue for weddings, bar/bat mitzvahs, galas, parties, trade shows, conventions, performances, concerts and other life celebrations. The building can accommodate up to 500 people for elegant events. It also offers free covered parking. There is 10,000 square feet of functional meeting space with wireless internet and conference equipment. The 9,000 square foot ballroom-theater is an excellent space for music performances, comedy shows, charity events and other performances.

The Borland Center generates approximately $2,490.00 per week for the Church and these funds are used to pay facility expenses, insurance, electricity, and air conditioning.

The Oceana Coffee concession generates approximately $165.00 per week and Discoveryland School generates tuition of approximately $9,700.00 per week, which funds are used for teachers' payroll, school operations, supplies, insurance and workers' compensation insurance.

The Debtor employs approximately 22 employees who provide various services to the Debtor. Approximately 13 of the employees are hourly wage earners, while the remaining 9 are salaried personnel. Salaried employees consist of the Debtor's pastors, directors, business manager and immediate staff that run the church. The hourly employees consist of the Debtor's non-management personnel.

At the time the bankruptcy was filed, the Debtor's assets consisted of $619,129 cash on hand, account receivables of $1,091,000.00 and furniture, fixtures and equipment valued at $1,141,000.00. The value of the real property is $11,152,899.00, according to the Palm Beach County Property Tax Appraiser's 2013 assessment.

B.     **Insiders of the Debtor**

Insiders of the Debtor include Dr. Raymond Underwood, the Pastor of the Church. Pastor Underwood also serves as president, director and Elder. Steve Nester serves as Elder, Paul Connealy serves as Chairman and Treasurer, Gary Kendall serves as Elder, and Max Byrd serves as Elder. The Elders of the Church do not receive any salary or compensation. Philip Underwood is the son of Pastor Raymond Underwood and is employed full time at the Church. Post-confirmation, Dr. Raymond Underwood will be paid $9,139.00 monthly, which includes salary, a

- 7 -

housing allowance, medical insurance and a 403(b) contribution. Philip Underwood will be paid $4,973.27 including salary, insurance and a 403(b) contribution.

| INSIDER | INCOME | DESCRIPTION |
|---------|--------|-------------|
| Dr. Raymond Underwood | $98,848.00/ yr. | Includes salary, dental, vision, medical, 403(b) and housing allowance. |
| Philip Underwood | $55,000.00/ yr. | Includes salary, dental and vision insurance. |

C.     **Management of the Debtor Before and During the Bankruptcy**

During the two years prior to the date on which the bankruptcy petition was filed, the officers, directors, managers or other persons in control of the Debtor (collectively the "Managers") were Dr. Raymond Underwood as President and Elder, Paul Connealy as Treasurer and Elder, Steve Nester as Elder, Gary Kendall as Elder, and Max Byrd as Elder. Philip Underwood and Tomas Seifert were employees that managed and assisted in the day-to-day operations of the Church office.

The Managers of the Debtor during the Debtor's chapter 11 case have been: Dr. Raymond Underwood, Paul Connealy, Steve Nester and Gary Kendall. The Managers do not receive salary or other benefits, except for Dr. Raymond Underwood.

After the Effective Date of the order confirming the Plan, the directors, officers, and voting trustees of the Debtor, or successor of the Debtor under the Plan (collectively the "Post Confirmation Managers"), will be: Dr. Raymond Underwood, Paul Connealy, Steve Nester and Gary Kendall. The responsibilities and compensation of these Post Confirmation Managers are described in section II.B. of this Disclosure Statement.

D.     **Events Leading to Chapter 11 Filing**

The Chapter 11 filing was prompted by the foreclosure proceedings filed by the secured lender, PNC Bank, N.A. ("PNC") on the Debtor's property and the breakdown of negotiations between the parties.

