**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**
**www.flsb.uscourts.gov**

IN RE:                                                      CASE NO. 13-35141-EPK
                                                                 CHAPTER 11
PALM BEACH COMMUNITY
CHURCH, INC.,

                    Debtor.
_____/

**DEBTOR'S SECOND MOTION FOR THE ENTRY OF AN ORDER (i) AUTHORIZING**
**THE SALE OF UNDEVELOPED PROPERTY, FREE AND CLEAR OF ALL LIENS,**
**CLAIMS AND ENCUMBRANCES; (ii) APPROVING BIDDING PROCEDURES; (iii)**
**APPROVING THE NOTICE OF SALE; (iv) APPROVING THE PURCHASE**
**AGREEMENT; (v) SCHEDULING AN AUCTION SALE TO ACCEPT HIGHER AND**
**BETTER BIDS; AND (vi) SCHEDULING A HEARING TO APPROVE THE SALE**
**ARISING OUT OF AN AUCTION PURSUANT TO 11 U.S.C. § 363**

        PALM BEACH COMMUNITY CHURCH, INC., the Debtor and Debtor-in-Possession,

(the "**Debtor**"), by and through undersigned counsel, files this *Second Motion for The Entry of*

*an Order (i) Authorizing the Sale of Undeveloped Property, Free and Clear of All Liens, Claims*

*and Encumbrances; (ii) Approving Bidding Procedures; (iii) Approving the Notice of Sale; (iv)*

*Approving the Purchase Agreement; (v) Scheduling an Auction Sale to Accept Higher and Better*

*Bids; and (vi) Scheduling a Hearing to Approve the Sale Arising Out of an Auction Pursuant to*

*11 U.S.C. § 363* (the "**Sale Motion**"), and in support thereof, state as follows:

**BACKGROUND**

        1.      On October 20, 2013 (the "**Petition Date**"), the Debtor filed a voluntary petition

for relief under Chapter 11 of the Bankruptcy Code.

        2.      The Debtor is operating its business and managing its affairs as a debtor-in-

possession. 11 U.S.C. §§ 1107(a) and 1108. As of the date hereof, no Trustee, Examiner or

Creditors' Committee has been appointed.

3.      The Debtor is a 501(c)(3) corporation which operates a church and related services including a religious school, and is located on an 11.6 acre parcel (the "**Total Property**") in Palm Beach Gardens, Florida.

4.      The parcel of property that the Debtor seeks to sell is a portion of the Total Property, located at the northeast quadrant of the intersection of PGA Boulevard and Shady Lakes Drive, consisting of approximately 9.03 acres of undeveloped land (the "**Property**"). The Property does not include the Borland Center, or the real property on which the Borland Center is located, or the adjacent area containing seventy-eight parking spaces. The legal description for the Property will be determined by a metes and bounds description prepared from a boundary survey by a licensed Florida surveyor.

5.      PNC Bank N.A. ("**PNC**") holds a valid, properly perfected first priority lien against the Total Property. As of the Petition Date, the Debtor was indebted to PNC in the principal amount of $11,332,870.30, interest to October 20, 2013 at 16% per annum of $5,799,778.61 and attorney's fees and costs of $135,778.69, for a total owed of $17,278,427.60.

## THE PROPOSED SALE

6.      The Debtor proposes to sell the Property, free and clear of all liens, claims and encumbrances pursuant to § 363(f) of the Bankruptcy Code (the "**Sale**"), with any liens attaching to the proceeds of the Sale, subject to restrictions, easements and limitations of record. The Sale is subject to higher and better offers.

7.      The general terms of the proposed Sale are as follows:

    a.  PNC Bank (the "**Purchaser**") will be the staking horse bidder at $6,310,400 and will have the right to credit bid its mortgage.

b.   The Purchaser will act as a "stalking horse" bidder in the event that there are other Qualified Bidders and that an Auction (described below) is required.

## RELIEF REQUESTED

8.      The Debtor respectfully requests the entry of an Order authorizing the Sale of the Property to the Purchaser, free and clear of all liens, claims and encumbrances pursuant to the terms of the Purchase Agreement, subject to higher and better offers, approving the Bidding Procedures, approving the Notice of Sale, and scheduling an Auction to accept higher and better bids.

9.      The Debtor requests that the Court enter a finding that the Successful Bidder, as defined herein, constitutes a good faith purchaser of the Property pursuant to 11 U.S.C. § 363(m) such that the reversal or modification on appeal of the sale of the Property to the Successful Bidder shall not affect the validity of the Sale to the Successful Bidder, whether or not the Successful Bidder knew of the pendency of the appeal.

10.      In addition, the Debtor also requests, in order to expedite the sale of the Property, that the Court waive the requirement that any Order issued by this Court approving the sale of the Property be stayed for fourteen days as required by Federal Rule of Bankruptcy Procedure 6004(h).

11.      The Debtor believes that the Auction and bidding procedures set forth below will insure that the estate realizes the highest and best possible value for the Property.

12.      Accordingly, the Debtor proposes to sell the Property free and clear of all liens, claims and encumbrances, and to expose the stalking horse bid to higher and better offers at an auction in the event that there are other Qualified Bidders, as defined below.

## PROPOSED BIDDING PROCEDURES

13.     A person ("**Bidder**") may be qualified to participate in the Auction if, by the bid deadline of 5:00 p.m. on December 2, 2014 (the "**Bid Deadline**"), the following are provided:

a.  A deposit of Two Hundred Fifty Thousand Dollars and 00/100 ($250,000.00) (the "**Deposit**") payable by cashier's check or wire transfer into the non-interest bearing escrow account of Furr and Cohen, P.A., along with the Social Security Number or EIN of the bidding person or entity;

b.  An executed purchase agreement, in a form substantially similar as that which is attached as Exhibit "A" (the "**Purchase Agreement**"), which has no contingencies as to the validity, effectiveness or binding nature of the offer, including, without limitation, contingencies for financing, due diligence or inspection, and containing a bid price of at least $6,800,000.00; and

c.  Evidence, sufficient to Debtor, that the Bidder either has sufficient cash to close the transaction at its bid price or, alternatively, a firm and unequivocal agreement from a recognized financial institution that it will unconditionally fund any portion of the purchase price that the Bidder proposes to finance.

(The "**Qualifying Bid Packet**").

14.     The Qualifying Bid Packet must be delivered by the Bid Deadline to Aaron A. Wernick, Esq., of Furr and Cohen, P.A., 2255 Glades Road, Suite 337W, Boca Raton, FL 33431, Telephone (561)395-0500, e-mail: awernick@furrcohen.com. The Qualifying Bid Packet must include the Bidder's mailing address, telephone number, and email address where the bidder may be contacted. Acceptable methods of delivery of the Qualifying Bid Packet are first class U.S. Mail, overnight mail, email, and hand delivery.

15.     Upon satisfaction of all of the requirements set forth above, the Debtor shall evaluate each Qualifying Bid Packet submitted in accordance with the foregoing paragraph and may then identify a person, persons, entity or entities from among those who submitted a Qualifying Bid Packet and deem those person(s) "**Qualified Bidders**". PNC is deemed a Qualified Bidder. By participating in the Auction, each Qualified Bidder consents to its bid being designated as a back-up bid.

16.     Due diligence must be completed no later than November 30, 2014.

17.     The Purchaser must share the results from its due diligence with the other Bidders.

18.     Between the Bid Deadline and the Auction and during the Auction, the Debtor may, in its discretion, discuss, negotiate or seek clarification of any Qualified Bid.

## **AUCTION**

19.     *Qualified Bids:* In the event that there are one or more Qualified Bidders on or before the Bid Deadline, the Debtor shall conduct an auction (the "**Auction**") at the Law Offices of Furr and Cohen, P.A., 2255 Glades Road, Suite 337W, Boca Raton, Florida 33431 on December 4, 2014 at 11 a.m.

20.     *The Auction.* The Auction shall be conducted by Aaron A. Wernick, Esq. and shall be a forum in which the Qualified Bidders may make competing bids to purchase the Property in minimum bid increments of $25,000.00, until the Debtor receives what is determined to be the highest and best offer to purchase the Property. The Debtor will also identify an acceptable backup Bidder (the "**Backup Bidder**"). Qualified Bidders may appear at the Auction or submit competing bids telephonically.

