**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**West Palm Beach Division**
www.flsb.uscourts.gov

IN RE:

| | |
|---|---|
| PALM BEACH COMMUNITY CHURCH, INC., | CASE NO. 13-35141-EPK CHAPTER 11 |
| _____Debtor._____/ | |

## DEBTOR'S THIRD AMENDED PLAN OF REORGANIZATION

FURR AND COHEN, P.A.
Attorneys for Debtor
By:  Robert C. Furr, Esq.
By:  Aaron A. Wernick, Esq.
2255 Glades Road
One Boca Place, Suite 337W
Boca Raton, Florida 33431
(561) 395-0500/(561)338-7532 fax
E-Mail: rfurr@furrcohen.com
E-Mail: awernick@furrcohen.com

TABLE OF CONTENTS

| | | |
|---|---|---|
| ARTICLE I | Definitions | 3 |
| ARTICLE II | Classification of Claims and Interests | 5 |
| ARTICLE III | Treatment of Administrative Claims, U.S. Trustee Fees and Priority Tax Claims | 6 |
| ARTICLE IV | Treatment of Claims and Interests Under the Plan | 6 |
| ARTICLE V | Allowance and Disallowance of Claims | 8 |
| ARTICLE VI | Executory Contracts and Unexpired Leases | 8 |
| ARTICLE VII | Means for Implementation of Plan | 9 |
| ARTICLE VIII | Utilization of Cram Down | 11 |
| ARTICLE IX | General Provisions | 11 |
| ARTICLE X | Discharge | 12 |
| ARTICLE XI | Retention of Jurisdiction | 12 |

## **THIRD AMENDED PLAN OF REORGANIZATION**

This Third Amended Plan amends the Debtor's Second Amended Plan of Reorganization filed on July 17, 2014 [DE#143]. This Plan of Reorganization (the "Plan") under chapter 11 of the Bankruptcy Code (the "Code") proposes to pay creditors of Palm Beach Community Church, Inc. (the "Debtor") from the Debtor's funds on hand, revenue from its preschool, Lease Agreements, revenues from the Borland Center, tithing and other donations from the Church members.

This Plan provides for three (3) classes of secured claims and one (1) class of unsecured claims. There is no Equity Security Holders Class as the Debtor is a 501(c)(3) corporation and operates exclusively for exempt purposes set forth in 501(c)(3) and none of its earnings may inure to any private shareholder or individual. Unsecured creditors holding allowed claims will receive distributions, which the proponent of this Plan has valued at approximately five cents on the dollar. This Plan also provides for the payment of administrative claims to be paid in full on the Effective Date of this Plan with respect to any such claim.

All creditors should refer to Articles III through VI of this Plan for information regarding the precise treatment of their claim. A disclosure statement that provides more detailed information regarding this Plan and the rights of creditors has been circulated with this Plan. **Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)**

## ARTICLE I
## DEFINITIONS

A.  <u>Definitions and Rules of Construction</u>. The definitions and rules of construction set forth in §§101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan, and they are supplemented by the following definitions:

1.01  "Administrative Claim" shall mean a Claim against the estate of the Debtor allowed by order of the Bankruptcy Court pursuant to section 503(b) of the Bankruptcy Code or incurred by the Debtor in its ordinary course of business from October 20, 2013 to the Confirmation Date and shall include all fees payable pursuant to section 1930 of title 28, United States Code.

1.02    "Allow", "Allowed", "Allowance" or words of similar meaning shall mean with respect to a Claim against the estate of the Debtor that no objection has been interposed within the applicable period of limitation fixed by this Plan or by the Bankruptcy Court and that such period of limitation has expired; or that the Claim has been allowed by an order of the Bankruptcy Court that is no longer subject to appeal or certiorari and as to which no appeal or certiorari is pending.

1.03    "Bankruptcy Code" shall mean the Bankruptcy Reform Act of 1978, as amended, title 11, United States Code, which governs the Chapter 11 case of the Debtor.

1.04    "Bankruptcy Court" shall mean the United States Bankruptcy Court for the Southern District of Florida having jurisdiction over the chapter 11 case of the Debtor or the United States District Court for the Southern District of Florida having jurisdiction over any part or all of the chapter 11 case of the Debtor in respect of which the reference has been withdrawn pursuant to section 157(d) of title 28, United States Code.

1.05    "Bankruptcy Rules" shall mean the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court (including any applicable local rules of the United States District Court for the Southern District of Florida), as now in effect or hereafter amended.

