

**ORDERED in the Southern District of Florida on December 3, 2014.**

**Erik P. Kimball, Judge**
**United States Bankruptcy Court**

---

### UNITED STATES BANKRUPTCY COURT
### SOUTHERN DISTRICT OF FLORIDA
### WEST PALM BEACH DIVISION
#### www.flsb.uscourts.gov

In re:                                                     Case No. 13-35141-EPK
                                                           Chapter 11
PALM BEACH COMMUNITY
CHURCH, INC.,

_____ Debtor. _____/


## <u>ORDER CONFIRMING DEBTOR'S THIRD PLAN OF REORGANIZATION</u>

A hearing was held on November 19, 2014 at 2:00 p.m. in West Palm Beach, Florida, to

consider the confirmation of the Third Plan of Reorganization, dated November 6, 2014, filed by

Palm Beach Community Church, Inc. (the "Debtor"), under Chapter 11 of the Bankruptcy Code

(the "Plan") [DE#208].

The Plan having been transmitted to creditors and equity security holders, and

It having been determined after hearing on notice that:

- 1 -

1.       The Plan has been accepted in writing by the creditors and equity holders whose acceptance is required by law; and

2.       That the provisions of Chapter 11 of the Code  have been complied with and that the Plan has been proposed in good faith and not by any means forbidden by law; and

3.       With respect to each impaired class of claims or interests, each holder of a claim or interest has accepted the Plan, or will receive or retain under the Plan on account of such claim or interest property of a value, as of the effective date of the Plan, that is not less than the amount  that such holder would receive or retain if the Debtor were to liquidate under Chapter 7 of the Bankruptcy Code on such date.  The Plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that are impaired under the Plan, and has not accepted the Plan; and

4.       All payments made or promised by the Debtor  or by a person issuing securities or acquiring property under the  Plan, or by any other person for services or for costs and expenses in, or in connection with, the Plan and incident to the case, have been fully disclosed to the Court and are reasonable or, if to be fixed after confirmation of the Plan, will be subject to approval of the Court; and

5.       The identity, qualifications, and affiliations  of persons who are to be directors or officers, or voting trustees, if any, of the debtor after confirmation of the Plan, have been fully disclosed, and the appointment of such persons to such offices, or their continuance therein, is equitable and consistent with the interest of the creditors and equity security holders and with public policy; and

6.       The identity of any insider that will be employed or retained by the debtor and compensation to such insider has been fully disclosed; and

- 2 -

7.     The confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the Plan, unless such liquidation or further reorganization is proposed in the Plan.

IT IS THEREFORE:

ORDERED that the Plan is confirmed; and it is further

ORDERED that the Court shall retain jurisdiction as provided in the Plan until there is substantial consummation of the Plan; the Plan is modified if it calls for retention of jurisdiction beyond that point; and

ORDERED that the Debtors shall pay to the United States Trustee the appropriate sum required pursuant to 28 U.S.C. § 1930(a)(6) within ten (10) days of the entry of this Order for pre-confirmation periods, and simultaneously provide to the United States Trustee an appropriate affidavit indicating the cash disbursements for the relevant period; and the reorganized Debtor shall further pay the United States Trustee the appropriate sum required pursuant to 28 U.S.C. § 1930(a)(6) for post-confirmation periods within the time period set forth in 28 U.S.C. §1930(a)(6), based upon all post-confirmation disbursements made by the reorganized Debtors until the earlier of the closing of this case by the issuance of a Final Decree by the Court, or upon the entry of an Order by this Court dismissing this case or converting this case to another chapter under the United States Bankruptcy Code, and the party responsible for paying the post-confirmation United States Trustee fees shall provide to the United States Trustee upon the payment of each post-confirmation payment an appropriate affidavit indicating all the cash disbursements for the relevant period; and it is further

ORDERED that ROBERT C. FURR, ESQ. of FURR AND COHEN, P.A., is named as disbursing agent without additional compensation; bond is waived; the disbursing agent is

directed to make all first installment payments on the effective date of the Plan. The disbursing agent shall, not later than sixty (60) days after this Order becomes final, file a Final Report of Estate and Motion for Final Decree Closing Case on the Court approved local form. Failure to timely file the Final Report of Estate and Motion for Final Decree Closing Case will result in the imposition of sanctions against the Debtors' counsel, which may include the return of attorney's fees.; and it is further

ORDERED that pursuant to 11 U.S.C. §1146(c), the sale of the undeveloped property consisting of approximately 9.03 acres (the "Vacant Land") is in furtherance of, and in accordance with, the Debtor's Third Amended Plan of Reorganization [DE#208]. Accordingly, the Debtor shall not be responsible for the payment of any stamp tax, transfer tax or similar tax imposed, including, but not limited to documentary stamps, surtaxes and/or other incidental recording fees in connection with the sale of the property; and it is further

ORDERED that the terms of the Settlement Agreement between Palm Beach Community Church, Inc. and its affiliate PBCOMMUNITYCHURCH, Inc. on one hand and PNC Bank on the other hand, a copy of which is attached as Exhibit "A" (the "Settlement Agreement") , are approved by the Court, are consistent with the Third Amended Plan and shall be enforced by the Court; and it is further

Ordered that pursuant to paragraph 14 of the Settlement Agreement, the automatic stay of 11 U.S.C. § 362 is hereby modified to allow a  Stipulation of Settlement substantially in the form attached as Exhibit 3 to the Settlement Agreement to be filed, approved the Court in the State Court Case, and the enforced by the State Court should enforcement later become necessary or appropriate as provided for therein; and it is further