E.     **Significant Events During the Bankruptcy Case**

Significant events during the Debtor's bankruptcy case:

Motion to Maintain Existing Bank Accounts and Use of Existing Business Forms

and Checks [DE#9]; Interim Order entered approving the Motion [DE#18]; Final Order entered approving the Motion [DE#36]; Agreed Final Order Authorizing the Debtor to Maintain Bank Accounts and Continue Use of Existing Business Forms and Checks and Continue to Use Existing Cash Management System [DE#44]

Motion to Authorize the Debtor to Pay Pre-Petition Wages and Benefits [DE#11]; Order Approving Authority to Honor and Pay Pre-Petition Wages [DE#16]

Motion for Continuation of Utility Services and Provide Adequate Protection [DE#14]; Final Order Determining Adequate Assurance of Payment for Future Utility Services and Resolving Related Objections [DE#35]

Order Scheduling Initial Chapter 11 Status Conference [DE#6]. Order entered by Court Shortening Time for Filing Proofs of Claim to January 21, 2014 and Setting a Deadline to file a Plan and Disclosure Statement on or before February 18, 2014 [DE#31]

Application to Employ Robert C. Furr, Esq. and Furr and Cohen, P.A. as counsel for the Chapter 11 Debtor [DE#25]; Order Approving the employment [DE#50]. Furr and Cohen, P.A. represented the Debtor prepetition in settlement negotiations and was paid $32,932.90 for services rendered from April 16, 2013 to May 31, 2013. Furr and Cohen received a retainer of $47,067.10 on May 31, 2013 from Palm Beach Community Church for representation in a Chapter 11 bankruptcy proceeding. On May 29, 2014 the Court awarded interim fees in the amount of $66,256 (representing 80% of requested amount) and costs of $4,725.72 [DE#110].

Application to Employ Roy Wiley CPA and Covenant Financial Inc. d/b/a Smart Plan Financial Services as Accountants for the Debtor-in-Possession [DE#32]; Order Approving the employment [DE#51]. This accounting firm has been performing tax and accounting services for the debtor since 1993. The Debtor will pay the accounting firm $1250 per month to prepare all required returns and financial documents. The Debtor will be charged the firm's standard billing rates ranging from $60 per hour for financial specialists and $125 per hour for certified public accountant services, including the filing of required monthly, quarterly and yearly returns and reports and for preparation of yearly Federal Income Tax Return and other accounting matters, plus actual expenses.

Emergency Motion for Authorization to Release Escrowed Funds wherein the Debtor requested authority to return an earnest money deposit in the escrow account of Fowler White Boggs, PA in the amount of $100,000.00 relating to the prepetition, September 24, 2013, purchase and sale contract for the purchase of the Undeveloped Land. Southeast Investments Inc., the potential purchaser, had the right to terminate the contract during the Inspection Period. On November 25,

2013 Southeast Investment Inc. sent a letter of termination of the contract and demanded return of its earnest money deposit [DE#41]; Order Granting the Motion [DE#49]

Motion to Reject Lease of Wells Fargo Financial Leasing re Acct #4783 and DeLage Landen Financial Services Inc. Acct #6568 [DE#53]; Order Granting Motion to Reject the prepetition Leases [DE#57]

Motion to Extend Exclusivity Period for Filing Chapter 11 Plan and Disclosure Statement [DE#59]; Order Granting Motion to Extend Exclusivity Period [DE#68]

Motion to Extend Time to File Plan of Reorganization and Disclosure Statement [DE#61]; Order Granting Motion to Extend Time to File Plan and Disclosure Statement [DE#68]

Motion to Assume Executory Contract and Equipment Lease: (a) License Agreement with Carefree Catering; (b) Service Agreement with Johnson Controls; (c) Hospitality Service Agreement with Oceana Coffee Inc.; (d) Service Agreement with Protection One; (e) Service Agreement with Terminix Commercial Pest Control; (f) Equipment Rental Agreement with Copy Source [DE#64]. Order Granting Motion to Assume [DE#71]

Application to Employ Lynette Green, Real Estate Agent, and CBRE, Inc. Realtor, to market the Undeveloped Land. The commission will be 3% of the gross sales price. Order Approving Application to Employ [DE#84]

The Debtor filed its Plan of Reorganization [DE#98] and Disclosure Statement [DE#99] on May 16, 2014. The U.S. Trustee filed an Objection to the Disclosure Statement [DE#115]; PNC Bank filed an Objection to the Disclosure Statement [DE#117].