21.    *Return of Deposits:* Except as otherwise stated herein, each Deposit shall be maintained in a non-interest bearing account and subject to the jurisdiction of this Court. Within five business days from the entry of an Order approving the Sale, the Debtor shall return, by check, all Deposits to all Qualified Bidders, except the Successful Bidder or any person or entity who agrees to become a Backup Bidder. In the event that the Successful Bidder closes the Sale, the Debtor shall return the Backup Bidder's Deposit within five business days from the Closing. In the event the Successful Bidder closes on the purchase of the Property, its Deposit shall be applied by the Debtor against the Purchase Price.

22.    *Bankruptcy Court Jurisdiction:* The Bankruptcy Court shall retain exclusive jurisdiction over any matter or dispute relating to the sale, the Bid Procedures, the Agreement, the Auction, or any other matter that in any way relates to the foregoing. Any party disputing the sale, the Bid Procedures, the Agreement, the Auction or any other matter that in any way relates to the foregoing shall file an objection with the Bankruptcy Court as soon as practicable to facilitate resolution of the objection.

23.    *Miscellaneous:* All Qualified Bidders and the Purchaser shall be deemed to have waived any right to a jury trial in connection with any disputes relating to the Auction or the Sale. All purchase agreements shall be governed by and construed in accordance with the laws of the State of Florida.

WHEREFORE, the Debtor seeks the entry of an order granting the relief set forth above, (i) authorizing the sale of the undeveloped Property, free and clear of all liens, claims and encumbrances; (ii) approving the bidding procedures outlined herein; (iii) approving the Notice of Sale; (iv) approving the Purchase Agreement; (v) scheduling an auction for December 4, 2014 at 11 a.m.; (vi) scheduling a hearing to approve the sale arising out of the Auction; (vii) waiving

the requirement that the Order approving the sale of the Property be stayed for fourteen days as required by Federal Rule of Bankruptcy Procedure 6004(h); and (viii) for such other and further relief as this Court deems just and proper.

<p align="center">**CERTIFICATE OF SERVICE**</p>

I HEREBY CERTIFY that a true and correct copy of the foregoing will be furnished by was furnished by CM/ECF and/or First Class U.S. Mail to all creditors and interested parties along with the Notice of Hearing.

RESPECTFULLY SUBMITTED this 3rd day of November, 2014.

> FURR AND COHEN, P.A.
> *Attorneys for Debtor*
> 2255 Glades Road
> One Boca Place, Suite 337W
> Boca Raton, FL 33431
> (561) 395-0500/(561) 338-7532-fax
>
> By: /s/ *Aaron A. Wernick*
>    Aaron A. Wernick, Esq.
>    Florida Bar No. 14059
>    Email: awernick@furrcohen.com

**<u>EXHIBIT "A"</u>**
**<u>PURCHASE AGREEMENT</u>**

**"AS IS" PURCHASE AND SALE AGREEMENT**
**FOR UNDEVELOPED PROPERTY**

This "AS IS" Purchase and Sale Agreement for Undeveloped Property ("Agreement") is made by and between **PALM BEACH COMMUNITY CHURCH INC.,** a Florida not-for-profit corporation, (Seller"), _____, a _____ ("Buyer") and is entered into as of this ___ day of _____, 2014 ("Effective Date").

In consideration of the mutual representations, covenants and provisions contained herein along with other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Seller and Buyer agree as follows:

## ARTICLE I

## DESCRIPTION OF PROPERTY

1.1   <u>Purchase and Sale of Undeveloped Property.</u> Seller hereby agrees to sell and convey to Buyer, and Buyer agrees to purchase from Seller, that certain undeveloped parcel of real property located at the Northeast quadrant of the intersection of PGA Blvd and Shady Lakes Drive, in the city of Palm Beach Gardens, Palm Beach County, Florida, more particularly described in Exhibit "A" and depicted in Exhibit "B" attached hereto and incorporated by reference herein consisting of approximately 9.03 acres (the "Undeveloped Property").

1.2   <u>Legal Description.</u>  The legal description for the Undeveloped Property shall be agreed upon by the parties during the Buyer's Inspection Period as hereinafter defined. **The legal description shall be determined by an accurate metes and bounds description prepared from a Boundary Survey by a licensed Florida surveyor who is reasonably acceptable to Seller.**  The Undeveloped Property shall specifically *not include* the Borland Center, or the real property on which the Borland Center is located ("Developed Property").  During the Inspection Period, Buyer and Seller shall work together to determine the feasibility of allowing Buyer to utilize the adjacent area containing seventy-eight (78) parking spaces.

## ARTICLE II
## PURCHASE PRICE

2.1   <u>Purchase Price.</u> The total purchase price for the Property which Buyer agrees to pay to Seller shall be _____**AND _____/100 DOLLARS ($_____,_____,000.00)** ("Purchase Price").

2.2   <u>Payment of Purchase Price.</u>  Buyer shall pay the Purchase Price as follows:

a.   Initial Deposit: $250,000.00

b.   Balance of Purchase Price: $_____

c.   Total Purchase Price: $_____

**ARTICLE III**
**DEPOSIT**

3.1     <u>Amount: Terms.</u> Contemporaneously with its execution of this Agreement, Buyer shall pay to Seller's Counsel, Furr & Cohen, P.A. ("Escrow Agent") an initial deposit in the amount of **TWO HUNDRED FIFTY THOUSAND AND NO/100 DOLLARS ($250,000.00)** ("Initial Deposit") which shall be held by Escrow Agent in escrow pending the Closing or Termination of this Agreement.

The Deposit shall be held by Escrow Agent in trust and escrow pending the Closing or termination of this Agreement, at which time the monies shall be (i) applied and credited against the Purchase Price at Closing; or (ii) in the event of a Termination, refunded to Buyer or disbursed to Seller in accordance with the terms and provision of this Agreement.  Except as otherwise may be provided herein, the Deposit shall be held by Escrow Agent in a non-interest bearing account and Buyer and Seller agree that the Deposit is fully earned, non-refundable, and at risk as of the Effective Date.

**ARTICLE IV**
**INSPECTION PERIOD**

4.1     <u>Due Diligence and Inspection Duration.</u>

a.   <u>Due Diligence package</u>:  Prior to the Effective Date, Seller has provided Buyer with a package of documents and information ("Due Diligence Package") for Buyer's use in conducting its due diligence with respect to the Undeveloped Property. Buyer acknowledges that the Due Diligence Package includes information which was developed or generated prior to Seller's filing for Bankruptcy and that Seller makes no representation or warranty of any kind with respect to the accuracy, adequacy or completeness of the Due Diligence Package.

b.   <u>Inspection Period</u>: Buyer shall have the right, subject to the terms herein, for a period beginning on the Effective Date and ending on November 30, 2014 (the "Inspection Period") to enter upon, inspect and investigate the Undeveloped Property to determine whether or not the same is satisfactory to Buyer.

4.2     <u>Termination During Inspection Period.</u> Buyer shall have the right at any time prior to 5:00 P.M. on the last day of the Inspection Period to notify Seller and Escrow Agent in writing that it has elected to terminate this Agreement if Buyer determines for any reason or no reason that the Undeveloped Property is not satisfactory to Buyer. Upon receipt of such notice, the Escrow Agent shall return to Buyer the Deposit.  If Buyer does not terminate the Agreement prior to the expiration of the Inspection Period, Buyer shall be deemed to (i) have completed its due diligence; (ii) have waived any further right to undertake any additional review, due diligence, investigations, and inquiries into the Undeveloped Property; (iii) have acknowledged that the Undeveloped Property is acceptable to Buyer; (iv) has waived any objections to the condition of title to the Undeveloped Property; and (v) agree to potentially be the "stalking horse bidder" that will proceed to Auction under the terms of this Agreement.