1.06    "Business Day" shall mean a day other than a Saturday, Sunday or legal holiday.

1.07    "Claim" shall have the meaning provided for such term in section 101(5) of the Bankruptcy Code.

1.08    "Confirmation Date" shall mean the date on which the Bankruptcy Court enters the Confirmation Order on its docket.

1.09    "Confirmation Order" shall mean a Final order of the Bankruptcy Court confirming the provisions of this Plan, pursuant to section 1129 of the Bankruptcy Code.

1.10    "Debtor" shall mean, Palm Beach Community Church, Inc., the debtor-in-possession in this Chapter 11 proceeding currently pending in the United States Bankruptcy Court for the Southern District of Florida.

1.11    "Disbursing Agent" shall mean, shall mean the person appointed under the Plan to administer and disburse the cash payments to be made pursuant to paragraph 4.01 of the Plan. The Disbursing Agent shall be Furr and Cohen, P.A.

1.12 "Disputed Claim" means any Claim designated as disputed, contingent or unliquidated in the Debtor's Schedules filed in connection with the Chapter 11 case of the Debtor, or any claim against which an objection to the allowance thereof has been, or will be, interposed, and as to which no Final Order has been entered.

1.13 "Effective Date" Effective Date" means the 14th day, or later, after the entry of the order of a final and non-appealable confirmation order.

1.14 "Plan" shall mean this third amended plan of reorganization in its entirety, together with all addenda, exhibits, schedules and other attachments hereto, in its present form or as it may be modified, amended or supplemented from time to time.

1.15 "Priority Claim" shall mean a Claim entitled to priority under section 507(a)(3)-(7) of the Bankruptcy Code.

1.16 "Priority Tax Claim" shall mean a Claim entitled to priority under section 507(a)(8) of the Bankruptcy Code.

1.17 "Rejection Claim" shall mean a Claim arising under section 502(g) of the Bankruptcy Code from the rejection under section 365 of the Bankruptcy Code, or under this Plan, of an executory contract or unexpired lease of the Debtors that has not been assumed.

1.18 "United States Trustee" shall mean the Assistant United States Trustee for the Southern District of Florida.

## ARTICLE II
## CLASSIFICATION OF CLAIMS AND INTERESTS

2.01    Class 1.    The Secured Claim of Palm Beach County Tax Collector for the 2013 real property taxes on the Debtor's property in the amount of $11,342.74 plus statutory interest.

2.02    Class 2.    The Secured Creditor, PNC Bank, N.A., has elected to have its claim treated as a fully secured claim according to 11 U.S.C. § 1111(b)(2) [DE#135]. Therefore, the Claim will be a fully secured claim.

2.03    Class 3.    The Secured Claim of Everbank Commercial Finance for the equipment lease on a Konica Minolta Bizhub C451 Copier SNA00K010014822 in the amount of $21,225.00.

2.04    Class 4.    The unsecured claim allowed under §502 of the Code in the total amount of $50,000.00 will be paid in Class 4.

## ARTICLE III
## TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS, U.S. TRUSTEES FEES, AND PRIORITY TAX CLAIMS

3.01    <u>Unclassified Claims</u>. Under section §1123(a)(1), administrative expense claims, and priority tax claims are not in classes.

3.02    <u>Administrative Expense Claims</u>. Each holder of an administrative expense claim allowed under §503 of the Code will be paid in full on the Effective Date of this Plan (as defined in Article VII), in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor.

3.03    <u>Priority Tax Claims</u>. There are no priority tax claims.

3.04    <u>United States Trustee Fees</u>. All fees required to be paid by 28 U.S.C. §1930(a)(6) (U.S. Trustee Fees) will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code. Any U.S. Trustee Fees owed on or before the Effective Date of this Plan will be paid on the Effective Date.