Ordered that pursuant to paragraph 11 of the Settlement Agreement, so long as PNC's Loan (as defined in the Settlement Agreement) remains unpaid, the Debtor, Palm Beach Community Church Inc. and PBCOMMUNITY CHURCH, Inc., and their successors, including, without limitation, any successors by merger and any assignees from PBCC of the Mortgaged Property (as defined in the Settlement Agreement), are prohibited from filing bankruptcy under any Chapter of the United States Bankruptcy Code until after March 31, 2018 to the fullest extent allowed by law; and it is further

ORDERED that the Debtor shall pay to the United States Trustee the appropriate sum required pursuant to 28 U.S.C. § 1930(a)(6) within ten (10) days of the entry of this Order for pre-confirmation periods, and simultaneously provide to the United States Trustee an appropriate affidavit indicating the cash disbursements for the relevant period; and the reorganized Debtor shall further pay the United States Trustee the appropriate sum required pursuant to 28 U.S.C. § 1930(a)(6) for post-confirmation periods within the time period set forth in 28 U.S.C. §1930(a)(6), based upon all post-confirmation disbursements made by the reorganized Debtor until the earlier of the closing of this case by the issuance of a Final Decree by the Court, or upon the entry of an Order by this Court dismissing this case or converting this case to another chapter under the United States Bankruptcy Code, and the party responsible for paying the post-confirmation United States Trustee fees shall provide to the United States Trustee upon the payment of each post-confirmation payment an appropriate affidavit indicating all the cash disbursements for the relevant period; and it is further

ORDERED that  ROBERT C. FURR, ESQ. of FURR AND COHEN, P.A., is named as disbursing agent without additional compensation;  bond is waived; the disbursing agent is directed to make all first installment payments on the effective date of the Plan.  The disbursing

agent shall, not later than sixty (60) days after this Order becomes final, file a Final Report of Estate and Motion for Final Decree Closing Case on the Court approved local form. Failure to timely file the Final Report of Estate and Motion for Final Decree Closing Case will result in the imposition of sanctions against the Debtor's counsel, which may include the return of attorney's fees; and it is further

ORDERED that the Court will conduct a post-confirmation status conference on **February 19, 2015 at 2:00 p.m.** at Flagler Waterview Building, 1515 North Flagler Drive Room 801, Courtroom B, West Palm Beach, Florida to determine (i) whether the debtor has complied with the provisions of this Order, and (ii) whether the disbursing agent and the plan proponent have timely filed the required Final Report of Estate and Motion for Final Decree Closing Case. At the status conference, the Court will consider the propriety of dismissal or conversion to Chapter 7, and/or the imposition of sanctions against the debtor and/or the debtor's disbursing agent for failure to timely file the Final Report of Estate and Motion for Final Decree Closing Case or for failure to comply with the provisions of this Order; and it is further

ORDERED THAT the above-named Debtor is discharged from any debt that arose before the date of confirmation of the Plan and any debt of a kind specified in 11 U.S.C. § 502(g), (h), or (i) except as provided in the Plan or in this Order.

# # #

COPIES FURNISHED TO:
Robert C. Furr, Esq.
Furr and Cohen, P.A.
Atty for Debtor
2255 Glades Road
One Boca Place, Suite 337W
Boca Raton, Florida 33431

Attorney, Robert C. Furr, is directed to serve a copy of this Order on all parties and file a certificate of service with the Court.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
West Palm Beach Division

In Re:                                    CASE NO.: 13-35141-EPK
                                          Chapter 11
Palm Beach Community Church, Inc.,

    Debtor.

_____/

## SETTLEMENT AGREEMENT

This Settlement Agreement (this "Agreement") is between Palm Beach
Community Church, Inc. ("PBCC") and PBCOMMUNITY CHURCH, Inc. ("PBCC INC.")
on one hand (PBCC and PBCC INC. are sometimes hereinafter referred to collectively
as the "PBCC Entities") and PNC Bank, National Association, successor by merger to
National City Bank and Fidelity Federal Bank and Trust ("PNC")[1] on the other:

## RECITALS

A.    PNC and the PBCC Entities are involved in mortgage foreclosure litigation
in the following case: *PNC Bank, N.A., Plaintiff vs. Palm Beach Community Church,
Inc., et al., Defendants*, Fifteenth Judicial Circuit Court, Palm Beach County, Florida,
Case No. 502011CA002578XXXXMBAA (the "State Court Case").

B.    PBCC filed this Bankruptcy Case on October 20, 2013, which stayed the
State Court Case by operation of 11 U.S.C. § 362.

C.    PNC filed a timely Proof of Claim in this Bankruptcy Case, Claim No. 6,
with regard to a loan made by one of PNC's predecessors in merger, Fidelity Federal
Bank and Trust to the PBCC Entities, which loan is now owned by PNC as its successor

---

[1] All of the Parties to this Agreement including PBCC, PBCC INC. and PNC are sometimes referred to
herein collectively as the "Parties" and individually as a "Party."

by merger ("PNC's Loan"). The time for objections to PNC's Allowed Claim has passed and PNC's Claim No. 6 is an allowed claim in this Bankruptcy Case ("PNC's Allowed Claim").

D.     PNC's Loan is being foreclosed in the State Court Case. The primary loan documents evidencing PNC's Loan (the "Loan Documents") are attached to PNC's Allowed Claim and to PNC's operative Complaint in the State Court Case. The real property, fixtures and other collateral described in the Loan Documents that secures PNC's Loan that is being foreclosed in the State Court Case is sometimes referred to in this Agreement as the "Mortgaged Property."

E.     In addition to the amount in PNC's Allowed Claim, PNC also claims post-bankruptcy interest and attorneys' fees to the fullest extent allowed by law as part of the debt due on PNC's Loan.