Application to Employ John R. Eubanks, Jr., Esq. and the law firm of Breton Lynch Eubanks & Suarez-Murias, P.A. to act as special counsel to the Debtor in matters regarding the sale of the Undeveloped Land. [DE#121]

During the Chapter 11 proceeding, the Debtor has provided documentation, pictures and financial information on the Church property to several real estate brokers and realtors throughout Palm Beach County. The property has been shown to several interested purchasers.

During the Chapter 11 proceeding, the Debtor is in the process of expanding the school, increasing the revenues from the Borland Center by aggressively marketing the facility to the community, and decreasing its payroll by staff reduction and consolidation of duties of staff members. At the time of the

bankruptcy filing, the Debtor's account receivables were $14,556.80. The receivables from employees in the amount of $714.72 were paid off during the case. The Borland Center receivables were $13,842.06 at the time the petition was filed, and an additional $61,365.19 was charged to the Borland Center account and $54,483.58 was paid during the Chapter 11. The current balance due on the Borland Center receivables is $15,713.68.

Also, the Church has been working on possible mergers, on obtaining financing and has also negotiated with Pierce 131 LLC to purchase the Undeveloped Land for $7M in one immediate, lump sum payment with a 45-day inspection period and 10-day close, "as is, where is".

F.      **Projected Recovery of Avoidable Transfers**

There are no preference, fraudulent conveyance, or other avoidance actions for the Debtor to pursue.

G.      **Claims Objections**

The Claims Bar Date expired on **January 21, 2014**.  The Court set March 31, 2014 as the deadline for all parties to file objections to claims [DE#68]. The Debtor has filed Objections to certain claims. A synopsis of the claims objections is listed below:

| Claim No. | | Claimant | Amount of Claim | Disposition of Claim |
|---|---|---|---|---|
| [DE#74] | 1 | Wells Fargo Financial Leasing | $5,555.52 | Stricken |
| [DE#74] | 2 | Wells Fargo Financial Leasing | $5,555.52 | Stricken |
| [DE#74] | 2-1 | Wells Fargo Financial Leasing | $5,555.52 | Stricken |
| [DE#77] | 7 | Florida Power and Light | $5,798.48 | Settled |

H.      **Current and Historical Financial Conditions**

The Debtor's most recent financial statements as of the Petition Date are set forth in the attached Exhibit "B". The summary pages of the Monthly Operating Reports filed since the commencement of the Debtor's bankruptcy case are set forth in Exhibit "C".

### ARTICLE III. SUMMARY OF THE PLAN OF REORGANIZATION AND TREATMENT OF CLAIMS

A.      **What is the Purpose of the Plan of Reorganization?**

As required by the Code, the Plan places claims in various classes and describes the treatment each class will receive. The Plan also states whether each class of claims is impaired or unimpaired. If the Plan is confirmed, your recovery will be limited to the amount provided by the Plan.

B.    **Unclassified Claims**

Certain types of claims are automatically entitled to specific treatment under the Code. They are not considered impaired, and holders of such claims do not vote on the Plan. They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code. As such, the Plan Proponent has *not* placed the following claims in any class:

1.    *Administrative Expenses*

Administrative expenses are costs or expenses of administering the Debtor's chapter 11 case that are allowed under §507(a)(2) of the Code. Administrative expenses also include the value of any goods sold to the Debtor in the ordinary course of business and received within 20 days before the date of the bankruptcy petition. The Code requires that all administrative expenses be paid on the effective date of the Plan, unless a particular claimant agrees to a different treatment.