**ARTICLE V**
**INDEPENDENT INSPECTION**

2

5.1     Independent Inspection:  EXCEPT FOR THE REPRESENTATIONS SET FORTH IN SECTION ARTICLE 7 HEREIN, BUYER ACKNOWLEDGES THAT IT WILL BE PURCHASING THE UNDEVELOPED PROPERTY WITH NO WARRANTIES OR REPRESENTATIONS BUT BASED SOLELY UPON BUYER'S OWN INDEPENDENT EXAMINATION, STUDY, INSPECTIONS, AND KNOWLEDGE AND NOT BASED ON ANY INFORMATION PROVIDED OR TO BE PROVIDED BY SELLER.  BUYER FURTHER ACKNOWLEDGES THAT ANY INFORMATION PROVIDED OR TO BE PROVIDED WITH RESPECT TO THE DUE DILIGENCE PACKAGE HAS BEEN OBTAINED FROM A VARIETY OF SOURCES AND THAT SELLER HAS NOT MADE AND WILL NOT BE REQUIRED TO MAKE ANY INDEPENDENT INVESTIGATION OR VERIFICATION OF SUCH INFORMATION AND SELLER MAKES NO REPRESENTATION AS TO THE ACCURACY OR COMPLETENESS OF SUCH INFORMATION.  FINALLY, BUYER UNDERSTANDS THAT WHILE SELLER HAS TO THE BEST OF ITS KNOWLEDGE PROVIDED ALL OF THE DOCUMENTATION IN ITS POSSESSION, THERE COULD BE DOCUMENTS WHICH MAY HAVE BEEN EXCLUDED FROM THE DUE DILIGENCE PACKAGE WHICH, IF KNOWN TO BUYER COULD HAVE MADE A MATERIAL IMPACT UPON ITS DETERMINATION OF VALUE OF THE UNDEVELOPED PROPERTY.  BUYER WAIVES ANY RELIANCE ON THE DUE DILIGENCE PACKAGE AND ON ANY ORAL REPRESENTATIONS MADE BY SELLER OR ON SELLER'S BEHALF.

5.2  Entry and Inspection.  During the Inspection Period, Seller shall make the Undeveloped Property and Due Diligence Package available for inspection by Buyer. During the Inspection Period, Buyer may, at Buyer's sole risk and expense, undertake a complete physical inspection of the Property as Buyer deems appropriate, including but not limited to soil/groundwater tests and environmental assessments and audits, provided, however, that any such inspection does not cause any  damage to the Property. All such inspections, investigations, reviews and examinations shall be undertaken at Buyer's sole cost and expense. Buyer will coordinate all on-site inspections with Seller and Seller agrees to reasonably cooperate with Buyer, including without limitation making Seller and any of Seller's representatives that are familiar with the Property and its present and past uses available for interview by Buyer or Buyer's agent.

5.3  Restoration After Inspection  After completing any inspections, Buyer shall restore and repair any damage caused by Buyer's inspections at Buyer's sole risk and expense. Buyer agrees to indemnify, defend, and hold harmless Seller from any liability, costs, or expense as a result of any damage caused by Buyer in connection with the activities listed in this Section 5.3, including without limited to property damage, personal injury, or death.  The terms and covenants of this subsection shall survive the Closing or Termination of this Agreement.

5.3  Confidentiality:  Buyer hereby covenants and agrees that, except as required by law and except to the extent provided to Buyer's agents, representatives, potential investors and lenders and for the purpose of conducting its due diligence or pursuing the transaction contemplated by this Agreement, Buyer and its employees, representatives and agents (i) shall not disclose to any third person or Governmental Entity non-public information, or other proprietary information, contained in the Due Diligence Package, or any other information provided to Buyer by  Seller, and (ii) shall not report or disclose to any third person or Governmental Entity any non-public data, results, tests, or work product obtained in connection with Buyer's inspection of the Undeveloped Property, including, but not limited to, any appraisals. The terms and covenants of this subsection shall survive the Closing or Termination

of this Agreement.

5.4 <u>Return of Information</u>.  In the event this Agreement is Terminated by Buyer or Seller for any reason, Buyer covenants and agrees it shall immediately return to Seller all of the Due Diligence Package along with any other information provided by Seller to Buyer, including copies thereof, in the control or possession of Buyer or its representatives and agents, as well as deliver copies of any information which Buyer may have obtained as a result of its own investigation of the Undeveloped Property up until the time of Termination.  The terms and covenants of this subsection shall survive the Closing or Termination of this Agreement.

## ARTICLE VI

## "AS IS, WHERE IS" SALE

6.1 "<u>AS IS, WHERE IS</u>".  IT IS EXPRESSLY UNDERSTOOD AND AGREED THAT BUYER ACCEPTS THE CONDITION OF THE UNDEVELOPED PROPERTY "AS IS, WHERE IS-WITH ALL FAULTS" WITHOUT ANY IMPLIED REPRESENTATION, WARRANTY OR GUARANTEE AS TO MERCHANTABILITY, FITNESS FOR ANY PARTICULAR PURPOSE OR REPRESENTATION OR WARRANTY AS TO THE CONDITION, SIZE OR VALUE OF SUCH UNDEVELOPED PROPERTY, EXCEPT ONLY AS MAY BE OTHERWISE EXPRESSLY PROVIDED IN THIS AGREEMENT AND SELLER HEREBY EXPRESSLY DISCLAIMS ANY AND ALL SUCH IMPLIED REPRESENTATIONS, WARRANTIES OR GUARANTEES. WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, SELLER MAKES NO REPRESENTATIONS OR WARRANTIES WITH RESPECT TO (A) THE VALUE, NATURE, QUALITY, OR CONDITION OF THE UNDEVELOPED PROPERTY, (B) THE SUITABILITY OF THE UNDEVELOPED PROPERTY FOR ANY ACTIVITIES THAT BUYER MAY CONDUCT THEREON, (C) THE COMPLIANCE OF THE UNDEVELOPED PROPERTY WITH ANY LAWS, ORDINANCES, OR REGULATIONS OF ANY APPLICABLE GOVERNMENTAL ENTITY, (D) COMPLIANCE OF THE UNDEVELOPED PROPERTY WITH ANY ENVIRONMENTAL PROTECTION, POLLUTION, OR LAND USE LAWS, RULES, REGULATIONS, ORDERS, OR REQUIREMENTS, INCLUDING THE EXISTENCE IN OR ON THE UNDEVELOPED PROPERTY OF HAZARDOUS MATERIALS, (E) THE ZONING, TAX CONSEQUENCES, PHYSICAL CONDITION, UTILITY CAPACITY OR COMMITMENT FOR UTILITY CAPACITY, OPERATING HISTORY OR PROJECTIONS, VALUATIONS, GOVERNMENTAL APPROVALS OR GOVERNMENTAL REGULATIONS WHICH MAY BE APPLICABLE, COMPLIANCE WITH SPECIFICATIONS, LOCATION, EXISTENCE OF, OR COMPLIANCE WITH APPLICABLE LAWS, RULES, REGULATIONS, RESTRICTIVE COVENANTS OR OTHER ENCUMBRANCES OF, TO OR BY THE UNDEVELOPED PROPERTY, (G) ANY OTHER MATTER WITH RESPECT TO THE UNDEVELOPED PROPERTY, EXCEPT AS MAY BE SPECIFICALLY SET FORTH WITHIN THIS AGREEMENT.

6.2    <u>Release of liability</u>:  Without limiting the above, Buyer, on behalf of itself and any successors and assigns, waives and releases Seller, Seller's affiliates, and their employees, officers, agents and their respective successors and assigns from any and all demands, claims, legal or administrative proceedings, losses, liabilities, damages, penalties, fines, liens, judgments, costs or expenses whatsoever (including, without limitation, attorneys' fees and costs), whether direct or indirect, known or unknown, foreseen or unforeseen, arising from or relating to the Undeveloped Property including the physical condition of the Undeveloped Property or ay claim in connection with

4

the Undeveloped Property or any law any law or regulation applicable thereto, including the presence or alleged presence of asbestos or harmful or toxic substances in, on, under or about the Property, including, without limitation, any claims under or on account of (i) the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as the same may have been or may be amended from time to time, and similar state statutes, and any rules and regulations promulgated thereunder, (ii) any other federal, state or local law, ordinance, rules or regulation, now or hereafter in effect, that deals with or otherwise in any manner relates to, environmental or health and safety matters of any kind, or (iii) this Agreement or the common law.

6.3     Limitation of Liability.  In no event shall Seller be liable under this Agreement for any incidental, indirect, impact, consequential or punitive damages.

6.4     Survival of Closing: The provisions of this Section 6 shall survive the Closing

<div align="center">

**ARTICLE VII**
**REPRESENTATIONS AND WARRANTIES.BY SELLER**

</div>

Seller hereby represents and warrants to Buyer as follows:

7.1     Organization. Seller is a Florida not-for-profit corporation duly organized, validly existing, and in good standing under the laws of the State of Florida.