## ARTICLE IV
## TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

4.01    Claims and interests shall be treated as follows under this Plan:

| *Class* | *Impairment* | *Treatment* |
|---|---|---|
| Class 1- Secured Claim of Palm Beach County Tax Collector | Impaired | The Class 1 Claim of the Palm Beach County Tax Collector for 2013 real estate taxes in the amount of $11,342.74 will be paid in full, plus statutory interest, no later than 5 years from the Petition Date. |
| Class 2 – Secured Claim of PNC Bank, N.A. | Impaired | PNC Bank, N.A. holds a valid, properly perfected first priority lien against the Total Property. As of the Petition Date, the Debtor was indebted to PNC in the principal amount of $11,332,870, interest to October 20, 2013 at 16% of $5,799,778.61 and fees and cost of $135,778.69 for a total owed of $17,278,427.60. PNC also claims post-petition interest and attorney's fees to the fullest extent allowed by law. (The sums due PNC under its allowed Claim, plus post-petition interest and attorney's fees and costs, are sometimes referred to as the "Loan |

Indebtedness")

The Debtor will sell (the "Sale") the undeveloped portion of the Property (the "Vacant Land"). PNC will be the stalking horse bidder using a credit bid of $6,310,400. The minimum upset bid will be $6,800,000; that is, any other bidder besides PNC must bid a minimum of $6,800,000 to be eligible to participate in the auction Sale.

The Vacant Land will be sold free and clear of all liens, claims and encumbrances. To the extent the net proceeds from the Sale are greater than $6,500,000, the Debtor will receive a credit of 20% of the overage against the payments below, although the 20% credit will not be applied to the Down Payment (as defined below).

If the Vacant Land is sold to PNC, then the Debtor will pay the closing costs. If the Vacant Land is sold to a party other than PNC, then the closing costs will be paid out of the sale proceeds.

The Debtor agrees that, in the event that PNC is the ultimate purchaser of the Vacant Land, any site plan or development plan for the Vacant Land that PNC, PNC's nominee or a successor owner from PNC or its nominee presents that is acceptable to the City of Palm Beach Gardens and any other governmental authority having jurisdiction will be acceptable to the Debtor, that the Debtor will not oppose or facilitate others opposing the approval of any such plan, and that the Debtor will vote, to the extent required by any agreements or restrictive covenants affecting the Vacant Land, for approval of any such developments/site plan, so long as access and egress off of PGA Blvd and signage for PBCC and the Borland Center on PGA Blvd is not affected.

The existing loan documents will remain in effect on the Borland Center (more accurately, all the mortgage collateral less the to-be-determined legal description of the Vacant Land) (the "Borland Mortgage"). By agreement of the parties, PNC will modify its claim as it relates to the Borland Mortgage, providing the Debtor with the following discounted payoff scenarios:

(1) On or before March 31, 2015, the Debtor will pay $6,000,000 in full satisfaction of the debt owed PNC, with the release of the mortgage; or

(2) On or before March 31, 2015, the Debtor shall pay PNC $500,000 in cash (the "Down Payment"), to be applied on receipt by PNC to the then-existing Loan Indebtedness; plus a discounted payoff (the "Discounted Payoff") of $6,250,000 due on or before September 30, 2015; or $6,500,000 due on or before March 31, 2016; or $6,750,000 due on or before September 30, 2016; or $7,000,000 due on or before March 31, 2017. If the Debtor chooses to proceed with the discounted payoff scenarios outlined in this sub-paragraph (2), then the Debtor will also make monthly interest-only payments beginning May 1, 2015 based on interest on $7,000,000, beginning to accrue after March 31, at the rate of 5% per annum, 360 days year, until the appropriate Discounted Payoff amount is paid in full. The monthly interest payment amounts

- 7 -

| | | |
|---|---|---|
| | | are set out in Exhibit "A" attached to this Plan. Once the Discounted Payoff amount is paid in full, said payments will represent the full satisfaction of the debt owed to PNC, and PNC will release its mortgage as to the Borland Center.<br>(3) If the Debtor has not timely taken advantage of the above discounted payoff opportunities on or before March 31, 2017, or fails to make any of the monthly interest only installments within 10 days of its due date, or there is any other material default under the original loan documents modified by the terms above, PNC will be entitled to file a motion in the state foreclosure court case providing for the entry of a final judgment of foreclosure on the Borland Center property supported by an affidavit establishing the default that occurred and stating the full remaining balance of the loan after taking into account any payments made by the Debtor prior to the default. The final judgment of foreclosure will be entered based on the motion and supporting affidavit, establishing that the default occurred and stating the full remaining balance of the loan and taking into account any payments made by the Debtor prior to the default. The final judgment of foreclosure will be entered based on the motion and supporting affidavit without the necessity of any future pleadings before the court, except as otherwise might be ordered by the court at that time. Absent PNC requesting otherwise at that time, the foreclosure sale date would be the first available foreclosure sale date conforming to the requirements of Chapter 45 of the Florida Statutes as of the date of the entry of the Final Judgment of Foreclosure.<br><br>The terms outlined in this section represent the primary points of agreement between the parties and are intended to provide a convenient summary of the treatment of PNC's claims. The Debtor and PNC will be executing a Stipulation of Settlement that contains the basic terms described above, in their complete, binding and comprehensive form. Said Stipulation is hereby incorporated into this Plan, and in the event of any discrepancy between this Plan and the Stipulation, the terms of the Stipulation control. |
| Class 3 – Secured Claim of Everbank Commercial Finance | Impaired | Monthly Pmt.: $849.00<br>[Twenty-five payments remaining.]<br>During the Chapter 11 proceeding, the Debtor has been making payments to Everbank pursuant to the terms of its lease. Post-Confirmation, payments will cease for 3 months following the Effective Date. On the first of the 3rd month following the Effective Date, the original contractual payments, along with all contractual interest, will re-commence. Payments will then continue on a monthly basis until the lease is paid in full. |
| Class 4 – General Unsecured Claims | Impaired | Total general unsecured claims of $50,000.00. The one general unsecured claimant is Ben Devries (total claim: $50,000.00). Ben Devries will be paid in full in equal monthly installments over 3 years. Each Class 4 claimant's distribution shall be in full satisfaction of its claim against the Debtor. |