F.     PBCC filed a Proposed Amended Plan of Reorganization (ECF 132), regarding which PNC filed an Election under 11 U.S.C. 1111(b) (ECF 135). PBCC thereafter filed a Second Amended Plan of Reorganization (ECF 143) ("PBCC's 2nd Amended Plan"). PNC has told PBCC it will oppose confirmation of PBCC's 2nd Amended Plan.

G.     On October 17, 2014, PNC and PBCC participated in Judicial Settlement Conference pursuant to an Order of this Court (ECF 169).

H.     To avoid the cost, delay and uncertainties of this Bankruptcy Case and of the State Court Case, PBCC, joined by its affiliate PBCC INC., and PNC have entered into this Agreement subject to: (a) entry of an appropriate order by the Bankruptcy Court approving this Agreement; (b) entry of an appropriate order by the Bankruptcy Court

confirming an amendment of PBCC's existing Third Amended Plan of Reorganization (ECF 143) that incorporates and implements this Agreement; and, (c) filing of a Stipulation in the State Court Case and approval of that Stipulation by an appropriate order of the Court in the State Court Case approving this Agreement, providing for its implementation, and the State Court reserving jurisdiction to enforce it.

**NOW, THEREFORE,** PBCC, PBCC INC. and PNC agree as follows:

1.      The foregoing Recitals are confirmed as being true and correct and are incorporated into this Agreement.

2.      The PBCC Entities hereby: (a) waive and release any and all defenses and counterclaims raised or which could have been raised in the State Court Case or to PNC's Allowed Claim in this case; (b) acknowledge and agree that as of November 19, 2014 the sum presently owed on PNC's Loan pursuant to PNC's Loan Documents is the full amount shown on **Exhibit 1** to this Agreement, plus the additional per diem interest shown on **Exhibit 1** from November 19, 2014 until paid (the "Loan Indebtedness"); (c) acknowledge and agree that the Loan Documents are a lien for the full amount of the Loan Indebtedness on the Mortgaged Property; and, (d) that PNC, but for the intervention of this Bankruptcy Case and provisions of this Agreement, would be entitled to immediate entry of a Final Judgment of Foreclosure in favor of PNC for the full Loan Indebtedness and for foreclosure of the Mortgaged Property in the State Court Case ("PNC's Default Remedies").

3.      PBCC shall amend PBCC's 2nd Amended Plan and replace it with a Third Amended Plan of Reorganization ("PBCC's 3rd Amended Plan") that incorporates and

implements this Agreement, at which time PNC agrees to vote in favor of PBCC's 3rd Amended Plan.

4.    PBCC's 3rd Amended Plan shall provide for a sale of that portion of the Mortgaged Property described on **Exhibit 2** attached hereto (the "Vacant Land")[2], free and clear of all liens and encumbrances, with liens and encumbrances to attach to the proceeds, such that the closing of the sale on the Vacant Land shall occur on or before January 31, 2015. PNC, or PNC's Nominee, shall be the "Stalking Horse Bidder" via a credit bid using a portion of PNC's Loan Indebtedness in the amount of $6,310,400.00 ("PNC's Credit Bid"). If PNC or its Nominee is the successful bidder at such sale of the Vacant Land, (i) PNC and its Nominee shall not be liable for broker's commissions, if any, due or claimed to be due, or any other closing costs or fees related to the sale and (ii) PBCC will pay all of the closing costs of whatsoever nature related to the sale without any contribution from PNC or its Nominee directly, or indirectly. Upon receipt of good, marketable title by PNC or its Nominee, as applicable, the PBCC Entities shall receive a credit on the Loan Indebtedness of $6,500,000.00 (the "Vacant Land Credit"). The Vacant Land Credit shall be applied to the components of the Loan Indebtedness as PNC determines in its sole discretion. The Vacant Land sale procedure established in PBCC's 3rd Amended Plan shall provide for entry of an appropriate order of the Bankruptcy Court establishing procedures that provide an opportunity for higher bidders to qualify to purchase the Vacant Land at an auction to be conducted under Bankruptcy Court supervision. The minimum upset bid over PNC's Credit Bid required to qualify additional bidders (an "Upset Bidder") and cause an auction to be held shall be

---

[2] The Mortgaged Property less the Vacant Land is sometimes referred to herein as the "Borland Center Parcel."

$6,800,000.00. If one or more Upset Bidder(s) qualify, an auction for sale of the Vacant Land shall be held under procedures approved by the Bankruptcy Court. Such auction shall also be conducted so the closing of any sale of the Vacant Land and distribution of the net proceeds to PNC, will occur on or before January 31, 2015. PNC shall receive all of the net proceeds of a sale of the Vacant Land to an Upset Bidder, less only the reasonable, necessary and customary costs of sale (the "Net Vacant Land Proceeds"). In the event the Vacant Land is sold to an Upset Bidder, the Vacant Land Credit on the Loan Indebtedness shall be the greater of the Net Vacant Land Proceeds or $6,500,000.00. Further, if the Net Vacant Land Proceeds actually received by PNC exceed $6,500,000.00, the PBCC Entities will receive a credit on the 3/31/15 DP (as defined below), or if the DP is not paid on or before March 31, 2015, on the DP Final Payment (as defined below) of 20% of the difference between the amount of the Net Vacant Land Proceeds and $6,500,000.00 (the "20% Credit"). The 20% Credit will not be applied to the Post 3/31/15 DP Down Payment (as defined below), only to the 3/31/15 DP, or the DP Final Payment, as applicable, based on the date of payment. Following the sale of the Vacant Land, the resulting balance of the Loan Indebtedness after application of the Vacant Land Credit shall continue to be secured by the Loan Documents and the Mortgaged Property less only the Vacant Land.