The following chart lists the Debtor's estimated administrative expenses, and their proposed treatment under the Plan:

| Type | Estimated Amount Owed | Proposed Treatment |
|---|---|---|
| Expenses Arising in the Ordinary Course of Business After the Petition Date | $0.00 | N/A |
| The Value of Goods Received in the Ordinary Course of Business Within 20 Days Before Petition Date | $0.00 | Paid in full on the effective date of the Plan, or according to terms of obligation if later. |
| Estimated professional fees, to be approved by the Court: 1. Furr and Cohen, P.A. 2. Roy Wiley, CPA d/b/a Smart Plan | $100,000.00 $5,000.00 | Paid in full on the effective date of the Plan, or according to separate written agreement, or according to court order if such fees have not been approved by the Court on the Effective Date of the Plan. |

| 3. Breton Lynch Eubanks & Suarez-Murias, PA, Special Real Estate Counsel | $10,000.00 | |
|---|---|---|
| Clerk's Office Fees | $0.00 | n/a |
| Office of the U.S. Trustee Fees | $4,875.00 | Paid in full on the effective date of the Plan. |
| TOTAL | $119,875.00 | |

2.    ***Priority Tax Claims***

Priority tax claims are unsecured income, employment, and other taxes described by §507(a)(8) of the Code. Unless the holder of such a §507(a)(8) priority tax claim agrees otherwise, it must receive the present value of such claim, in regular installments paid over a period not exceeding 5 years from the order of relief.

The following chart lists the Debtor' estimated §507(a)(8) priority tax claims and their proposed treatment under the Plan:

| Description (name and type of tax) | Estimated Amount Owed | Date of Assessment | Treatment |
|---|---|---|---|
| Internal Revenue Service | $0.00 | n/a | n/a |

C.    **Classes of Claims and Equity Interests**

The following are the classes set forth in the Plan, and the proposed treatment that they will receive under the Plan:

1.    ***Classes of Secured Claims***

Allowed Secured Claims are claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under §506 of the Code. If the value of the collateral or setoffs securing the creditor's claim is less than the amount of the creditor's allowed claim, the deficiency will be classified as a general unsecured claim.

The following chart lists all classes containing Debtor's secured prepetition claims and their proposed treatment under the Plan:

| Class | Description | Insider Status | Impairment | Treatment |
|---|---|---|---|---|
| 1 | *Secured Claim of:* <br> **Palm Beach County Tax Collector** <br> *Collateral:* <br> 52-42-42-01-21-001-0000 <br><br> *Priority of lien:* <br> Real Estate Taxes 2013 <br> *Allowed Secured Amount*: <br> $11,342.74 plus all statutory interest. <br> Total Amt. Due Through Oct. 19, 2019 payment period $20,700.50 | No | Impaired | Paid in full, with statutory interest, no later than five years from Petition Date. |
| 2 | *Secured claim of*: <br> **PNC Bank, N.A.,** Successor by merger to National City Bank and Fidelity Federal Bank & Trust <br><br> *Collateral description*: <br> Tract 1of Borland Center, PB 104, PG 110, Palm Beach Co, FL, together with easement rights, personal property, accounts, inventory, rents, <br><br> *Allowed Secured Amount*: <br> $17,278,427.60 <br><br> *Priority of lien*: first mortgage and security agreement <br><br> Principal balance <br> $11,332,870.30 <br><br> Total claim = <br> $17,278,426.60 | No | Impaired | The Debtor has been actively marketing the Undeveloped Land and has filed a § 363 sale motion seeking to sell the land to a stalking horse bidder for $7M, subject to higher and better offers at auction. The Debtor currently has a signed contract for $7M from the stalking horse bidder. The contract is attached to the Expedited Motion To Sell Free and Clear of Liens [DE#140] filed with the Court. The Debtor believes that the auction sale of the Undeveloped Land will result in a significantly higher sale price than $7M. In the event that the highest and best bid is below $10M, the Debtor reserves the right to request that the Court disapprove the contemplated sale. In the event that the sale is consummated for an amount satisfactory to the Debtor, then all net proceeds from the sale will be paid to PNC. The Debtor also believes that if site plan approval is obtained for the Undeveloped Land, then a sale of the Land with its entitlements will generate a substantially higher amount than what the property will receive in its present form.  Therefore, the Debtor reserves the right, if the Undeveloped Land is not sold at auction, to subsequently sell the land with its entitlements, i.e., site plan approvals, before the balloon payment is due PNC (discussed below). <br> PNC has elected to have its claim treated under 1111(b).  Therefore, the Debtor will pay to PNC Bank the amount of its secured claim, after reduction of the claim by the amount received from the sale of the Undeveloped Land, over a period of 20 years, with the remaining balance of its claim to be paid as a balloon payment at such time.   The Total Property is worth $11.6M; |