7.2     Authority. Seller has full power and authority to enter into this Agreement. Upon execution hereof, and the conduct of a hearing to approve the Sale and entry of an Order approving the Sale by the Bankruptcy Court ("Sale Order") as set forth further below, this Agreement shall be the binding and legal obligation of Seller and enforceable against Seller according to its terms.

7.3     Actions and Proceedings.

7.3.1     Outside of the below listed Bankruptcy Case and Foreclosure Action, Seller has no actual knowledge, nor has Seller received any written notice of, nor does Seller know of any basis for, any pending litigation or action by any organization, person or individual or any claim, action or proceeding, actual or threatened, by any Governmental Authorities or any other party that would materially affect the use, occupancy, leasing or value of the Property or any part thereof. Seller shall notify Buyer within Three (3) days of Seller becoming aware of or receiving notice of any such claim, action or proceeding or the existence thereof, and the action Seller proposes to take to dispose of such claim, action or proceeding. Thereafter, Seller shall commence and diligently pursue disposition of such claim, action or proceeding until completed and shall keep Buyer notified thereof.

7.3.2     Foreclosure Action. Notwithstanding the provisions of Section 7.3.1 Buyer acknowledges that Seller has disclosed that Seller is a defendant in the following proceeding initiated by PNC Bank N.A.  ("Bank") pending in the 15th Judicial Circuit in and for Palm Beach County, Florida, *PNC Bank, N.A., etc., v. Palm Beach Community Church, Inc., etc., et al.,* Case No. 50 2011 CA 002578 XXX MB AV ("Foreclosure Action").

7.3.3     Bankruptcy Case. Notwithstanding the provisions of Section 7.3.1 Buyer acknowledges that Seller has disclosed that on or about October 20, 2013, Seller filed a voluntary petition under Chapter 11 of the United States Bankruptcy Code, which is presently pending in the

<div align="center">5</div>

United States Bankruptcy Court for the Southern District of Florida, West Palm Beach Division under Case # 13-35141- EPK ("Bankruptcy Case"). As such, as set forth further below, the Agreement and the sale of the Undeveloped Property are subject to the entry of a Sale Order by the Bankruptcy Court and could also be subject to a higher and/or better offer(s), in accordance with the Bid Procedures and Bid Order adopted by the Bankruptcy Court.

7.4    <u>Tree Mitigation and Wetlands Mitigation.</u> Buyer acknowledges that Seller has disclosed that in accordance with City Resolution No. 94, 2009 relating to offsite mitigation, the City of Palm Beach Gardens ("City") shall require one of the following with regard to the Undeveloped Property's compliance with offsite mitigation: either a) provide .29 acres of additional onsite preservation, or b) make a monetary mitigation payment to the City. Buyer understands that it will be required to and agrees to comply with City Resolution No. 94 upon Closing of the Sale. Buyer shall indemnify and hold Seller harmless against any action or claim by the City to enforce the offsite mitigation requirement against Seller, Seller's affiliates, or their respective successors or assigns. The preceding sentence shall survive the Closing hereof.

7.5    <u>Borland Center Owners' Association, Inc.</u> The Property is within the jurisdiction of the Borland Center Owners' Association, Inc. ("BCOA") Currently, Seller has two (2) of the four (4) votes of the membership of the BCOA. The annualized assessment of the BCOA (payable quarterly) ("BCOA Assessments") is approximately $90,000 for 2014. Effective upon Closing, Buyer will have one of Seller's two votes in the BCOA and will be required to pay that share of BCOA expenses as applicable to the Undeveloped Property, calculated by a fraction, the numerator of which is the area of the Property and the denominator of which is the area of the entire property owned by the Seller. The area of all property owned by the Seller is 11.43± acres and the area of the Undeveloped Property is 9.03± acres; thus, the amount of the annualized assessment for 2014 that would be applicable to the Property would be 79.00% of approximately $90,000, or approximately $81,000.

7.6    <u>Survival of Closing</u>: Each of the representations and warranties of the Seller as set forth in this Section 7 shall survive the Closing Date for a period six (6) months.

## ARTICLE VIII

## REPRESENTATIONS, WARRANTIES AND COVENANTS BY BUYER

8.1    <u>Organization.</u> Buyer is an existing Florida Limited Liability Company duly organized, validly existing and in good standing under the laws of the State of Florida.

8.2    <u>Authority</u>. Buyer has the requisite power and authority to execute and deliver this Agreement and any documents required to be executed to consummate the transaction contemplated under this Agreement.

8.3    <u>Conflicts and Defaults</u>. Neither the execution and delivery of this Agreement by Buyer nor the performance by Buyer of the transactions contemplated herein will, to Buyer's knowledge, violate or constitute an occurrence of default under any provision of, or conflict with, or result in acceleration of any obligation under, or give rise to a right by any party to terminate its obligations under, any material contract, instrument, order, judgment, decree, or other arrangement to which Buyer is a party or is bound. Buyer is not in violation of any of its organizational documents.

6

8.4    <u>Consents and Approvals</u>.  Except for the Bankruptcy Court Approval set forth in Article IX herein, no consent, approval, order or authorization of, or registration, declaration or filing with, any Governmental Entity or any Person is required with respect to Buyer in connection with the execution, delivery or performance by Buyer of its obligations under this Agreement except for consents, approvals, orders, authorizations, registrations, declarations or filings the failure of which to obtain or to make would not be material.

8.5    <u>Funds for the Acquisition</u>.  Buyer has access to sufficient unencumbered funds to pay in cash the Purchase Price and all of its fees and expenses relating to this Agreement and the transactions contemplated hereby.

8.6    <u>Survival of Closing</u>: Each of the representations and warranties of the Seller as set forth in this Section 8 shall survive the Closing Date for a period of six (6) months.

<div align="center"><b><u>ARTICLE IX</u></b><br><b><u>BANKRUPTCY COURT APPROVAL</u></b></div>

9.1    <u>Cooperation</u>.

(a)    Seller shall use all commercially reasonable efforts to (i) obtain all consents and approvals of all governments, and all other Persons, required to be obtained by Seller to effect the transaction(s) contemplated by this Agreement, and (ii) take or cause to be taken, all action, and to do, or cause to be done, all things necessary or proper, consistent with applicable law, to consummate and make effective in an expeditious manner the transactions contemplated hereby.

(b)    At the request and expense of Buyer, at any time after the Closing Date, Seller shall execute and deliver such documents as Buyer or its counsel may reasonably request to effectuate the purpose of this Agreement.

(c)    To the extent Seller and Buyer enter into this Agreement prior to the entry of the Sale Order, Seller and Buyer shall use commercially reasonable efforts to cooperate, assist and consult with each other to secure the entry of the Sale Order following the date hereof, and to consummate the transactions contemplated by this agreement, including furnishing affidavits or other documents or information for filing with the Bankruptcy Court.

9.2    <u>Approval.</u>  Seller and Buyer acknowledge that this Agreement and the sale of the Assets are subject to approval by the Bankruptcy Court. Seller and Buyer acknowledge that the sale of the Assets to Buyer is subject to higher and better offers in accordance with the Bid Procedures and the Bid Procedures Order.

9.3    <u>Bidding Issues</u>.  Seller and Buyer acknowledge that Seller may seek or entertain one or more bids for the purchase of the Undeveloped Property in accordance with the Bid Procedures and that the Bid Procedures will provide that Seller retains the right at Auction to reject all bids, including, the bid reflected by this Agreement, subject to the terms of the Bid Procedures.

<div align="center"><b><u>ARTICLE X</u></b><br><b><u>CLOSING</u></b></div>

10.1    <u>Closing</u>  The closing of the sale on the Undeveloped property Assets ("Closing") shall take place on or before five (5) business days after the date on which the Sale Order has become a final, non-appealable order and no appeals have been commenced ("Closing Date"). Closing shall take place in Palm Beach County, Florida, at the offices of Seller's counsel or by "mail away" procedure through Seller's counsel as closing agent ("Closing Agent") The Closing will be effective as of 11:59 p.m. EST on the Closing Date

10.1    <u>Closing Costs</u>. Buyer shall be responsible for any and all costs associated with Closing, including without limitation, any costs of obtaining the Boundary Survey referenced in Section 1.2, title reports, title commitments, title insurance, and a title policy for the Undeveloped Property, the recording fees for the deed of conveyance, documentary and stamp taxes, any financing instruments, and all of its own attorney's fees and costs.