4.02    Impairment.  Classes in 1, 2, 3 and 4 are impaired under this Plan.

## ARTICLE V
## ALLOWANCE AND DISALLOWANCE OF CLAIMS

5.01    Disputed Claim. A disputed claim is a claim that has not been allowed or disallowed by a final non-appealable order, and as to which either: (i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or (ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

5.02    Delay of Distribution on a Disputed Claim. No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order.

5.03    Settlement of Disputed Claims. The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

## ARTICLE VI
## PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES

6.01    Assumed Executory Contracts and Unexpired Leases.

a.  The Debtor assumed the following executory contracts and/or unexpired leases effective on March 19, 2014 pursuant to the Order Granting Debtor's Motion to Assume Executory Contracts and Equipment Lease [DE#71]:

|   |   |
|---|---|
|   | (a)License Agreement between Palm Beach Community Church, Inc. and **Carefree Catering**, 64 S.E. 5th Avenue, Delray Beach, FL 33483, entered between the parties on January 1, 2013. |
|   | (b)Service Agreement between Palm Beach Community Church and **Johnson Controls**, 15910 SW 29 Street, Suite 801, Miramar, FL 33027-5252, Contract #1-3848484870, dated August 30, 2012 for a term of two years. |
|   | (c)Hospitality Services Agreement between Palm Beach Community Church, Inc. and **Oceana Coffee, Inc.**, 221 Old Dixie Highway, Suite 1, Tequesta, FL  33468, entered between the parties on December 19, 2012. |
|   | (d)Service Agreement between Palm Beach Community Church and **Protection One,** 4815 Pack Ridge Boulevard, Suite 103, Boynton Beach, FL 33426 dated January 17, 2013 for a term of three years. |

|   | (e) Service Agreement between Palm Beach Community Church and **Terminix Commercial Pest Control Service,** 3467 NW 55 Street, Ft Lauderdale, FL  33309 and Corporate Headquarters, 860 Ridge Lake Boulevard, Mailstop C2-4092, Memphis, TN 38120, dated August 27, 2013 for a term of one year |
|---|---|
|   | (f) Equipment Rental Agreement between Palm Beach Community Church and **Copy Source Incorporated, c/o Everbank Commercial Finance,** 10 Waterview boulevard, Parsippany, NJ  07054, dated October 28, 2011, Rental Agreement #40822637, for a term of 63 months, for the use of a Konica Minolta Bizhub C451 copier, Serial No. AC0K010014822. |

b. The Debtor has rejected certain executory contracts and/or unexpired leases during the Chapter 11 proceeding. The Court has approved the Debtor's rejection of the following contracts on January 29, 2014 [DE#57]:

| Wells Fargo Financial Leasing Inc., Rental Agreement dated January 31, 2013 from Copy Source and transferred to Wells Fargo Leasing on 1/11/13 pursuant to a Bill of Sale and Assignment, Contract 483-C, Acct #xxxx4783, Serial #A2YF01006328, Konica Minolta C25 Bizhub Copier |
|---|
| De Lang Landen Financial Service, CPA Rental Agreement dated 5/17/13 from Copy Source and transferred to De Lage Landen Financial on or about 11/7/13, contract no. xxxx6568, Serial No. A2YF011005282, Konica Minolta C25 Bizhub copier. |

The Order Granting the Debtor's Motion to Reject the above contracts provided the notice that any claim for damages arising from the rejection of the contracts must be filed with the Court on or before the latest of the time for filing a Proof of Claim Pursuant to Bankruptcy Rule 3002(c); 30 days after the entry of the Order compelling or approving the rejection of the contract or lease; or 30 days after the Effective Date of the rejection of the contract or lease. Neither Wells Fargo Financial Leasing, Inc., Copy Source nor De Lang Landen Financial Service filed a claim for rejection damages.