5.    In the event the Vacant Land is sold to PNC or PNC's Nominee:

a.    PBCC's existing two votes in the Borland Center Owners Association (the "Association") shall be split so that the owner of the Vacant Land shall have a right to unilaterally control how one vote in the Association is exercised , and the owner of the Borland Center Parcel shall have the right to unilaterally control how one

vote in the Association is exercised. To the extent either Party believes it is necessary, appropriate or desirable, the Parties agree to jointly undertake, and complete to the extent reasonably possible, action to facilitate or effectuate the Parties' agreement that following the sale of the Vacant Land one vote in the Association will be exercised at the behest of the PNC, or its Nominee, and their successors or assigns, as the owner of the Vacant Land, and the other vote will be exercised at the behest of PBCC and its successors or assigns as owner of the Borland Center Parcel, including, without limitation, seeking amendment of the restrictive covenants to which the Vacant Land and Borland Center Parcel are subject, amendments of other documents governing the Association, obtaining consents other members of the Association, and entering into such further agreements between the Parties and their successors and assigns to enable the owner of the Vacant land and the owner of the Borland Center to each effectively and independently control one vote in the Association. If amendments of restrictive covenants or the Association's governing documents, or approvals of the Association or its members are sought but not obtained for any reason whatsoever, the Parties shall remain bound by their agreement that owner of each parcel shall unilaterally control one vote in the Association. Each Party shall bear its own costs and attorney's fees with regard to all of the matters in this subparagraph;

    b.  The Parties shall attempt to reach an agreement on a fair allocation of assessments made by the Association between the Vacant Land, and the Borland Center Parcel based on the components of the Association's budget and other documents on which the Association's budget is based, the benefits conferred by the Association to the Vacant Land and to the Borland Center Parcel, respectively, as well

as the burdens imposed by the Vacant Land and by the Borland Center Parcel, respectively, on the Association's responsibilities under the Association's governing documents. In the event the Parties cannot reach an agreement on such allocation, the Parties agree to submit the issue for adjudication by the Bankruptcy Court, or in the event the Bankruptcy Court declines to adjudicate the issue for any reason, the Parties stipulate and agree that the issue shall be determined by binding arbitration pursuant to Florida Rule of Civil Procedure 1.700 in the State Court Case. To the extent either party deems it necessary, appropriate or desirable, the Parties agree to jointly attempt to seek amendments of the documents governing the Association and its assessments, and approval of the Association or its members to facilitate or help effectuate any agreement the Parties reach regarding the allocation of assessments. In the event such amendments or approvals are not sought, or are sought and are not obtained for any reason whatsoever, the Parties agree to be bound by their agreement of allocation of the assessments, or by the adjudication of the Bankruptcy Court, or by the arbitrator, as applicable. Each Party shall bear its own costs and attorney's fees with regard to all of the matters in this subparagraph, including, without limitation, any proceedings before the Bankruptcy Court, or arbitration, as applicable.

      c.    PBCC shall be responsible for paying, and shall indemnify PNC or its Nominee and their successors and assigns, from having to pay, any electric, water or other utility costs and Palm Beach County real estate taxes related to the Vacant Land through the day title of the Vacant Land passes to PNC, or its Nominee. After title passes to the Vacant Land, the Parties shall take appropriate steps at their own respective cost to obtain separate billings of utilities and taxes for the Vacant Land and

Borland Center Parcel and they and their successors and assigns shall be solely responsible for paying the utilities and property taxes on their respective parcels.

6.    The PBCC Entities agree that any site plan or development plan for the Vacant Land (the "Vacant Land Development Plan") of PNC, PNC's Nominee, or a successor owner acquiring title from PNC or PNC's Nominee, that is acceptable to the City of Palm Beach Gardens, Florida and any other governmental authority having jurisdiction will be acceptable to the PBCC Entities, that the PBCC Entities will not oppose or facilitate others opposing the approval of such a Vacant Land Development Plan so long as the access and egress off of PGA Boulevard and signage for PBCC and the Borland Center on PGA Boulevard is not affected, and that the PBCC Entities will vote, to the extent required by any agreements or restrictive covenants affecting or relating to the Vacant Land, for approval of any such Vacant Land Development Plan.

7.    Subject to the sale of the Vacant Land and to PNC's receipt of good marketable title to the Vacant Land or receipt of the Net Vacant Land Proceeds, as applicable, PNC will forbear from exercising PNC's Default Remedies and provide the PBCC Entities an opportunity to pay a discounted payoff (the "DP") of the remaining Loan Indebtedness beginning on the effective date of PBCC's 3rd Amended Plan, but ending March 31, 2017 (the "DP Deadline"), time being of the essence, as follows:

        a.    On or before March 31, 2015, the DP shall be $6,000,000.00 (the "3/31/15 DP");

        b.    After March 31, 2015, but on or prior to March 31, 2017, the DP shall be: (i) an initial payment of $500,000.00 (the "Post 3/31/15 DP Down Payment"), paid to PNC on or before March 31, 2015, to be applied on receipt by PNC to the then