| | | | | |
|---|---|---|---|---|
| | | | | therefore, pursuant to 1111(b), PNC is entitled to the amount of its claim without interest. Consequently, the Debtor will pay PNC $25,000 per month for 20 years, or less if the total claim amount is mitigated by the proceeds from the sale of the Undeveloped Property, with a balloon payment at the end of the 20-year period of the outstanding amount owed. |
| 3 | **Everbank Commercial Finance, #2637**<br><br>*Collateral description*: Konica Minolta Bizhub C451, SN#A00K010014822 (Copy Source, Value: 35,000<br><br>*Allowed Secured Amount*: $20,287.00<br><br>*Priority of lien*: equipment lease<br><br>Total Claim: $21,225.00 | No | Impaired | Monthly Pmt.: $849.00<br><br>[Twenty-five payments remaining.]<br>During the Chapter 11 proceeding, the Debtor has been making payments to Everbank pursuant to the terms of its lease. Post-Confirmation, payments will cease for 3 months following the Effective Date. On the first of the 3rd month following the Effective Date, the original contractual payments, along with all contractual interest, will re-commence. Payments will then continue on a monthly basis until the lease is paid in full. |

2.    ***Classes of Priority Unsecured Claims***

Certain priority claims that are referred to in §§507(a)(1), (4), (5), (6), and (7) of the Code are required to be placed in classes. The Code requires that each holder of such a claim receive cash on the effective date of the Plan equal to the allowed amount of such claim. However, a class of holders of such claims may vote to accept different treatment. There are no claims under §§507(a)(1), (4), (5), (6), and (a)(7) of the Code.

3.    ***Class of General Unsecured Claims***

General unsecured claims are not secured by property of the estate and are not entitled to priority under §507(a) of the Code.

The payments to be made by the Debtor pursuant to this Plan shall be in full settlement and satisfaction of all Claims against the Debtor.

The following chart identifies the Plan's proposed treatment of Class 4 which consists of general unsecured claims against the Debtor. A list of creditors is attached hereto as Exhibit "A".

| Class | Description | Impairment | Treatment |
|---|---|---|---|
| **4** | General Unsecured Claims | Impaired | Total general unsecured claims are approximately $50,000.00. The one general unsecured claimant is Ben Devries (total claim: $50,000.00). Ben Devries will be paid in full in equal monthly installments over 3 years. s. Each Class 4 claimant's distribution shall be in full satisfaction of its claim against the Debtor. |

    4.   *Class of Equity Interest Holders*

The Debtor is a 501(c)(3) corporation and does not have any equity interest holders. The Reorganized Debtor shall continue to operate as a 501(c)(3) non-profit organization and will continue ownership of the underlying property. All property of the estate shall re-vest in the Reorganized Debtor.

    D.   **Means of Implementing the Plan**

    1.   ***Source of Payments*:** Payments and distributions under the Plan will be funded by the following:

Debtor's funds on hand, revenue from its banquet hall special events, tuition from its preschool, revenue from concession operations, and tithing and other donations from church members.