10.2    <u>Real Property Taxes and Assessments.</u> Seller represents and warrants that because the Seller is tax exempt under Section 501(3(c) of the Internal Revenue Code, the Undeveloped Property is exempt from ad valorem taxation. In the event that because of the change of ownership of the Property at Closing, the Property becomes subject to ad valorem taxation for the year of Closing, Buyer shall pay all such taxes.  Seller represents that the Undeveloped Property is subject to non-ad valorem assessments imposed by Northern Palm Beach County Improvement District and the Solid Waste Authority of Palm Beach County.  All such non-ad valorem assessments shall be prorated at Closing.  In the event that the amounts of said assessments for the year of Closing are unknown at the time of Closing, the prorations shall be calculated based on the assessment amounts for the prior tax year.  In such event, the proration shall be final and there will be <u>no</u> subsequent re-proration.

10.3 <u>Borland Center Owners Association Assessments.</u> At Closing the re-apportioned BCOA Assessment for 2013 with respect to the Property will be prorated between Seller and Buyer as of the Closing Date.

10.4    <u>Seller's Deliveries at Closing:</u>

      (a)    At Closing, Seller shall deliver to Buyer the following documents:

           (i)    A Special Warranty Deed conveying title to the Real Property;

           (ii)    FIRPTA affidavit from Seller.

           (iii)    A copy of the Sale Order, approving the sale, free of all liens and encumbrances, according to §363 of the United States Bankruptcy Code.;

           (iii)    A closing statement evidencing the financial aspects of the transaction contemplated in this Agreement;

           (iv)    A Notice of Dismissal of the Foreclosure Action and release of the Lis Pendens filed in same; and

           (v) Any other documents reasonably required by the title company.

10.5    <u>Buyer's Deliveries at Closing:</u>

8

(a)      At Closing, Buyer shall deliver the following items or documents duly executed as required:

(i)      The Purchase Price, after applying or taking into account the Deposit and the Proration Items, to be paid in cash via wire transfer of immediately available funds to an account designated by Closing Agent;

(ii)      A closing statement evidencing the financial aspects of the transaction contemplated in this Agreement; and

(iii)      A Certificate, dated the date of the closing, and signed by the Buyer stating that the representations and warranties contained herein are true, correct and compete as of the date of Closing.

(iv)      An executed Assumption of Seller's Obligations with respect to the mitigations requirements of City Resolution No. 94, 2009.

(v)      Executed originals of those Easement Agreements, in recordable form, identified and set forth further within Section 13.8 below.

(vi)      A copy of Buyer's corporate documents, and all amendments thereto, certified as true and complete, as of the closing date, and all other documents deemed necessary by the title company so as to evidence authorization for the actions to be taken by Buyer or Buyer's assignee, as well as the authority of the person signing this Agreement and the closing documents

(vii)      Any other documents specified in this Agreement or reasonably required for Closing.

10.6    <u>Conditions to Closing</u>.  The obligations of Buyer and Seller to consummate the Closing and the transfer of title to the Undeveloped Property are subject to the satisfaction of the following conditions:

(a)      A Sale Order having been entered by the Bankruptcy Court which is not be subject to any stay pursuant to Rules 6004 and/or 6006 of the Federal Rules of Bankruptcy Procedure;

(b)      No judgment, injunction, order or decree shall have been issued prohibiting the consummation of the transfer of the Undeveloped Property; and

(c )  the obligation of Seller shall be subject to Buyer having performed and complied with its obligations and covenants under this Agreement, and the delivery by Buyer of the closing items and documents to be delivered by Buyer as set forth above; and (ii) the obligation of Buyer shall be subject to Seller having performed and complied with its representations, obligations and covenants under this Agreement, and the delivery by Seller of the closing items and documents to be delivered by Seller as set forth above.

**ARTICLE XI**
**TERMINATION AND REMEDIES**

9

11.1    <u>Termination</u>. Any termination of this Agreement must be in writing and delivered by the terminating party to the other party.  In addition to any causes for termination that may be expressly set forth elsewhere in this Agreement, this Agreement may be terminated as follows:

(a)    <u>Mutual Consent</u>.  By mutual written consent of both Seller and Buyer. In such event, Escrow Agent shall promptly return the Deposit to Buyer and thereafter this Agreement shall be null and void and neither party shall have any further or other obligation to each other.

(b)    <u>Termination Date</u>.  By Buyer if the Closing shall not have occurred by the Closing Date ("Termination Date").

(c )    <u>Auction- Alternative Offer</u>.  By Buyer or Seller, in the event that Seller selects an alternative offer, then (i) upon such rejection at Auction or at the time the alternative offer actually closes, or (ii) if the alternative offer does not close within the time specified in the Bid Procedures and the transaction contemplated in this Agreement is not thereafter closed in accordance with Article X above and the failure to close this Agreement was not caused by the terminating party, but Seller shall not have this termination right if Buyer is a Back-Up Bidder (as defined within the Bid Procedures).

In the event of termination pursuant to this Section, Escrow Agent shall promptly return the Deposit to Buyer, and thereafter this Agreement shall be null and void, and neither party shall have any further or other obligation to the other.  Buyer and Seller acknowledge and agree that in the event this Agreement is determined to be a back-up bid to an alternative offer by Seller, then Escrow Agent shall retain the Deposit until such time as is specified in the Bid Procedures.  Buyer and Seller further acknowledge and agree that, in the event that Buyer is not the Successful bidder (as such term is defined in the Bid Procedures), Bank shall, within ten (10) business days following the Closing Date, reimburse Buyer for its due diligence out of pocket expenses up to a maximum of $100,000.00 ("Breakup Reimbursement").

(d)    <u>Seller's Material Breach</u>.  By Buyer, so long as Buyer is not then in an uncured material breach of this Agreement, at any time in the event that Seller is in material breach of its obligations under this Agreement, including but not limited to Seller's failure to close by the Closing Date, and Seller failed to cure such breach to Buyer's reasonable satisfaction within ten (10) days after Buyer demands in writing its cure.  In such event Escrow Agent shall promptly return the Deposit to Buyer, and thereafter this Agreement shall be null and void, and Seller and Buyer shall not have any further or other obligation to the other.

(e)    <u>Buyer's Material Breach</u>.  By Seller, so long as Seller is not then in an uncured material breach of this Agreement, at any time in the event Buyer is in material breach of its obligations under this Agreement, including but not limited to Buyer's failure to close by the Closing Date, and Buyer has failed to cure such breach to Seller's reasonable satisfaction within ten (10) days after Seller demands in writing its cure.  In such event Escrow Agent shall promptly deliver the Deposit to Seller, and thereafter this Agreement shall be null and void, and Seller and Buyer shall not have any further or other obligation to the other.  Buyer agrees that Seller's damages would be uncertain, not readily ascertainable, and difficult or impossible to estimate or determine and that the liquidated damages provided herein are a good faith pre-estimate of the actual damages to be suffered by Seller in such event.  Seller and Buyer agree that in the event of breach pursuant to this section Seller shall be entitled to retain and keep $200,000.00 of the Deposit as liquidated damages, and not as a penalty, and which liquidated damages shall be in lieu of any other right or remedy of Seller. The balance of the Deposit

shall be returned to Buyer.

## ARTICLE XII
## SURVIVAL MATTERS

12.1    <u>Representations and Warranties</u>. Unless otherwise provided herein, the representations and warranties of Seller and Buyer contained in this Agreement (or in any document delivered in connection with this Agreement) will terminate upon the Closing; provided, however, the respective representations and warranties of Seller and Buyer  contained in Section Seven (7) and Section Eight (8) will survive and expire six(6) months after Closing.

12.2    <u>Termination Matters</u>.  The respective rights, remedies, and obligations of Buyer, Seller and Escrow Agent with respect to the Deposit shall survive the termination of this Agreement (in the event Seller rejects all offers at Auction or upon closing of the sale of the Assets pursuant to a third party's Alternative Offer).

## ARTICLE XIII
## MISCELLANEOUS

13.1    <u>Entire Agreement</u>.  This Agreement, including the Schedules to this Agreement and the documents and agreements to be executed at Closing, constitute the entire agreement of Seller and Buyer with respect to the subject matter hereof and thereof and supersedes all prior agreements and undertakings, both written and oral, with respect to the subject matter hereof and thereof.