There are no other executory contracts or leases for the Debtor to reject or assume.

## ARTICLE VII
## MEANS FOR IMPLEMENTATION OF THE PLAN

7.01   The distribution of cash required under Article III of the Plan shall, as set forth in such Article, be made from the Debtor's funds on hand, revenue from its preschool, Lease Agreements, Borland Center events, tithing and other donations from church members, the

continuing operation of Debtor prior to the Effective Date or by Reorganized Debtor following the Effective Date.

7.02    The sale of the Debtor's real property is in furtherance of, and in accordance with, this Plan.  There, pursuant to § 1146(c) of the Bankruptcy Code, the Debtor will not be responsible for the payment of any stamp tax, transfer tax or similar tax imposed, including, but not limited to, documentary stamps, surtaxes and/or incidental recording fees in connection with the sale or refinancing of the real property.

7.03    Upon the entry of the Confirmation Order, the Reorganized Debtor shall be vested with all of its property free and clear of all claims and interests of creditors, except as otherwise provided for herein.

7.04    After the entry of an Order of Confirmation, the Reorganized Debtor shall continue its business and manage its affairs without further supervision of the Court.

7.05    Robert C. Furr, Esq. is named as the individual responsible for making the payments under the Plan.  The payments shall be as provided in Article III.

7.06    Any checks mailed by the disbursing agent for the initial payment to a particular creditor which remains not cleared forty-five (45) days after mailing, shall constitute "unclaimed funds" which shall be come the Debtor's property.

7.07    Any checks mailed by the Disbursing Agent for the initial payment to a particular creditor which remains not cleared forty-five (45) days after mailing, shall constitute "unclaimed funds" which shall be come the Debtor's property.

## ARTICLE VIII
### Cram Down, Modification, Substantive Consolidation

A.    UTILIZATION OF CRAM DOWN

If all of the applicable provisions of 11 U.S.C. §1129(a) other than paragraph (8), are found to have been met with respect to the Plan, the Debtor may seek confirmation pursuant to 11 U.S.C. §1129(b).  For the purposes of seeking confirmation under the cram-down provisions of the Code, should that alternative means of confirmation prove to be necessary, Debtor reserves the right to modify or vary the treatment of the claims of the rejecting Classes so as to comply with Section 1129(b) of the Code.

B.     MODIFICATION OF PLAN

The Debtor may propose amendments to or modifications of this Plan at any time prior to confirmation with the leave of Court upon notice to parties entitled to receive the same. After confirmation, the Debtor may, with the approval of this Court, and so long as it does not materially adversely affect the interests of creditors, remedy any defect or omission, or reconcile any inconsistencies in the Plan, or in the Order of Confirmation, in such a manner as is necessary to carry out the purposes and effect of this Plan.

## ARTICLE IX
## GENERAL PROVISIONS

9.01    Effective Date of Plan.  "Effective Date" means the 14th day, or later, after the entry of the order of a final and non-appealable confirmation order; however, if a stay of the confirmation order is in effect on that date, the Effective Date will be the first business day after that date on which no stay of the confirmation order is in effect, provided that the confirmation order has not been vacated.

9.02    Severability. If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

9.03    Binding Effect. The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

9.04    Captions. The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

9.05    Controlling Effect. Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Florida govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

## ARTICLE X
## DISCHARGE

Discharge. On the confirmation date of this Plan, the debtor will be discharged from any debt that arose before confirmation of this Plan, subject to the occurrence of the Effective Date, to the extent specified in §1141(d)(1)(A) of the Code, except that the Debtor will not be discharged of any debt: (i) imposed by this Plan; (ii) of a kind specified in §1141(d)(6)(A) if a timely complaint was filed in accordance with Rule 4007(c) of the Federal Rules of Bankruptcy Procedure; or (iii) of a kind specified in §1141(d)(6)(B).