existing Loan Indebtedness in PNC's sole and unfettered discretion; (ii) plus, in addition to, and after application of the Post 3/31/15 DP Down Payment, an additional sum (the "Post 3/31/15 Final DP Payment") that shall increase based on date of payment as follows: the Post 3/31/15 Final DP Payment is $6,250,000.00 if paid on or before September 30, 2015; the Post 3/31/15 Final DP Payment increases to $6,500,000.00 if paid after September 30, 2015, but on or before March 31, 2016; the Post 3/31/15 Final DP Payment increases to $6,750,000.00 if paid after March 31, 2016 but on or before September 30, 2016; the Post 3/31/15 Final DP Payment increases to $7,000,000.00 if paid after September 30, 2016 but, on or before the March 31, 2017 DP Deadline. In addition, the PBCC Entities shall pay PNC monthly payments of interest (only) on $7,000,000.00 from March 31, 2015 at the rate of 5% per annum, based on a 360-day year (the "Interest Installments"), until PNC is paid the required Post 3/31/15 Final DP Payment or the DP Deadline has expired, whichever first occurs. The Interest Installments shall be due the first (1st) day of each month beginning May 1, 2015. After the DP Deadline : (a) the PBCC Entities shall have no right to any DP or any other discounted payoff of the Loan Indebtedness; (b) the full Loan Indebtedness shall be due and payable in full and accrue interest at the default rate provided in the Loan Documents; and (c) PNC shall be entitled to proceed immediately to exercise its Default Remedies through the procedure provided in paragraph 9 below of this Agreement and in the Stipulation of Settlement implementing it filed in the State Court Case pursuant to paragraph 14 below, or in any other manner allowed by law that PNC may choose in its sole, unfettered discretion.

9

8.    If the required DP is received by PNC on or prior to the DP Deadline, the Parties will Stipulate to a dismissal of the remaining issues in the State Court Case with prejudice and PNC will: (a) release and satisfy its liens arising from the Loan Documents, to the extent the same have not already been released due to the sale of the Vacant Land; and, (b) cancel and deliver the original promissory note that evidences the debts secured by the Mortgaged Property to bankruptcy counsel for the PBCC Entities.

9.    If any one (or more) of the following occurs: (a) the 3/31/15 DP or, alternatively, the Post 3/31/15 DP Down Payment has not been received by PNC on or before March 31, 2015, time being of the essence; (b) the required Post 3/31/15 Final DP Payment has not been received in full by PNC on or prior to the DP Deadline, time being of the essence: (c) if any Interest Installment has not been received by PNC within fifteen (15) days of its due date, time being of the essence; or (d) if there is any other breach by the PNC Entities of this Agreement, PNC shall be entitled to immediate entry of a Final Judgment of Foreclosure (the "Final Judgment") for the full unpaid amount of the Loan Indebtedness after crediting any sums actually received theretofore by PNC for any Interest Installments. The foreclosure sale date in the Final Judgment shall be the first available sale date following entry of the Final Judgment in compliance with the minimum time requirements of Florida Statutes § 45.031(1)(a), unless PNC requests a longer time before the foreclosure sale is scheduled, or a postponement of a scheduled foreclosure sale, either of which PNC may do for any reason whatsoever in its sole discretion at any time (subject to Court approval). The property sold at the foreclosure sale under the Final Judgment shall be all of the Mortgaged Property that

has not been theretofore been released from PNC's liens under the Loan Documents. The Final Judgment shall be entered on the filing of a Motion by PNC in the State Court Case ("PNC's Enforcement Motion") supported by an Affidavit identifying the default(s) and containing the current amount of the Loan Indebtedness, after credit for any Interest Installments received by PNC. PNC's Enforcement Motion and supporting affidavit shall be served on any counsel of record for the PBCC Entities in the State Court Case and on the PBCC Entities by U.S. Mail and overnight delivery at the following address: Palm Beach Community Church, c/o Dr. Raymond Underwood, 4901 PGA Blvd, Palm Beach Gardens, FL 33418. Such Final Judgment shall be substantially in the form promulgated by the Florida Supreme Court, as supplemented by any local relevant court rules, if any, and shall be entered without necessity of any hearings or other proceedings before the Court, unless otherwise ordered by the State Court at that time. Notwithstanding the foregoing, at PNC's request, in PNC's sole discretion, PNC may request the Court to adjudicate PNC's entitlement to foreclosure of all claims or interests of the PBCC Entities, and all those claiming by, through under or against the PBCC Entities, in the Mortgaged Property on PNC's Enforcement Motion, but to delay entry of a Final Judgment and the setting of a foreclosure sale, to allow for the adjudication of any claims or interests in the Mortgaged Property of the existing Defendants in this case that are not parties to this Agreement, or for adding additional Defendants to this Case that have or may claim an interest in the Mortgage Property being foreclosed and the adjudication of the existence and priority of their claims or interests.

10.    The PBCC Entities acknowledge that their ability to timely pay the DP may involve non-parties to this Agreement, matters beyond the control of the PBCC Entities,

11

and other known and unknown facts and risks, such that it is not certain that the PBCC

Entities will be able to pay the DP prior to the DP Deadline. Nevertheless, the PBCC

Entitles are solely assuming these risks in their entirety, and acknowledge and agree

that the failure of the required DP to be fully and timely paid for any reason whatsoever

shall not provide a reason or legal or equitable basis to extend, or otherwise affect the

DP Deadline, or affect, delay or preclude PNC from exercising its remedy of obtaining

the Final Judgment contemplated in paragraph 9 above, even if the PBCC Entities are

wholly without fault for such failure or delay and even if such failure or delay was the

result of matters wholly outside of the PBCC Entities' control.