    2.   ***Treatment of Claims and Interests Under the Plan:***

All payments under this Plan shall commence on the Effective Date unless otherwise provided in the Plan.

*Administrative Claims*: All Allowed Administrative Claims shall be paid:

(a) in full on the Effective Date or, if such Claim is objected to, the Date of a Final Order allowing any such Administrative Claim;

OR

(b) upon such other terms as may be agreed to between the Debtor and each such Administrative Claimant.

Administrative costs are estimated to be approximately $120,000.00.

All case related payments for services, costs, and expenses will be subject to Court approval. All payments shall be from the Debtor's cash from operations of the business.

All fees due under 11 U.S.C. § 1129(a)(12) shall be paid as required by 28 U.S.C. § 1930.

*Tax Claims:* The Debtor is tax-exempt under Section 501(c)(3) of the Internal Revenue Code.

### 3. *Post-confirmation Management*

The Post-Confirmation Managers of the Debtor, and their compensation, shall be as follows:

| Name | Insider Status | Position | Compensation |
|------|----------------|----------|--------------|
| Dr. Raymond Underwood | Yes | Pastor | $98,848.00 |
| Paul Connealy | Yes | Member | $0.00 |
| Steve Nester | Yes | Member | $0.00 |
| Gary Kendall | Yes | Member | $0.00 |
| Max Byrd | Yes | Member | $0.00 |

E.    **Risk Factors**

The proposed Plan has no risk factors, as the Debtor has the ability to make all payments and distributions required under the Plan.

F.    **Executory Contracts and Unexpired Leases**

- 17 -

The Plan lists all executory contracts and unexpired leases that the Debtor will assume under the Plan. "Assumption" means that the Debtor has elected to continue to perform the obligations under such contracts and unexpired leases, and to cure defaults of the type that must be cured under the Code, if any. There are no existing defaults on any of the contracts or leases assumed by the Debtor. Each of the Executory Contracts listed in paragraph 6.01 in the Plan have been assumed and the Court has approved the assumption of each [DE#71].

All executory contracts and unexpired leases that are not listed in the Plan have been rejected and the Court has approved the rejection [DE#57].

Article VI of the Plan entitled "Executory Contracts" indicates that all Executory Contracts and unexpired leases of the Debtor not expressly assumed prior to the confirmation date, or not at the confirmation date the subject of a pending application to assume, shall be deemed to be rejected as of the Effective Date of the Plan.

**Any claim for damages arising by reason of the rejection of an executory contract or unexpired lease must be filed with the Bankruptcy Court no later than thirty days after the order confirming the Plan or shall be forever barred and unenforceable. Any such claims, when allowed by the Bankruptcy Court, shall be deemed allowed Class 4 general unsecured claims.**

Any claim based on the rejection of a contract or lease will be barred if the proof of claim is not timely filed, unless the Court orders otherwise.

G.    **Tax Consequences of Plan**

***CREDITORS CONCERNED WITH HOW THE PLAN MAY AFFECT THEIR TAX LIABILITY SHOULD CONSULT WITH THEIR OWN ACCOUNTANTS, ATTORNEYS, AND/OR ADVISORS.***

The Debtor strongly urges that each creditor consult with its own tax advisor regarding the federal, state, local and other tax consequences that the implementation of the Plan will have on them.

## ARTICLE IV. CONFIRMATION REQUIREMENTS AND PROCEDURES

To be confirmable, the Plan must meet the requirements listed in §§ 1129(a) or (b) of the Code. These include the requirements that: the Plan must be proposed in good faith; at least one

impaired class of claims must accept the plan, without counting votes of insiders; the Plan must distribute to each creditor at least as much as the creditor would receive in a chapter 7 liquidation case, unless the creditor holder votes to accept the Plan; and the Plan must be feasible. These requirements are not the only requirements listed in §1129, and they are not the only requirements for confirmation.