13.2    <u>Notices</u>.  Any notice, request, demand, instruction, or other communication to be given to either Party shall be in writing and, except where required to be delivered at the Closing, shall be sent by: (a) Federal Express or a comparable overnight mail service; (b) U.S. registered or certified mail, return receipt requested, postage prepaid; or (c) via email; to Buyer, Buyer's Counsel, Seller, Seller's Counsel, and Escrow Agent, at their addresses or e-mail addresses set forth below. Notice shall be deemed to have been given upon receipt or delivery of said notice at the appropriate address as is set forth below. The addressees and addresses for the purpose of this Section 13.2 may be changed by giving notice of such change in compliance with this Section 13. Unless and until such written notice is received, the last addressee and address stated herein shall be deemed to continue in effect for all purposes hereunder.

As to Seller:    Palm Beach Community Church, Inc.

Dr. Raymond Underwood

4901 PGA Blvd.

Palm Beach Gardens, FL 33418

Telephone: 561-626-5683

e-mail: drray@pbcc.cc

|                    | Aaron Wernick, Esq.                                    |
|--------------------|-------------------------------------------------------|
| And a copy to:     | 2255 Glades Rd., Ste. 337W                            |
|                    | Boca Raton, FL 33434                                  |
|                    | Telephone: 561-417-1569Facsimile: 561-338-7532        |
|                    | e-mail: awernick@furrcohen.com                        |

As to Buyer:           _____
                       _____
                       _____
                       _____

And a copy to:         _____
                       _____
                       _____
                       _____

13.3    Amendments / Waivers. Any provision of this Agreement may be amended or waived prior to the Closing Date if, and only if, such amendment or waiver is in writing and signed, in the case of an amendment, by Seller and Buyer or, in the case of a waiver, by the party against whom the waiver is to be effective, and such amendment or waiver is approved by the Bankruptcy Court to the extent such approval is required under the Bankruptcy Laws. No failure or delay by any party in exercising any right, power or privilege hereunder shall operate as a waiver thereof nor shall any single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any other right, power or privilege.

13.4    Expenses.  Except as otherwise provided in this Agreement, all costs and expenses incurred in connection with this Agreement shall be paid by the party incurring such cost or expense.

13.5    Brokers. Seller has not retained a broker in this matter other than MIKE MILLARD & LYNETTE GREEN of CBRE who shall be compensated by Seller. Buyer has not retained a broker in this matter other than _____ who shall be compensated by Buyer.  Seller shall not be obligated for any fees or commissions to any Person or entity retained by Buyer in this transaction on its behalf, and no such fees or commissions shall be deducted or payable from the Purchase Price.  Likewise, Buyer shall not be obligated for any fees or commissions to any Person or entity retained by Seller in this transaction on Seller's behalf. If a claim for brokerage in connection with this transaction is made by any broker, salesman or finder other than the above-named brokers, claiming to have dealt through or on behalf of one of the parties hereto ("Indemnitor"), the Indemnitor shall indemnify, defend and hold the other party hereunder, and such other party's officers, directors, agents and representatives, harmless from all liabilities, damages, claims, costs, fees and expenses

12

whatsoever (including attorneys' fees and court costs) with respect to said claim for brokerage. The provisions of this Section shall survive the Closing.

    13.6   <u>Risk of Loss</u>.  Seller assumes all risk of loss, damage, destruction or condemnation of the Undeveloped Property until the Closing has been consummated. In the event of any loss, damage, destruction or condemnation before Closing, Seller shall immediately notify Buyer, and, if such loss, damage, destruction or condemnation equals or exceeds ten percent (10%) of the Purchase Price, then Buyer shall have the right, within five (5) business days after receipt of such notice, and before the Auction, to elect either to (a) terminate this Agreement, or (b) waive such termination right.

    13.7   <u>Escrow Agent</u>.  FURR & COHEN, P.A., Escrow Agent, agrees to hold any funds entrusted to it on the following terms and conditions:

    Escrow Agent shall deposit all escrowed funds into an escrow account at a nationally chartered bank licensed to conduct business in the State of Florida.

    The Escrow Agent undertakes to perform only such duties as are expressly set forth in this Purchase and Sale Agreement and this paragraph. The Escrow Agent shall not be deemed to have any implied duties or obligations under or related to this Purchase and Sale Agreement and this paragraph.

    The Escrow Agent may (a) act in reliance upon any writing or instrument or signature which it, in good faith, believes to be genuine; (b) assume the validity and accuracy of any statement or assertion contained in such a writing or instrument; and (c) assume that any person purporting to give any writing, notice, advice or instructions in connection with the provisions of this Purchase and Sale Agreement and this paragraph has been duly authorized to do so. The Escrow Agent shall not be liable in any manner for the sufficiency or correctness as to form, manner of execution, or validity of any instrument deposited in escrow, nor as to the identity, authority, or right of any person executing any instrument; the Escrow Agent's duties under this Purchase and Sale Agreement and this paragraph are and shall be limited to those duties specifically provided in this Purchase and Sale Agreement and this paragraph.

Escrow Agent shall not be liable for any loss or damage resulting from:

- The financial status or insolvency of any other party, or any misrepresentation made by any other party.

- The legal effect, insufficiency, or undesirability of any instrument deposited with or delivered by or to the escrow agent or exchanged by the parties hereunder, whether or not the escrow agent prepared such instrument.

- The default, error, action or omission of any other party to the escrow.

- Any loss or impairment of funds that have been deposited in escrow while those funds are in the course of collection or while those funds are on deposit in a financial institution if such loss or impairment results from the failure, insolvency or suspension of a financial institution, or any loss or impairment of funds due to the invalidity of any draft, check,

13

document or other negotiable instrument delivered to the escrow agent.

- The expiration of any time limit or other consequence of delay, unless a properly executed settlement instruction accepted by the escrow agent has instructed the escrow agent to comply with said time limit.

- The escrow agent's compliance with any legal process, subpoena, writ, order, judgment or decree of any court, whether issued with or without jurisdiction and whether or not subsequently vacated, modified, set aside or reversed.

- Any shortfall in the sufficiency of the amount held in escrow to accomplish the purpose of the escrow.

- Any obligation to collect additional funds, unless such obligation is in writing and signed by the escrow agent.

The parties to this Purchase and Sale Agreement do and shall indemnify the Escrow Agent and hold it harmless from any and all claims, liabilities, losses, actions, suits or proceedings at law or in equity, or other expenses, fees, or charges of any character or nature, including reasonable attorneys' fees and costs, which it may incur or with which it may be threatened by reason of its action as the Escrow Agent under this Purchase and Sale Agreement, except for such matters which are the result of the Escrow Agent's gross negligence or willful malfeasance. The Escrow Agent shall be vested with a lien on all property deposited under this Agreement for the purpose of such indemnification, and for any other expense, fees or charges of any character or nature, which may be incurred by the Escrow Agent in its capacity as escrow agent. The Escrow Agent has and shall have the right, regardless of any instructions, to hold the property deposited in escrow until and unless said additional expenses, fees and charges shall be fully paid.

If the parties (including the Escrow Agent) shall be in disagreement about the interpretation of this Agreement, or about their respective rights and obligations, or about the propriety of any action contemplated by the Escrow Agent, the Escrow Agent may, but shall not be required to, file an action in interpleader to resolve the disagreement; upon filing such action, the Escrow Agent shall be released from all obligations under this Agreement. The Escrow Agent shall be indemnified for all costs and reasonable attorneys' fees, including those for appellate matters and for paralegals and similar persons, incurred in its capacity as escrow agent in connection with any such interpleader action. The Escrow Agent shall be fully protected in suspending all or part of its activities under this Agreement until a final judgment in the interpleader action is received.

The Escrow Agent may consult with counsel of its own choice and shall have full and complete authorization and protection in accordance with the opinion of such counsel. The Escrow Agent shall otherwise not be liable for any mistakes of fact or errors of judgment, or for any acts or omissions of any kind unless caused by its gross negligence or willful misconduct. The Escrow Agent may resign upon five (5) days' written notice to Seller and Buyer. If a successor escrow agent is not appointed jointly by Seller and Buyer within the five (5) day period, the Escrow Agent may petition a court of competent jurisdiction to name a successor.

As used herein, the term "Escrow Agent" includes the employees and attorneys of Escrow

14

Agent. The provisions of this Section 13.7 shall survive Closing.