**ARTICLE XI**
**RETENTION OF JURISDICTION**

11. 01  From and after entry of the Confirmation Order, the Bankruptcy Court shall retain such jurisdiction as is legally permissible over the reorganization case for the following purposes:

(a)  to hear and determine any and all objections to the allowance of any Claim or any controversy as to the classification of Claims;

(b)  to hear and determine any and all applications for compensation and reimbursement of expenses to professionals as well as to hear and determine claims entitled to priority under Section 507(a)(1) of Title 11;

(c)  to enable the Debtor to prosecute any and all proceedings which may be brought to set aside liens or encumbrances and to recover any transfers, assets, properties or damages to which the Debtor may be entitled under applicable provision of the Bankruptcy Code or any other Federal, State or local laws; including causes of action, controversies, disputes, and conflicts between the Debtor and any other party, including but not limited to any causes of action for objections to claims, preferences or fraudulent transfers and obligations or equitable subordination; and to enter any Order assuring that good, sufficient and marketable legal title is conveyed to the purchaser of the Debtor's property.

(d)  to consider any necessary valuation issues under Section 506 of the Code, and any proceeding to determine the amount, validity and priority of liens, in connection with the Debtor's property.

(e)  to determine the rights of any party in respect of the assumption or rejection of any executory contracts or unexpired leases.

(f) to correct any defect, cure any omission, or reconcile any inconsistency in the Plan or Order of Confirmation, as may be necessary to carry out the purposes and intent of this Plan.

(g) to modify this Plan after Confirmation, pursuant to the Code.

(h) to enforce and interpret the terms and conditions of this Plan.

(i) to enter Orders to enforce the title, rights and power of the Estate as the Court may deem necessary.

(j) to enter Orders concluding and closing this case.

[THE REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK.]

This Third Amended Plan respectfully submitted:

DATED: 11/6/14

PALM BEACH COMMUNITY CHURCH, INC.

BY _____
Raymond Underwood, President

FURR AND COHEN, P.A.
Attorney for Debtor
2255 Glades Road
One Boca Place, Suite 337W
Boca Raton, FL 33431
561-395-0500/561-338-7532 fax

By   /s/Aaron A. Wernick
   Aaron A. Wernick, Esq.
   Florida Bar No. 14059
   E-Mail: awernick@furrcohen.com
   Robert C. Furr, Esq.
   Florida Bar No. 210854

- 15 -

**EXHIBIT "A"**
**SCHEDULE OF MONTHLY INTEREST PAYMENT AMOUNTS AS TO THE CLAIM OF CLASS 2 CREDITOR PNC BANK, N.A.**

| | | | | |
|---|---|---|---|---|
| Amount | $7,000,000.00 | | | |
| Interest Rate | 5% | | | |
| Per Diem | $ 972.2222 | | | |
| Interest Start | 4/1/2015 | | | |
| | | | | |
| | Due Date | # Days | Amount Due | |
| | 5/1/2015 | 30 | $29,166.67 | |
| | 6/1/2015 | 31 | $30,138.89 | |
| | 7/1/2015 | 30 | $29,166.67 | |
| | 8/1/2015 | 31 | $30,138.89 | |
| | 9/1/2015 | 31 | $30,138.89 | |
| | 10/1/2015 | 30 | $29,166.67 | |
| | 11/1/2015 | 31 | $30,138.89 | |
| | 12/1/2015 | 30 | $29,166.67 | |
| | 1/1/2016 | 31 | $30,138.89 | |
| | 2/1/2016 | 31 | $30,138.89 | |
| | 3/1/2016 | 29 | $28,194.44 | |
| | 4/1/2016 | 31 | $30,138.89 | $355,833.33 |
| | 5/1/2016 | 30 | $29,166.67 | |
| | 6/1/2016 | 31 | $30,138.89 | |
| | 7/1/2016 | 30 | $29,166.67 | |
| | 8/1/2016 | 31 | $30,138.89 | |
| | 9/1/2016 | 31 | $30,138.89 | |
| | 10/1/2016 | 30 | $29,166.67 | |
| | 11/1/2016 | 31 | $30,138.89 | |
| | 12/1/2016 | 30 | $29,166.67 | |
| | 1/1/2017 | 31 | $30,138.89 | |
| | 2/1/2017 | 31 | $30,138.89 | |
| | 3/1/2017 | 28 | $27,222.22 | |
| | 4/1/2017 | 31 | $30,138.89 | $354,861.11 |