      11.    So long as PNC's Loan as modified by PBCC's 3rd Amended Plan

incorporating this Agreement remains unpaid, without PNC's prior written consent, with

PNC may withhold in its sole discretion, PBCC shall be prohibited from merging with

another entity or selling or conveying all or any portion of the Mortgaged Property not

voluntarily released by PNC's from the lien of PNC's Loan Documents, and from filing,

or cooperating in filing, a bankruptcy under any Chapter of the United States Bankruptcy

Code. In the event of a bankruptcy filing by or against PBCC and/or PBCC INC. under

any Chapter of the United States Bankruptcy Code while PNC's Loan Indebtedness

remains unpaid, the PBCC Entities agree that PNC will be entitled to immediate and

uncontested relief from the automatic stay in order to proceed to enforce PNC's rights

and remedies under this Agreement under state law to full and complete conclusion. In

addition, PBCC's 3rd Amended Plan and the Order of the Bankruptcy Court confirming

it, shall provide that PBCC and PBCC INC., and any of their successors, including,

without limitation, successors by merger, or assigns shall be prohibited from filing

Bankruptcy under any Chapter of the United States Bankruptcy Code until after March 31, 2018.

12.    As a part of any proposed sale of the Mortgaged Property, including, without limitation, the Vacant Land sale or any proposed third party refinancing of the Mortgaged Property after sale of the Vacant Land, the PBCC Entities agree with PNC that the PBCC Entities shall fully cooperate with PNC to confirm that each prospective purchaser or refinancing source and each equity holder of each such entity is not or shall not be: (i) a person with whom PNC is restricted from doing business under any Anti-Terrorism Law (as hereinafter defined) or Anti-Money Laundering Statutes, (ii) engaged in any business involved in making or receiving any contribution of funds, goods or services to or for the benefit of such a person or in any transaction that evades or avoids, or has the purpose of evading or avoiding, the prohibitions set forth in any Anti-Terrorism Law or any Anti-Money Laundering Statutes, or (iii) otherwise in violation of any Anti-Terrorism Law or Anti-Money Laundering Statutes. For the purposes of this Agreement, "Anti-Terrorism Law" shall mean any laws relating to terrorism or money laundering, including Executive Order No. 13224, effective September 24, 2011 the Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act of 2001, Public Law 107-56, the laws compromising or implementing the Bank Secrecy Act, the Foreign Corrupt Practices Act, as jointly enforced by the United States Justice Department and the Securities and Exchange Commission, and the laws administered by the United States Treasury Department's Office of Foreign Assets Control (as any of the foregoing orders or laws may from time to time be amended, renewed, extended or replaced).

13.    The PBCC Entities' affirmative defenses and counterclaims in the State Court Case shall be dismissed with prejudice.

14.    PNC and the PBCC Entities will execute and file in the State Court Case, a Stipulation of Settlement implementing this Agreement substantially in the form attached in **Exhibit 3** and jointly move for entry of an Order of the State Court approving it and retaining jurisdiction to enforce it substantially in the form attached as **Exhibit 4**. PBCC consents to a limited modification of the automatic stay as to PNC for the sole purpose of the following: So that a Stipulation of Settlement implementing this Agreement substantially in the form attached in **Exhibit 3** can be executed, filed and approved in the State Court Case as soon as reasonably possible.

15.    **Attorney's Fees and Costs.** Except to the extent of PNC's attorney's fees and costs already included in the Loan Indebtedness, each Party agrees to bear its own costs and fees, including but not limited to, attorneys' fees and costs, in connection with this Bankruptcy Case, and the State Court Case, and this Agreement. In the event of a dispute over this Agreement or its implementation or enforcement via the Stipulation filed in the State Court Case, or otherwise, that arises after confirmation of PBCC's 3rd Amended Plan, the prevailing party in that dispute shall be entitled to recover its reasonable attorney's fees and costs from the non-prevailing party, including, without limitation, attorney's fees and costs incurred in any state trial court and appellate proceedings, and in any bankruptcy court proceedings and bankruptcy appeals.

16.    **Release in Favor of PNC Bank and Affiliates.** As a material inducement for PNC to enter into this Agreement, PBCC and PBCC INC. on behalf of their predecessors, agents and assigns and all those claiming by or through them (the

"PBCC Releasing Parties"), for good and valuable consideration, the receipt of which is hereby acknowledged, hereby waive, remise, release and forever discharge, jointly and severally, PNC, and its predecessors (including without limitation National City Bank and Fidelity Federal Bank and Trust), and their successors, heirs, assigns and all, parents, affiliates, divisions, subsidiaries and all officers, directors, shareholders, employees, agents and attorneys of all of the foregoing, (collectively, the foregoing are referred to as the "PNC Released Parties") of and from any and all cause and causes of actions, suits, covenants, contracts, controversies, damages, judgments, claims and demands whatsoever, in law or in equity, known or unknown, suspected or unsuspected, asserted or un-asserted (including, but without limitation, those raised or which could have been raised in the State Court Case), which the PBCC Releasing Parties ever had, now have or which the PBCC Releasing Parties, their predecessors, successors or assigns, can, shall or may have (the "PBCC Released Claims"), which PBCC Released Claims exist, or may exist, by reason of any manner, cause or thing whatsoever from the beginning of the world to the date of this Agreement. Without limiting the generality of the foregoing release, the PBCC Released Claims include, without limitation, anything arising out of or related to the Loan, the Loan Documents, the Bankruptcy Case, and the State Court Case and all claims raised or which could have been raised by the PBCC Entities in it.

Notwithstanding the foregoing, the PBCC Released Claims shall not include any breaches by PNC of this Agreement.

THE PBCC RELEASING PARTIES EACH HEREBY WAIVE ANY AND ALL RIGHTS UNDER ANY STATE OR FEDERAL STATUTE OR PRINCIPAL OF COMMON LAW THAT MAY HAVE THE EFFECT OF LIMITING RELEASES WITH RESPECT TO UNKNOWN FACTS.

THE PBCC RELEASING PARTIES EACH HEREBY ACKNOWLEDGES THAT IT HAS EXPRESSLY ELECTED TO, AND DO ASSUME ALL RISKS OF WHATSOEVER NATURE FOR THE PBCC RELEASED CLAIMS, WHETHER KNOWN OR UNKNOWN.