### A.   **Who May Vote or Object**

Any party in interest may object to the confirmation of the Plan if the party believes that the requirements for confirmation are not met.

Many parties in interest, however, are not entitled to vote to accept or reject the Plan. A creditor has a right to vote for or against the Plan only if that creditor has a claim that is both (1) allowed or allowed for voting purposes and (2) impaired.

In this case, the Plan Proponent classes 1, 2, 3 and 4 are impaired and that holders of claims in each of these classes are therefore entitled to vote to accept or reject the Plan.

### 1.   *What Is an Allowed Claim?*

Only a creditor with an allowed claim has the right to vote on the Plan. Generally, a claim is allowed if either (1) the Debtor has scheduled the claim on the Debtor's schedules, unless the claim has been scheduled as disputed, contingent, or unliquidated, or (2) the creditor has filed a proof of claim, unless an objection has been filed to such proof of claim. When a claim is not allowed, the creditor holding the claim cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim for voting purposes pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure.

### 2.   *What Is an Impaired Claim?*

As noted above, the holder of an allowed claim has the right to vote only if it is in a class that is *impaired* under the Plan. As provided in §1124 of the Code, a class is considered impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class.

### 3.   *Who is Not Entitled to Vote*

The holders of the following types of claims are *not* entitled to vote:

- ·   holders of claims that have been disallowed by an order of the Court;
- ·   holders of other claims that are not "allowed claims" (as discussed above), unless they have been "allowed" for voting purposes.

·     holders of claims in unimpaired classes;
·     holders of claims entitled to priority pursuant to §§507(a)(2), (a)(3), and (a)(8) of the Code; and
·     holders of claims in classes that do not receive or retain any value under the Plan;
·     administrative expenses.

*Even If You Are Not Entitled to Vote on the Plan, You Have a Right to Object to the Confirmation of the Plan and to the Adequacy of the Disclosure Statement.*

    4.    *Who Can Vote in More Than One Class*

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim, or who otherwise hold claims in multiple classes, is entitled to accept or reject a Plan in each capacity, and should cast one ballot for each claim.

    B.     **Votes Necessary to Confirm the Plan**

If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one impaired class of creditors has accepted the Plan without counting the votes of any insiders within that class, and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by "cram down" on non-accepting classes, as discussed later in Section B.2.

    1.    *Votes Necessary for a Class to Accept the Plan*

A class of claims accepts the Plan if both of the following occur: (1) the holders of more than one-half (1/2) of the allowed claims in the class, who vote, cast their votes to accept the Plan, and (2) the holders of at least two-thirds (2/3) in dollar amount of the allowed claims in the class, who vote, cast their votes to accept the Plan.

    2.    *Treatment of Non-Accepting Classes: "Cram Down"*

Even if one or more impaired classes reject the Plan, the Court may nonetheless confirm the Plan if the non-accepting classes are treated in the manner prescribed by §1129(b) of the Code. A plan that binds non-accepting classes is commonly referred to as a "cram down" plan. The Code allows the Plan to bind non-accepting classes of if it meets all the requirements for consensual confirmation except the voting requirements of §1129(a)(8) of the Code, does not

"discriminate unfairly," and is "fair and equitable" toward each impaired class that has not voted to accept the Plan.

*You should consult your own attorney if a "**cramdown" confirmation will affect your claim, as the variations on this general rule are numerous and complex.***

C.    **Liquidation Analysis**

To confirm the Plan, the Court must find that all creditors who do not accept the Plan will receive at least as much under the Plan as such claim would receive in a chapter 7 liquidation. A liquidation analysis is attached to this Disclosure Statement as Exhibit "D".

D.    **Feasibility**

The Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor, unless such liquidation or reorganization is proposed in the Plan.

1.    *Ability to Initially Fund Plan*

The Plan Proponent believes that the Debtor will have enough cash on hand on the Effective Date of the Plan to pay all the claims and expenses that are entitled to be paid on that date. The amount of cash on hand on the Effective Date of the Plan is estimated to be $750,000.00.