Buyer acknowledges that the Escrow Agent is also Seller's attorney in this transaction, and Buyer hereby consents to the Escrow Agent's representation of Seller and Escrow Agent in any litigation which may arise out of or is otherwise related to this Agreement.

13.8    Easements. At Closing the Seller and Buyer will enter into the following agreements ("Easement Agreements"):

13.8.1 Buyer agrees at Closing to grant Seller, and Seller's successors and assigns and invitees, a non-exclusive, perpetual, ingress and egress easement through the entrance driveway to the Borland Center (that is, Developed Property consisting of the land, building and parking spaces which Seller shall retain), whether or not such entrance driveway is reconfigured. Seller shall pay the cost of surveying or sketching required for this easement and the recording thereof.

13.8.2  Buyer acknowledges and agrees that after closing Seller's existing entrance signage and the marquee signage on PGA Boulevard will remain as is, and at Closing Buyer will grant Seller a perpetual, non-exclusive easement for same. Seller shall pay the cost of surveying or sketching required for this easement and the recording thereof.

13.8.3 Seller's counsel will prepare the above Easement Agreements, subject to the approval of Buyer, which approval shall not be unreasonably withheld, delayed, or conditioned.

13.8.4  The provisions of this Section 13.8 shall survive Closing.

13.9    Agreement Not Assignable.  This Agreement shall not be assignable by Buyer.

13.10   Certain Interpretive Matters.  Titles and headings to Sections in this Agreement are inserted for convenience of reference only and are not intended to be a part of or to affect the meaning or interpretation of this Agreement.  No provision of this Agreement will be interpreted in favor of, or against, Seller or Buyer by reason of the extent to which either Seller or Buyer or its counsel participated in the drafting thereof or by reason of the extent to which any such provision is inconsistent with any prior draft hereof or thereof.

13.11   Governing Law and Jurisdiction.  This Agreement shall be construed in accordance with and governed by the laws of the State of Florida regardless of the laws that might otherwise govern under principles of conflict of laws applicable hereto.  This Agreement is also subject to any applicable order or act of the Bankruptcy Court.  In the event of a dispute hereunder not governed by any specific resolution process in this Agreement, such dispute shall be brought exclusively in the Bankruptcy Court which shall retain exclusive jurisdiction with respect to the interpretation, performance, and enforcement of this Agreement.

13.12   Counterparts; Effectiveness.   This Agreement may be executed in two or more counterparts (with an e-mail signature serving as an original), all of which shall be considered one and the same agreement.

13.13 <u>Severability</u>.  If any term, provision, covenant or restriction of this Agreement is determined to be invalid, void or unenforceable, the remainder of the terms, provisions, covenants and restrictions of this Agreement will remain in full force and effect and will in no way be affected, impaired, or invalidated.

13.14 <u>Time</u>.  Time is of the essence in this Agreement with regard to all acts and dates imposed on Seller and Buyer.  All time periods and deadlines set forth in this Agreement shall be calculated in calendar days, unless business days are expressly stated.  In the event that the date upon which any duties or obligations hereunder are to be performed, or the exercise of any option or right or any deadline hereunder shall occur or be required to occur, shall be a Saturday, Sunday or holiday on which banks in the State of Florida are closed, then, in such event, the due date for performance of any duty or obligation or the exercise of any option or right shall thereupon be automatically extended to the next succeeding business day.  All deadlines and time periods shall be deemed to expire or occur, as applicable, at 5:00 p.m. Eastern prevailing time unless otherwise expressly stated herein.

13.15 <u>Attorneys' Fees</u>.  In the event it becomes necessary for either party hereto to file suit to enforce this Agreement or any provision contained herein, the party prevailing in such suit shall be entitled to recover, in addition to all other remedies or damages as herein provided, reasonable attorneys', paralegals', or expert witnesses' fees and costs incurred in such suit at trial or on appeal or in connection with any bankruptcy or similar proceedings.

13.16 <u>WAIVER OF JURY TRIAL</u>.  IN ANY CIVIL ACTION, COUNTERCLAIM, OR PROCEEDING, WHETHER AT LAW OR IN EQUITY, WHICH ARISES OUT OF, CONCERNS, OR RELATES TO THIS AGREEMENT, ANY AND ALL TRANSACTIONS CONTEMPLATED BY THIS AGREEMENT, THE PERFORMANCE OF THIS AGREEMENT, OR THE RELATIONSHIP CREATED BY THIS AGREEMENT, WHETHER SOUNDING IN CONTRACT, TORT, STRICT LIABILITY, OR OTHERWISE, TRIAL SHALL BE TO A COURT OF COMPETENT JURISDICTION AND NOT TO A JURY. EACH PARTY HEREBY IRREVOCABLY WAIVES ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY. ANY PARTY MAY FILE AN ORIGINAL COUNTERPART OR A COPY OF THIS AGREEMENT WITH ANY COURT, AS WRITTEN EVIDENCE OF THE CONSENT OF THE PARTIES TO THIS AGREEMENT OF THE WAIVER OF THEIR RIGHT TO TRIAL BY JURY. NEITHER PARTY HAS MADE OR RELIED UPON ANY ORAL REPRESENTATIONS TO OR BY ANY OTHER PARTY REGARDING THE ENFORCEABILITY OF THIS PROVISION. EACH PARTY HAS READ AND UNDERSTANDS THE EFFECT OF THIS JURY WAIVER PROVISION. EACH PARTY ACKNOWLEDGES THAT IT HAS BEEN ADVISED BY ITS OWN COUNSEL WITH RESPECT TO THE TRANSACTION GOVERNED BY THIS AGREEMENT AND SPECIFICALLY WITH RESPECT TO THE TERMS OF THIS SECTION.

[*Signatures on the following page*]

**IN WITNESS WHEREOF**, Seller and Buyer have caused this Agreement to be duly executed by their respective authorized officers as of the Effective Date.

<u>**SELLER:**</u>

Palm Beach Community Church, Inc.

By:_____

Its: _____

 Date: _____

<u>**BUYER:**</u>

_____

By: _____

Its: _____

 Date: _____

**EXHIBIT "A"**
**LEGAL DESCRIPTION**


**(The Legal Description will be replaced by an accurate metes and bounds description upon the receipt of the Boundary Survey as referenced in Section 1.2 of this Agreement.)**


BORLAND CENTER REPL TR 1 K/A DEVELOPMENT

<u>**EXHIBIT "B"**</u>

**SUBJECT PROPERTY**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**West Palm Beach Division**
**www.flsb.uscourts.gov**

IN RE:                                              CASE NO. 13-35141-EPK
                                                    CHAPTER 11
PALM BEACH COMMUNITY
CHURCH,

           **Debtor.**
_____/

**PROPOSED**
**NOTICE OF AUCTION SALE AND BIDDING PROCEDURES**

**TO ALL PARTIES IN INTEREST AND PROSPECTIVE BIDDERS:**

           **PLEASE TAKE NOTICE that:**

           1.      The United States Bankruptcy Court for the Southern District of Florida, West

Palm Beach Division (the "**Bankruptcy Court**"), entered an Order pursuant to 11 U.S.C. § 363

and Rule 6004 of the Federal Rules of Bankruptcy Procedure: (a) authorizing and scheduling **the**

**sale of a portion of the property located at the northeast quadrant of the intersection of**

**PGA Boulevard and Shady Lakes Drive, consisting of approximately 9.03 acres of**

**undeveloped land (the "**Property**"), free and clear of liens, claims and encumbrances;** (b)

approving the Bidding Procedures[1]; (c) approving the Notice of Sale; (d) scheduling an Auction

to accept higher and better bids; and (e) scheduling a hearing to approve the Sale arising out of

the auction, pursuant to 11 U.S.C. §§ 363 and 105(a) and Federal Rules of Bankruptcy Procedure

2002, 6004(a) and 9014 and Local Rule 6004-1 (the "**Bid Procedures Order**")[2].

---

[1] All capitalized terms not expressly defined herein have the meaning ascribed to such term in the Bid Procedures Order.

[2] A copy of the Bid Procedures Order may be obtained: (a) in person, during regular business hours, from the Office of the Clerk of the Bankruptcy Court, 1515 North Flagler Drive, 8th Floor, West Palm Beach, FL, 33401; (b) downloaded from the Bankruptcy Court's electronic docket (CM/ECF); or (c) by written request to undersigned counsel.