The PBCC Entities represent and warrant that they own and have full and absolute control over the disposition of the PBCC Released Claims, and no such Released Claim has ever been assigned or transferred.

17.    **No Admission of Liability.** Nothing in this Agreement or otherwise related to this settlement and its negotiation, documentation and implementation is, nor shall be deemed to be, an admission of any liability or wrongdoing by PNC. PNC disputes the claims alleged against it in the State Court Case, and any other claims of wrongdoing that have been alleged by the PBCC Entities and expressly denies any liability or wrongdoing. PNC has agreed to enter into this Agreement to avoid the further expense, inconvenience and distraction of litigation.

18.    The Bankruptcy Court shall retain jurisdiction to enforce this Agreement following approval of this Agreement and Confirmation PBCC's 3rd Amended Plan at least until a Stipulation implementing this Agreement has been filed and approved by the State Court in the State Court Case as provided for in paragraph 14 of this Agreement.

19.    Additional Agreements:

a.    <u>Entire Agreement</u>. This Agreement represents the entire understanding and agreement between the Parties with respect to the subject matter hereof and supersedes all other negotiations, understandings, and representations made by and between such Parties. No course of dealing, course of performance, trade usage or parol evidence of any nature shall be used to supplement or modify any terms of this Agreement.

b.    Governing Law. This Agreement and all transactions contemplated by this Agreement shall be governed by and construed and enforced in accordance with the laws of the State of Florida, except Florida's law of conflicts of law shall not be applied to make the law of any other state or nation control the construction and enforcement of this Agreement.

c.    Severability. If any provision or clause of this Agreement or the application thereof to any person or circumstance is determined by a court of competent jurisdiction to be invalid, void, or unenforceable, such provisions or clause shall be deemed amended to conform to applicable laws so as to be valid and enforceable so long as such amendment does not materially alter the intention of the Parties as expressed in this Agreement. If it does so materially alter such intention, such provision shall be stricken, and the remaining provisions hereof will remain in full force and effect and shall in no way be affected, impaired or invalidated thereby so long as all of the Parties agree that the Agreement shall remain in full force and effect.

d.    No Duress. Each Party hereto represents and warrants to the others that they have entered into this Agreement voluntarily and have not been coerced in any manner. Each acknowledges that they have independently evaluated this Agreement and the competing claims and defenses made, or which could be made, by the Parties under the circumstances and the business risks and benefits relating to this Agreement. As a result, each represents and warrants to the others, and the others' employees, agents and attorneys (recognizing that each is relying on such acknowledgments, representations and warranties in proceeding with this Agreement) as follows:

(i)     They have been represented by counsel with regard to entering in this Agreement or have had full opportunity to be so represented;

(ii)    No representation made by any employee, agent, attorney or other representative of another Party on any issue has induced them to enter into this Agreement and they have not relied on any representation or statement by another Party, its agents, employees or attorneys with regard to the legal or business effect of the provisions of this Agreement;

(iii)   In entering into this Agreement, each is acting and relying on their own best judgment, belief and knowledge as to the business and legal risks and benefits associate with this Agreement following their own independent investigation and after having the advice, or having had a full and ample opportunity to have had the advice, of attorneys and other professionals or advisors of their respective choosing.

(iv)    The Parties agree that should any of them hereafter discover facts or law different from or in addition to those now known or believed to be true with respect to the subject matter of this Agreement, the Bankruptcy Case or the State Court Case, this Agreement shall remain effective in all respects notwithstanding such different or additional facts.

e.      No Waiver. Any waiver by an Party of a breach of any provision of this Agreement shall not operate as or be construed to be a waiver of any subsequent breach of such provision or of any breach of any other provision of this Agreement. The failure of a Party to insist upon strict adherence to any term of this Agreement on one or more occasions shall not be considered a waiver or deprive that Party of the right

thereafter to insist upon strict adherence to that term or any other term of this Agreement.

   f.    Joint Drafting. This Agreement shall be construed as if it was drafted by the Parties jointly, and shall not be construed against any party regardless of which party drafted any provision hereof.

   g.    Any Headings. The headings contained in this Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation hereof.

   h.    Survival of Representations and Warranties. All representations and warranties in this Agreement are material and have been relied upon by the Parties, respectively, in entering this Agreement, and each such representation and warranty, and covenant and agreement, shall survive the delivery of this Agreement.

   i.    Gender. Whenever the text in this Agreement so requires, the use of any gender shall be deemed to include all genders, and the use of the singular shall include the plural and vice versa.

   j.    Further Assurances. The Parties hereto agree that, without additional consideration, they will cooperate with one another and to take such action as may reasonably be requested, including without limitation, executing and delivering, or causing to be executed and delivered, such documents, instruments, conveyances, assignments, confirmations, satisfactions, releases, approvals, consents and truthful affidavits as may be requested now and at all time in the future, to effect a prompt, complete and lawful transfer of any property to be transferred hereunder and to assure that this Agreement is fully effective and properly implemented.

k.      No Rights Conferred on Third Parties Not Mentioned. Nothing in this Agreement is intended to, or shall be construed as, creating any rights, claims, interest, benefits or cause of action in favor of any persons or entities other than the Parties hereto except to the extent of the warranties and representations to non-parties in subparagraph d above, and the release of all of the PNC Released Parties from the PBCC Released Claims in paragraph 16 above.

l.      Ratification of Loan Documents, as Modified in this Agreement. The Parties hereby ratify and reaffirm the Loan Documents, the provisions of which remain in full force and effect except to the extent expressly amended in writing by this Agreement.