2.    *Ability to Make Future Plan Payments and Operate Without Further Reorganization*

The Plan Proponent must also show that it will have enough cash over the life of the Plan to make the required Plan payments.

The Plan Proponent has provided projected financial information. Those projections are listed in Exhibit "E".

*You Should Consult with Your Accountant or other Financial Advisor If You Have Any Questions Pertaining to These Projections.*

<u>ARTICLE V</u>. **<u>EFFECT OF CONFIRMATION OF PLAN</u>**

A.    **DISCHARGE OF DEBTOR**

- 21 -

On the Effective Date of the Plan, the Debtor shall be discharged from any debt that arose before confirmation of the Plan, subject to the occurrence of the Effective Date, to the extent specified in §1141(d)(1)(A) of the Code, except that the Debtor shall not be discharged of any debt (i) imposed by the Plan, (ii) of a kind specified in §1141(d)(6)(A) if a timely complaint was filed in accordance with Rule 4007(c) of the Federal Rules of Bankruptcy Procedure, or (iii) of a kind specified in §1141(d)(6)(B). After the Effective Date of the Plan your claims against the Debtor will be limited to the debts described in clauses (i) through (iii) of the preceding sentence.

B.    **Modification of Plan**

The Plan Proponent may modify the Plan at any time before confirmation of the Plan. However, the Court may require a new disclosure statement and/or re-voting on the Plan. The Plan Proponent may also seek to modify the Plan at any time after confirmation only if (1) the Plan has not been substantially consummated *and* (2) the Court authorizes the proposed modifications after notice and a hearing.

D.    **Final Decree**

Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Plan Proponent, or such other party as the Court shall designate in the Plan Confirmation Order, shall file a motion with the Court to obtain a final decree to close the case. Alternatively, the Court may enter such a final decree on its own motion.

## ARTICLE VI  CONCLUSION

Under the Plan, all creditors of Debtor will participate in some manner in the distribution to be made thereunder. The Debtor believes that the distributions contemplated in its Plan are fair and afford all Claimants equitable treatment. ACCORDINGLY, THE DEBTOR RECOMMENDS THAT ALL CLAIMANTS VOTE TO ACCEPT THE PLAN.

[THE REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK.]

This Second Amended Disclosure Statement respectfully submitted:


DATED: _____7/17/2014_____

PALM BEACH COMMUNITY CHURCH, INC.


BY _Dr. R. Underwood_

Dr. Raymond Underwood, President


FURR AND COHEN, P.A.
*Attorney for Debtor*
2255 Glades Road, Suite 337W
Boca Raton, FL 33431
561-395-0500/561-338-7532 fax
By ___/s/ *Aaron A. Wernick*_____
       Aaron A. Wernick, Esq.
       Florida Bar No. 14059
       E-Mail: awernick@furrcohen.com
By _____/s/ *Robert C. Furr*_____
       Robert C. Furr, Esq.
       Fla. Bar No. 210854
       E-Mail: rfurr@furrcohen.com

### EXHIBIT "A"

| CLASS | CREDITOR | Claim # | Amount | |
|---|---|---|---|---|
| Admin. | U.S. Trustee | | $ 4,875.00 (est.) | |
| Admin. | Furr and Cohen, P.A. | | $ 25,000.00 (est.) | |
| Admin. | Accountant | | $ 5,000.00 (est.) | |
| Admin. | Special real estate counsel | | $10,000.00 (est.) | |
| 1 | Palm Beach Co Tax Coll | 3 | $11,352.00 + interest | |
| 2 | PNC Bank, N.A. | 6 | $17,278,427.60 | |
| 3 | Everbank Commercial Finance | 4 | $20,287.00 | |
| 4 | Ben Devries | 5 | $50,000.00 | |
| | | | | |
| | **Total Class 4** | | **$50,000.00** | |