2.      Pursuant to the Bid Procedures Order[3], the Debtor has received authorization from the Bankruptcy Court to employ the procedures set forth herein for consideration of competitive bids for purchase of the Property including: (a) the establishment of deadlines and certain criteria for submitting Qualified Bids; (b) the approval of bidding procedures and overbid requirements; and (c) the scheduling of the Auction.

3.      The Debtor shall provide by e-mail and/or U.S. Mail written notice of the Auction, the Bidding Procedures and the Sale Hearing within one business day from the entry of the Order approving the Bid Procedures Motion to: (a) those persons who contacted the Debtor or any of its representatives regarding the sale of the Property; (b) those persons who the Debtor has reason to believe may possess an interest in purchasing the Property; (c) the U.S. Trustee; (d) counsel to PNC Bank; (e) the Internal Revenue Services; (f) all other parties who have filed a notice of appearance; and (g) all other creditors.

## ELIGIBILITY TO MAKE BIDS

4.      Any person or entity that wishes to participate in a competitive bidding process for the purchase of the Property (the "**Auction**") must satisfy the requirements set forth below to become a Qualified Bidder. Neither the Debtor nor the Court shall consider bids that are not proposed by a Qualified Bidder.

## BIDDING PROCESS

5.      A person may be qualified to participate in the auction if, by the **bid deadline of 5:00 p.m. on December 2, 2014** (the "**Bid Deadline**"), the following are provided:

(a) A deposit of Two Hundred Fifty Thousand Dollars and 00/100 ($250,000.00) (the "**Deposit**") payable by bank cashier's check or wire transfer into the non-interest

---

[3] In the event of any discrepancy between the terms of this Notice and the terms of the Bid Procedures Order, the Bid Procedures Order shall govern and control.

- 2 -

bearing escrow account of Furr and Cohen, P.A., along with the Social Security Number or EIN of the bidding person or entity;

(b) An executed purchase contract, substantially in the form of the Purchase Agreement attached to the Sale Motion, which has no contingencies to the validity, effectiveness or binding nature of the offer, including, without limitation, contingencies for financing, due diligence or inspection, for a purchase price of not less than $6,800,000.00; and

(c) Evidence, sufficient to Debtor, that the bidder either has sufficient cash to close the transaction at its bid price or, alternatively, a firm and unequivocal agreement from a recognized financial institution that it will unconditionally fund any portion of the purchase price that the buyer proposes to finance.

(the "**Qualifying Bid Packet**"). The Qualifying Bid Packet must be delivered **no later than 5:00 p.m. on the December 2, 2014** to Aaron A. Wernick, Esq., of Furr and Cohen, P.A., 2255 Glades Road, Suite 337W, Boca Raton, FL 33431, Telephone (561)395-0500, e-mail: awernick@furrcohen.com. The bidder's Qualifying Bid Packet must include the bidder's address, telephone and email address where the bidder may be contacted. Acceptable methods of delivery of the Qualifying Bid Packet are first class U.S. Mail, overnight mail, email, and hand delivery.

6.    Upon satisfaction of all of the requirements set forth above, the Debtor shall evaluate each Qualifying Bid Packet submitted in accordance with the foregoing paragraph and may then identify a person, persons, entity or entities from among those who submitted a Qualifying Bid Packet and deem those person(s) "Qualified Bidders". PNC Bank, N.A. is the Stalking Horse Bidder (the "**Stalking Horse Bidder**") and shall be allowed to credit bid a portion of its total secured claim. By participating in the Auction, each Qualified Bidder consents to its bid being designated as a back-up bid.

- 3 -

7.      The Stalking Horse Bidder must share the results from its Due Diligence with the other Bidders.

8.      Between the Bid Deadline and the Auction and during the Auction, the Debtor may, in its discretion, discuss, negotiate or seek clarification of any Qualified Bid.

9.      The Debtor shall file and serve upon all interested parties entitled to receive notice, including the holders of qualified bids (the "**Qualified Bids**"), fully executed copies of the Qualified Bids to be considered at the Auction no later than 5:00 p.m. one day prior to the Auction Sale (the "**Qualified Bid Summary**"). This requirement is waived in the event there are no Qualified Bids.

## THE AUCTION SALE DATE

10.      In the event there are one or more Qualified Bidders on or before the Bid Deadline, then the Debtor's Counsel, Aaron A. Wernick, Esq., shall conduct the Auction on **December 4, 2014 at 11 a.m.** at the law offices of Furr and Cohen, P.A., 2255 Glades Road, Suite 337W, Boca Raton, Florida, 33431. The highest bid shall be accepted subject to Court approval, which will be sought from this Court at the Sale Hearing (described below), at which time the Court will approve the bid and hear any objections to the sale process.

11.      The Auction shall be a forum in which the Qualified Bidders may make competing bids to purchase the Property in minimum bid increments of $25,000.00, until the Debtor receives what is determined to be the highest and best offer to purchase the Property. The Debtor will also identify an acceptable backup Bidder (the "**Backup Bidder**"). Qualified Bidders may appear at the Auction or submit competing bids telephonically.

12.    **Sale Free and Clear of Liens, Claims and Conditions**: The Property will be sold free and clear of all liens, claims and encumbrances, with liens to attach to the proceeds of sale.

13.    **Objections**: Objections, if any, to the Sale, must (a) be in writing; (b) set forth the nature of the objector's claims against or interest in the Debtor's estate, and the basis for the objection and the specific grounds therefore; (c) comply with the Bankruptcy Rules and Local Bankruptcy Rules for the Southern District of Florida and all Orders of this Court; (d) be electronically filed with the Court in this case no later than 5:00 p.m. one day prior to the Hearing to approve the sale (the "**Sale Hearing**"). Only timely filed and served responses, objections, or other pleadings will be considered by this Court at the Sale Hearing. The failure of any person or entity to timely file its objection shall be a bar to the assertion, at the Sale Hearing or thereafter, or any objections to the Motion, the Sale or consummation and performance of the Agreement.

14.    The Court shall conduct the Sale Hearing on _____ at _____ a.m./p.m. at the United States Bankruptcy Court, 1515 North Flagler Drive, Room 801, Courtroom B, West Palm Beach, FL 33401.

15.    Except as otherwise stated herein, each Deposit shall be maintained in a **non-interest** bearing account and is subject to the jurisdiction of the Court. Within five business days from the entry of an Order approving the Sale, the Debtor shall return, by check, all Deposits to all Qualified Bidders except the Successful Bidder or the person who submitted the Back-Up Bid (the "**Back Up Bidder**"). In the event the Successful Bidder closes the Sale, the Debtor shall return the Back Up Bidder's Deposit, by check, within five business days from the closing. In the

event the Successful Bidder closed on the purchase of the Property, its Deposit shall be applied by the Debtor against the purchase price.

16.     All Qualified Bidders shall be deemed to have consented to the core jurisdiction of this Court and to have waived any right to a jury trial in connection with any disputes relating to the Auction or the Sale. All purchase agreements shall be governed by and construed in accordance with the laws of the State of Florida. All Qualified Bidders shall be bound by their bids until conclusion of the Auction. If the Successful Bidder is unable or unwilling to close the Sale, the Successful Bidder shall forfeit its Deposit (or such portion as is designated in the Successful Bidder's purchase agreement) to the Debtor and the Debtor shall close the Sale with the Back-Up Bidder, without further notice or hearing, who shall then be obligated to close the Sale on the terms of the Back-Up Bid and the corresponding Bidder's purchase agreement no later than five days thereafter. If the Back-Up Bidder, if any, is unable or unwilling to close the Sale in the time permitted, the Back-Up Bidder shall forfeit its Deposit (or such portion as is designated in the Successful Bidder's purchase agreement) to the Debtor.

**PLEASE TAKE FURTHER NOTICE THAT** any inquiries regarding the foregoing should be directed to the Debtor's counsel listed below.

Dated: _____.

<div style="margin-left:40%">

Furr and Cohen, P.A.
*Attorneys for the Debtor*
2255 Glades Road, Suite 337W
Boca Raton, Florida 33486
(561)395-0500
E-mail: awernickfurrcohen.com
 /s/ Aaron A. Wernick
Aaron A. Wernick, Esq.
Florida Bar No. 14059

</div>

**PROPOSED AUCTION SALE NOTICE**