m.      No Course of Dealing. The PBCC Entities acknowledge and agree that PNC's willingness to enter into this Agreement does not establish a waiver, course of dealing or other relationship on which the PBCC Entities will or can rely that PNC will forebear from exercising any PNC's Default Remedies provided for in this Agreement, otherwise available to PNC in law or in equity, or that PNC will agree to make any further modifications, or amendments of the Loan Documents or accommodations to the PBCC Entities in the future.

n.      Waivers or Amendments. The provisions of this Agreement can only be amended, supplemented, waived or changed orally, by a writing signed by the Party as to whom enforcement of any such amendment, supplement, waiver or modification is sought.

o.      Binding on Successors and Assigns. This Agreement is binding on the heirs, successors, assigns and personal representatives (as applicable) of the Parties to this Agreement.

p.      Counterparts. This Agreement may be executed in duplicate counterparts, and facsimile signatures shall be treated as original signatures. The Agreement shall be binding when at least one counterpart of the document has been signed by each of the Parties to this Agreement, filed in the Bankruptcy Case, and approved by a Final Order of the Bankruptcy Court.

q.      **WAIVER OF JURY TRIAL.** EACH OF THE UNDERSIGNED PARTIES HEREBY KNOWINGLY, VOLUNTARILY, AND INTENTIONALLY WAIVES EVERY RIGHT WHICH ANY OF THE UNDERSIGNED MAY HAVE TO A TRIAL BY JURY WITH RESPECT TO ANY LITIGATION BETWEEN ANY PARTIES HERETO, THE PNC RELEASED PARTIES OR ANY OF THEIR RESPECTIVE AGENTS, ATTORNEYS AND COUNSELORS AT LAW, EMPLOYEES, DIRECTORS, MEMBERS, MANAGERS, PARTNERS, SHAREHOLDERS, OR OTHER REPRESENTATIVES, INCLUDING, BUT NOT LIMITED TO, WITH RESPECT TO ANY AND ALL CAUSE OR CAUSES OF ACTION, DEFENSES, COUNTERCLAIMS, CROSS CLAIMS, THIRD PARTY CLAIMS, AND INTERVENOR'S CLAIMS, REGARDLESS OF THE CAUSE OR CAUSES OF ACTION, DEFENSES OR COUNTERCLAIMS ALLEGED OR THE RELIEF SOUGHT BY ANY PARTY, AND REGARDLESS OF WHETHER SUCH CAUSES OF ACTION, DEFENSES OR COUNTERCLAIMS ARISE OUT OF, UNDER OR IN CONNECTION WITH THIS BANKRUPTCY CASE, THE STATE COURT CASE, THE LOAN DOCUMENTS, PBCC'S 3RD AMENDED PLAN, THIS AGREEMENT, OR

OUT OF ANY ALLEGED CONDUCT OR COURSE OF CONDUCT, DEALING OR COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN), OR OTHERWISE.

20.     This Agreement is subject to and not effective until entry of an order of the Bankruptcy Court approving it and confirmation of PBCC's 3rd Amended Plan of Reorganization incorporating the provisions of this Agreement by an appropriate, final Order of the Bankruptcy Court.

IN WITNESS WHEREOF, this Agreement has been executed by the Parties and their respective counsel on the dates indicated below, each person signing this Agreement representing and warranting to the others they have full authority to do so.

**[SIGNATURE PAGES TO FOLLOW]**

_Philip Vrahand_ (signature)

Philip Underwood
Print Name:

PALM BEACH COMMUNITY CHURCH, INC.

By: _(signature)_
Print Name: _(handwritten)_
Its: _President_

Print Name: _____

(Corporate Seal)

STATE OF FLORIDA          )
COUNTY OF PALM BEACH      )

The foregoing instrument was acknowledged before me this 21st day of November, 2014, by DR. RAYMOND UNDERWOOD as PRESIDENT of Palm Beach Community Church, Inc., a Florida corporation. He/She is personally known to me or who has produced a driver's license as identification.

(NOTARY SEAL)

Notary Public State of Florida
Thomas A Seifert
My Commission EE113687
Expires 07/18/2015

Notary Public
Print Name: THOMAS A. SEIFERT
My Commission Expires: 7/18/2015

PNC Bank, N.A.

Print Name: _Kurt Knaus_

By: _____
Print Name: _Mark Whyman_
Its: _Vice President_

Print Name: _REGINA M. BURKE_

(Corporate Seal)

STATE OF _Florida_            )
COUNTY OF _Palm Beach_ )

    The foregoing instrument was acknowledged before me this _24th_ day of _November_, 2014, by _Mark Whyman_, as _VP_ of PNC Bank, N.A., a National Banking Association organized under the laws of the United States of America. He/She is personally known to me or who has produced a driver's license as identification.

(NOTARY SEAL)

_Patricia A Robertson_
Notary Public
Print Name: _PATRICIA A ROBERTSON_
My Commission Expires: _11/6/17_

**PATRICIA A. ROBERTSON**
**NOTARY PUBLIC**
**STATE OF FLORIDA**
**Comm# FF058360**
**Expires 11/6/2017**

p:\docs\f1304\00117\pld\1kv2178.docx(hjg)

24

PBCOMMUNITYCHURCH, Inc.

Print Name: _____

By: _____
Print Name: _____
Its: _____

Print Name: _____

(Corporate Seal)

STATE OF FLORIDA            )
COUNTY OF _____   )

The foregoing instrument was acknowledged before me this _____ day of _____, 2014, by _____, as _____ of PBCOMMUNITYCHURCH, Inc., a Florida corporation. He/She is personally known to me or who has produced a driver's license as identification.

(NOTARY SEAL)

_____
Notary Public
Print Name: _____
My Commission Expires: _____